# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | § § Chapter 11 § |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § Case No. 20-31884 (DRJ) § |
| Debtors. | § (Joint Administration Requested) § |

## NOTICE OF FILING OF REDLINE OF THE AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION OF SHERIDAN HOLDING COMPANY I, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that on February 21, 2020, the debtors and debtors in possession in the above-captioned cases (the "Debtors") distributed the solicitation version of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of February 21, 2020 (the "Plan").

**PLEASE TAKE FURTHER NOTICE** that on March 23, 2020, the Debtors filed the *Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 11] (the "Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that a redline comparison reflecting the variations between the Plan and the Amended Plan is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the website of Prime Clerk LLC at https://cases.primeclerk.com/Sheridan. You may also obtain copies of any pleadings by visiting the Court's website at http://www.txs.uscourts.gov/bankruptcy in accordance with the procedures and fees set forth therein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

Houston, Texas
March 23, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Joshua A. Sussberg, P.C. (*pro hac vice* admission pending) |
| Jennifer F. Wertz (TX Bar No. 24072822) | Steven N. Serajeddini (*pro hac vice* admission pending) |
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| 1401 McKinney Street, Suite 1900 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Houston, Texas 77010 | 601 Lexington Avenue |
| Telephone: (713) 752-4200 | New York, New York 10022 |
| Facsimile: (713) 752-4221 | Telephone: (212) 446-4800 |
| Email: mcavenaugh@jw.com | Facsimile: (212) 446-4900 |
| jwertz@jw.com | Email: joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## **Certificate of Service**

I certify that on March 23, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**<u>Exhibit A</u>**

**Redline**

*SOLICITATION VERSION*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

**AMENDED JOINT PREPACKAGED PLAN
OF REORGANIZATION OF SHERIDAN HOLDING COMPANY I, LLC AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.**

Matthew D. Cavenaugh (TX Bar No. 24062656)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com
       steven.serajeddini@kirkland.com

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

*Dated: March 23, 2020*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

57. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

58. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

59. "*Hedge Claims*" means all Claims arising under or related to the Debtors' prepetition hedging and/or swaps transactions entered into between any Debtor and any holder of Sheridan I RBL Claims or such holders' Affiliates, including all liabilities and obligations outstanding as of the Petition Date and all claims arising out of any termination of such transactions on or prior to the Petition Date, and reasonable, actual, and documented fees, costs, and expenses incurred in connection with such transactions.

60. "*Holder*" means an Entity holding a Claim or Interest.

61. "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

62. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the respective Debtors' bylaws, certificates of incorporation, limited partnership agreements, other formation documents, board resolutions, or contracts for the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, other professionals, and respective agents of, or acting on behalf of, the Debtors.

63. "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

64. "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

65. "*Interest*" means, collectively, (a) any Equity Security, or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity), in any Debtor, (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor, and (c) any and all Claims that are otherwise determined by the Court to be an equity interest, including any Claim or debt that is recharacterized as an equity interest or subject to subordination as an equity interest pursuant to section 510(b) of the Bankruptcy Code.

66. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

67. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

68. "*Limited Partner*" means a holder of a limited partnership Interest in any of Sheridan Production Partners I-A, L.P., Sheridan Production Partners I-B, L.P., or Sheridan Production Partners I-M, L.P.

69. "*Limited Partner Settlement Consideration*" means the consideration transferred by New Sheridan to Limited Partners in exchange for the release by such Limited Partners of the Released Parties, consisting of the New Warrants.

70. "*Manager*" means Sheridan Production Partners Manager, LLC, a limited liability company organized under the Laws of Delaware.

83. "*Partnership Representative*" means the "partnership representative" within the meaning of Section 6223 of the Internal Revenue Code of 1986, as amended.

84. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

85. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

86. "*Plan*" means this *Amended* Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement, which is incorporated herein by reference.

87. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

88. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than one (1) Business Day after the Petition Date, including the following, as applicable:  (a) the New Organizational Documents; (b) the identity and members of the New Board and any executive management for the Reorganized Debtors; (c) the Schedule of Retained Causes of Action; (d) the form of the Services Agreement, if any; (e) the Exit Facility Documents; (f) the Description of Transaction Steps; (g) the New Warrant Agreement; (h) the Wind-Down Budget and (i) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

89. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

90. "*Pro Rata*" means, unless otherwise specified, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

91. "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

92. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B of the Plan.

93. "*Professional Fee Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

94. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

Dated: ~~February 21~~March 23, 2020

SHERIDAN HOLDING COMPANY I, LLC
SHERIDAN INVESTMENT PARTNERS I, LLC
SHERIDAN PRODUCTION PARTNERS I, LLC
SHERIDAN PRODUCTION PARTNERS I-A, L.P.
SHERIDAN PRODUCTION PARTNERS I-B, L.P.
SHERIDAN PRODUCTION PARTNERS I-M, L.P.
SPP I-B GP, LLC

*/s/ Lisa A. Stewart*
Lisa A. Stewart
Executive Chairman, President, Chief Investment Officer, and Chief Executive Officer
Sheridan Holding Company I, LLC
Sheridan Investment Partners I, LLC
Sheridan Production Partners I, LLC
SPP I-B GP, LLC

-- *Sheridan I* –

**Exit Facility Term Sheet**

| | |
|---|---|
| **Size** | $150 million |
| **Borrower** | One or more wholly-owned subsidiaries of Reorganized Sheridan I. |
| **Guarantors** | Reorganized Sheridan I and its subsidiaries (other than the Borrower). |
| **Administrative Agent** | Bank of America, N.A. |
| **Collateral Agent** | Bank of America, N.A. |
| **Exit Facility Lenders** | Each of the lenders under the Existing Sheridan I RBL Facilities and the Existing Sheridan I Term Facilities immediately prior to the commencement of the Restructuring. |
| **Majority Lenders** | Exit Facility Lenders holding a majority of the New Term Loans. |
| **Security** | Consistent with Previously Proposed A&E Transaction, including, without limitation, (a) a first priority perfected security interest in and lien on (i) at least 95% of the total value of proved reserves attributable to the oil and gas properties of the Borrower and the Guarantors set forth in the most recent reserve report (the "**Proved Reserves**") and (ii) all deposit, securities and commodities accounts of the Borrower and the Guarantors and substantially all other assets of the Borrower and the Guarantors (including all collateral under Existing Sheridan I RBL Facilities and the Existing Sheridan I Term Facilities and previously unencumbered assets), subject to customary exceptions to be determined and (b) satisfactory title information on at least 80% of the Proved Reserves. |
| **Maturity Date** | Four years from the Effective Date. |
| **Rate** | • L + 6.5% cash pay interest or base rate + 5.5% cash pay, at Borrower's option, (the "**Cash Pay Interest**"). Borrower may, at the determination of the board of directors of Reorganized Sheridan I, (the "**Board**"), elect to pay a portion of the Cash Pay Interest by capitalizing such amount and adding it to the outstanding principal amount of the New Term Loans (the "**PIK Interest**") at a ratio of 2:1 as follows:<br><br>• up to 150 bps of<br><br>• For each interest payment date occurring on or prior to September 30, 2020, the Board may elect to pay the Cash Pay Interest for the applicable interest period in the form of PIK Interest at a rate of |

| | |
|---|---|
| | - up to 6.0% per annum of aggregate outstanding principal amount of the New Term Loans; <br><br> - For each interest payment date following September 30, 2020 and occurring on or prior to March 31, 2021, the Board may elect to pay Cash Pay Interest for the applicable interest period in the form of PIK Interest at a rate of up to 6.0% per annum of the aggregate outstanding principal amount of the New Term Loans; *provided* that the average price realized by the Borrower and its subsidiaries for oil and gas sold in the most recently ended fiscal three-month period (after giving effect to the settlement of any Swap Contracts) is less than or equal to $28.00 per a barrel of oil equivalent; *provided*, *further*, that notwithstanding anything to the contrary, the Board shall at all times be permitted to elect to pay Cash Pay Interest in the form of PIK Interest on such interest payment date in an amount not to exceed 1.50% per annum of the aggregate outstanding principal amount of the New Term Loans; and <br><br> - ~~cash pay interest at 2:1 ratio.~~ <br><br> - For each interest payment date following March 31, 2021, the Board may elect to pay Cash Pay Interest for such periods in the form of PIK Interest at a rate of up to 6.0% per annum of the aggregate outstanding principal amount of the New Term Loans; *provided* that both (i) the average price realized by the Borrower and its subsidiaries for oil and gas sold in the most recently ended fiscal three-month period (after giving effect to the settlement of any Swap Contracts) is less than or equal to $25.00 per a barrel of oil equivalent and (ii) unrestricted balance sheet cash as of the end of such fiscal quarter is less than $20 million; *provided*, *further*, that notwithstanding anything to the contrary, the Board shall at all times be permitted to elect to pay Cash Pay Interest in the form of PIK Interest on such interest payment date in an amount not to exceed 1.50% per annum of the aggregate outstanding principal amount of the New Term Loans; and <br><br> - 2% PIK ~~i~~Interest. |
| **Fees** | TBD |
| **Amortization** | None. |
| **Mandatory Prepayments** | - The New Term Loans shall be prepaid with the proceeds of (i) asset sales and, to the extent not required for repairs, casualty events, (ii) a quarterly sweep of all unrestricted cash in excess of $20 million and (iii) such other mandatory prepayments to be determined. <br><br> - To the extent balance sheet cash does not equal to $20 million as of the Effective Date, Reorganized Sheridan I can retain proceeds from the first asset sale after the Effective Date in an amount equal to the |

| | |
|---|---|
| | lesser of the difference of (i) $20 million and balance sheet cash as of the Effective Date and (ii) $20 million and balance sheet cash as of the closing date of the first asset sale after the Effective date, in each case such that unrestricted cash on the balance sheet (pro forma for asset sale proceeds) equals $20 million. |
| **Asset Sale Covenants** | • Borrower will solicit bids to be submitted for each of the Asset Packages by the bid dates set forth in the Credit Agreement (see section titled "Asset Sale Milestones" below).<br><br>• Borrower will covenant to sell an Asset Package if it receives a bid at or above a pre-determined sale price (the "**Threshold Price**"). The Threshold Price will be set in the aggregate amount of $725 million, with the allocation among each Asset Package to be determined.<br><br>• If Borrower receives a bid for an Asset Package below the Threshold Price but at or above 75% of the Threshold Price, then Borrower will sell if (a) holders representing a majority of the New Sheridan Equity or (b) Exit Facility Lenders holding at least 66 $^{2}/_{3}$ % of the principal amount of the New Exit Term Loans (such lenders, the "**Supermajority Lenders**"), in either case, vote to sell such Asset Package.<br><br>• If Borrower receives a bid for an Asset Package below 75% of the Threshold Price, then Borrower will sell such Asset Package if both (a) holders representing a majority of the New Sheridan Equity and (b) the Supermajority Lenders, in each case, vote to sell such Asset Package.[1]<br><br>• Notwithstanding the foregoing, consummation of a sale of the final Asset Package shall not be required if the governing body of Reorganized Sheridan I determines, at the advice of its outside counsel, that the terms of a sale (other than the purchase price) would be inconsistent with the fiduciary duties of such governing body; provided that in such event Reorganized Sheridan I shall continue to negotiate such terms in good faith so that Reorganized Sheridan I may enter into such agreement consistent with the fiduciary duties of such governing body. |
| **Asset Sale Milestones** | Exit Facility to include the following milestones by which Reorganized Sheridan I shall have solicited bids to be submitted with respect to the asset packages set forth below (each such asset package, an "**Asset Package**" and collectively, the "**Asset Packages**"):<br><br>• By December 31, 2020: Overriding royalty interest package relating to high NRI assets<br><br>• By March 31, 2021: Lorenzo, Mocane-Laverne, Verdan and all other assets (to the extent required and not included below) |

---

[1] Re-marketing provisions in event lenders vote down a proposed sale to be determined.

|  | - By December 31, 2021: Fitts, Silver |
|---|---|
|  | - By March 31, 2022: Giddings, Big Spring |
|  | - By June 30, 2022: Gillette |
|  | - SCOOP assets (operated & non-operated) not subject to sale milestones; to be marketed at the Board and Management's discretion |
|  | - Breach of milestones to result in an event of default under the Exit Facility; *provided* that the failure to receive bids in respect of an Asset Package shall not be an event of default so long as the bid deadline was set by the dates required in the Credit Agreement. |
| **Affirmative Covenants** | Affirmative covenants (including disclosure and reporting requirements) consistent with the Previously Proposed A&E Transaction and to include the following:<br><br>- Existing asset disposition advisor to be reengaged by the Collateral Agent on behalf of the Exit Facility Lenders on terms consistent with those under the existing engagement;<br>- Borrower shall keep the asset disposition advisor reasonably informed of the asset disposition process in a manner consistent with the terms set forth in the Previously Proposed A&E Transaction;<br>- Borrower shall use commercially reasonable efforts to obtain a rating for the New Term Loans from Moody's and S&P (Borrower will receive EBITDA add back for any expenses related to obtaining and maintaining such credit rating);<br>- Delivery of quarterly operating reports (e.g., production, leasehold expenses and operating expense and capital expenditures) deliverable within 60 days after quarter-end, which shall include a separate breakdown of such information on a field-by-field basis for the five largest operating fields measured by PV-9% value;<br>- Delivery of quarterly reserve reports consistent with the Previously Proposed A&E Transaction;<br>- Quarterly calls with required Q&A with management, asset disposition advisor and brokers, as applicable; and<br>- Transition to a standalone cash management structure separate and apart from the affiliates of the Fund I Entities. |
| **Negative Covenants** | Consistent with the Previously Proposed A&E Transaction, including, without limitation, (a) prohibition on any dividends, distributions or any other payments on account of any equity interests or on account of any right to acquire any equity interests or on account of any contractually subordinated debt (except distributions made by a subsidiary to the Borrower or any Guarantor) and (b) restrictions on (i) the incurrence of debt or liens (including no senior, pari passu or junior lien or unsecured debt but excluding baskets (proportionately sized in respect of the Previously Proposed A&E Transaction) for customary operational debt |

| | |
|---|---|
| | requirements (i.e., LCs and vendor financings)), (ii) investments, (iii) asset dispositions (other than pursuant to the asset sale process), (iv) consolidations and mergers, (v) affiliate transactions, (vi) restrictive agreements, (vii) take or pay or other prepayments, (viii) conduct of business and (ix) amendments to organizational documents or the Management Services Agreement. |
| **Financial Covenants** | In each case, tested quarterly commencing 6/30/20: <br><br> Current Ratio: 1.0x <br><br> Asset Coverage Ratio: ~~2~~1.0x <br><br> • In the event an asset is sold for an amount that is lower than the value attributable to it in the Asset Coverage Ratio, then the Asset Coverage Ratio will automatically be adjusted so that Reorganized Sheridan I is no worse off than immediately prior to the sale. <br><br> • No consent fee will be given for such adjustment. Such adjustment shall be reasonably determined by the collateral agent in consultation with Reorganized Sheridan I. <br><br> Cash Interest Coverage Ratio: 1.0x |
| **Events of Default** | Consistent with the Previously Proposed A&E Transaction. |
| **Hedging** | No affirmative hedging requirement. <br><br> Hedges secured by liens on the collateral that rank *pari passu* with the liens securing the Exit Facility to be permitted, subject to limitations to be set forth in the definitive documentation. |
| **Lender Assignments** | Consistent with the Previously Proposed A&E Transaction, including (i) Administrative Agent consent requirement for all lender assignments and (ii) Borrower consent requirement (other than for assignments to lenders, their affiliates or approved funds); *provided* that Borrower consent will not be unreasonably withheld or delayed and Borrower consent requirement conditioned on no payment event of default, no acceleration and compliance with the asset coverage ratio. Deemed Borrower consent 5 business days after notice to Borrower. |