

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
03/23/2020

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration) |
| | § | |
| | § | Re: Docket No. 6 |

**ORDER (I) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND PLAN
CONFIRMATION HEARING, (II) ESTABLISHING PLAN
AND DISCLOSURE STATEMENT OBJECTION AND REPLY
DEADLINES AND RELATED PROCEDURES, (III) APPROVING THE
SOLICITATION PROCEDURES, (IV) APPROVING THE CONFIRMATION NOTICE,
AND (V) WAIVING THE REQUIREMENTS THAT THE U.S. TRUSTEE CONVENE A
MEETING OF CREDITORS AND THE DEBTORS FILE SCHEDULES AND SOFAS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Confirmation Hearing on the adequacy of the Disclosure Statement and confirmation of the Plan, (b) establishing the Objection Deadline, the Reply Deadline, and approving related procedures, (c) approving the Solicitation Procedures, (d) approving the form and manner of the Confirmation Notice, and (e) conditionally directing that the U.S. Trustee not convene the Creditors' Meeting, provided that the Plan is confirmed within seventy-five (75) days of the Petition Date; (f) waiving the requirement that the Debtors file statements of financial affairs and schedules of assets and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

liabilities, provided that the Plan is confirmed within seventy-five (75) days of the Petition Date, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Confirmation Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on March 24, 2020, at 2:30 p.m., prevailing Central Time.

2.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan must have been received as set forth in paragraph 4(e) of this Order by March 20, 2020, at 4:00 p.m., prevailing Central Time.

3.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before March 24, 2020.

4.      Any objections to the Disclosure Statement or confirmation of the Plan must:

(a)      be in writing;

(b)      comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules;

(c)      state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

(d)      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

(e)      be filed with this Court (including the manners as set forth in the Confirmation Notice) with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

5.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

6.      The Confirmation Notice, a copy of which is attached hereto as **Exhibit 1**, and the Publication Notices, attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, and service thereof comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved and deemed to be sufficient and appropriate under the circumstances.

7.      The Opt-Out Forms, substantially in the forms attached hereto as **Exhibit 4** and **Exhibit 5**, and service thereof comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved and deemed to be sufficient and appropriate under the circumstances.

8.      The Voting Record Date and the Voting Deadline are approved.

9.      The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local

Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements under the Securities Act, and any exemptions from registration under Blue Sky requirements and are approved.

10.     The Ballot, substantially in the form attached hereto as **Exhibit 6**, and the terms and conditions therein are approved.

11.     The Solicitation Procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballot are approved.

12.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims that are (a) unimpaired and conclusively presumed to accept the Plan or (b) impaired and deemed to reject the Plan.

13.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Confirmation Hearing, commencement of these chapter 11 cases, deadline and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

14.     The U.S. Trustee need not and shall not convene a meeting of creditors or equity holders pursuant to section 341(e) of the Bankruptcy Code unless the Plan is not confirmed on or before June 6, 2020, without prejudice to the Debtors' right to request further extensions thereof.

15.     Cause exists to extend the time by which the Debtors must file the Schedules and SOFAs until June 6, 2020, without prejudice to the Debtors' right to request further extensions thereof.

16.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any

prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

17.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  March 23, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

The Court will consider this Order if confirmation  does not occur on March 24, 2020.

Any party may file an objection to this Order.  Any such objection will be considered at the confirmation hearing.

## Exhibit 1

**Confirmation Notice**

Dated as of February 21, 2020

Subject:   **Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters.**

To Whom It May Concern,

On or before February 21, 2020, the anticipated debtors and debtors in possession (collectively, the "Debtors"),[1] commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), from Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]

**The Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, https://cases.primeclerk.com/sheridanballots.**   Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed co-counsel, Kirkland & Ellis LLP and Jackson Walker LLP, at the respective addresses specified below.   Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court.   Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

If you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases, by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridanballots@primeclerk.com and referencing

---

[1]   The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

"Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

The Debtors have reached an agreement-in-principle with a majority of the lenders under the Sheridan I Term Loan Facilities and the Sheridan I RBL Facilities (collectively, the "Consenting Lenders"), the Manager, and certain Manager Parties[3] regarding the terms of a restructuring support agreement (the "RSA"), the form of which is attached to the Disclosure Statement as Exhibit B. Among other things, the RSA will obligate the Consenting Lenders to vote to approve the Debtors' "prepackaged" plan of reorganization and support the Debtors' restructuring. The Debtors anticipate that the RSA will be executed as soon as practicable in advance of the anticipated petition date.

The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured debt through the issuances of new equity, subject to dilution by new warrants, and participation in a take-back exit facility. **Importantly, the Plan provides for the satisfaction of all trade, customer, royalty, and other non-funded debt claims in full in the ordinary course of business**. The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

### Key Terms of the Plan[4]

The Plan provides, among other things, that upon emergence:

- **All outstanding and undisputed General Unsecured Claims against the Debtors will be unimpaired and unaffected by the chapter 11 cases and will be paid in full in cash or reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim**;

- All Allowed Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full in cash, or receive such other customary treatment that renders such Claims unimpaired under the Bankruptcy Code;

- Each Holder of an Allowed Sheridan I RBL Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any;

- Each Holder of an Allowed Sheridan I Term Loan Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and

---

[3]   The Manager Parties include Sheridan ICM, LLC, Sheridan SMG, LLC, Sheridan SMG I Carry, LLC, Sheridan Production Company, LLC, Sheridan Production Company I, LLC, Warburg Pincus LLC, and WPS Production Partners, LLC.

[4]   This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any; and

- All Interests in the Debtors will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect; *provided* that the Debtors' limited partners who do not opt out of the voluntary releases contained in the Plan shall receive, as settlement consideration, new warrants, which shall be exercisable into 25% of the shares of the new common stock of New Sheridan issued and outstanding on the Effective Date, at the option of the holders of the new warrants and for no consideration, as of the first day on which holders of such new common stock have received distributions with a value equal to the sum of the Threshold Amount and the Accrual Amount (each as defined in the New Warrant Term Sheet attached to the Plan as Exhibit B).

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3(a) | SIP I RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### Key Dates and Information Regarding Confirmation of the Plan

To implement the financial restructuring contemplated by the RSA, the Debtors expect to file voluntary petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), on or before March 24, 2020. **Upon commencement, the Debtors will request a hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") to be held before the Honorable Marvin Isgur, courtroom 404, or the Honorable David R. Jones, courtroom 400, of the United States Bankruptcy Court,**

Houston Division, 515 Rusk Street Houston, Texas 77002, on March 24, 2020, at 2:30 p.m. (prevailing Central Time), subject to the availability of the Bankruptcy Court.  At the Combined Hearing, the Bankruptcy Court will consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

      **Voting Record Date**.  The voting record date was **February 12, 2020**, which was the date used for determining which Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) (the "Voting Classes") were entitled to vote on the Plan.

      **How May an Interested Party Object to the Plan or Disclosure Statement?**  Any objections (each, an "Objection") to the Plan or the Disclosure Statement must:  (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) served so as to be **actually received** no later than **March 20, 2020, at 4:00 p.m., prevailing Central Time** (the "Objection Deadline") on the below parties.

      **Objections may be either:  (i) emailed to the Debtors' proposed notice and claims agent, Prime Clerk LLC, prior to the Objection Deadline at sheridanobjections@primeclerk.com; (ii) mailed to proposed co-counsel to the Debtors at the addresses below so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors at the e-mail addresses below prior to the Objection Deadline**.  Any Objections received by the Debtors (including via e-mail) before the chapter 11 cases are commenced shall be served on the below parties upon receipt and will be forwarded to the Bankruptcy Court and the Debtors' top fifty (50) largest unsecured creditors listed on each of their bankruptcy petitions and be filed on the Bankruptcy Court's docket by the Debtors immediately upon the filing of such chapter 11 cases.

| *Debtors* |
|---|
| **Sheridan Holding Company I, LLC**<br>1360 Post Oak Blvd., Suite 2500<br>Houston, Texas 77056<br>Attention:  Cheryl S. Phillips |

| Proposed Co-Counsel to the Debtors | |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Attention:  Joshua A. Sussberg, P.C. and<br>Steven N. Serajeddini<br>joshua.sussberg@kirkland.com<br>steven.serajeddini@kirkland.com<br><br>and<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Attention:  Spencer A. Winters and Jaimie Fedell<br>spencer.winters@kirkland.com<br>jaimie.fedell@kirkland.com | **Jackson Walker LLP**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attention:  Matthew D. Cavenaugh and<br>Jennifer F. Wertz<br>mcavenaugh@jw.com<br>jwertz@jw.com |
| *Consenting Sheridan I Revolving Lenders* | *Consenting Sheridan I Term Lenders* |
| **Vinson & Elkins LLP**<br>2001 Ross Avenue, Suite 3900<br>Dallas, TX 75201-2975<br>Attention:  William L. Wallander and<br>Erec Winandy | **Davis Polk & Wardwell LLP**<br>450 Lexington Avenue,<br>New York, New York 10017<br>Attention:  Damian S. Schaible, Nate Sokol, and<br>Stephen D. Piraino |
| *United States Trustee* | |
| **Office of the United States Trustee**<br>**for the Southern District of Texas**<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002 | |

## When Will the Meeting of Creditors Pursuant to Section 341 Occur?

As part of the relief requested by the Debtors in connection with the filing of their chapter 11 cases, the Debtors will request that the U.S. Trustee **not** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code.  Accordingly, such meeting will not be convened if the Plan is confirmed within seventy-five (75) days after the Petition Date or such other time as set by the Bankruptcy Court.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, ATTACHED HERETO AS **ANNEX I**, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES **UNLESS** SUCH HOLDERS: (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

*[Remainder of page intentionally left blank]*

6

Houston, Texas
February 21, 2020

/s/ Matthew D. Cavenaugh

Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:        (713) 752-4200
Facsimile:        (713) 752-4221
Email:             mcavenaugh@jw.com
                   jwertz@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:             joshua.sussberg@kirkland.com
                   steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:             spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Annex I**

**Discharge, Injunctions, Exculpation, and Releases**

Please be advised that Article VIII of the Plan contains certain release, exculpation, and injunction provisions as follows:

**Relevant Definitions**

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) each Consenting Stakeholder; (c) any official committees appointed in the Chapter 11 Cases and each of their respective members; and (d) each current and former Affiliate of each Entity in clause (a) through the following clause (e); and (e) each Related Party of each Entity in clause (a) through this clause (e).

"**Released Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the Term Loan Group (e) each Company Party; (f) each Sheridan I Revolving Lender; (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Interests; (l) each Exit Facility Lender; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n); provided that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

"**Releasing Parties**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the Term Loan Group; (e) each Company Party; (f) each Sheridan I Revolving Lender; (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Claims; (l) all Holders of Interests; (m) each Exit Facility Lender; (n) each current and former Affiliate of each Entity in clause (a) through  the  following  clause (o);  and  (o) each Related Party of each Entity in clause (a) through this clause (o); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further,* that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

A.  *Discharge of Claims and Termination of Interests.*

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest**

accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B. *Release of Liens*.

Except as otherwise provided in the Exit Facility Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C. *Releases by the Debtors*.

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives,

and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D.** *Releases by Holders of Claims and Interests.*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for

hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

    **E.** *Exculpation***.**

      **Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

      **The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

    **F.** *Injunction***.**

      **Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims**

**or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**<u>Exhibit 2</u>**

**New York Times Publication Notice**

The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

# PROOF OF PUBLICATION

Feb 24 2020

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

FEB 24 2020 B9 NATIONAL

Alice Weber

Sworn before me the 24th day of Feb. 2020

Michelle M Scibilia

Notary Public

MICHELLE M. SCIBILIA
Notary Public, State of New York
Registration #01SC6281145
Qualified In Nassau County
Commission Expires May 13, 2021

Dated as of February 21, 2020

Subject: **Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters.**

To Whom It May Concern,

On or before February 21, 2020, the anticipated debtors and debtors in possession (collectively, the "Debtors"),[1] commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), from Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]

**The Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, https://cases.primeclerk.com/sheridanballots.** Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed cocounsel, Kirkland & Ellis LLP and Jackson Walker LLP, at the respective addresses specfied below. Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court. Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

If you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases, by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridanIballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

The Debtors have reached an agreement-in-principle with a majority of the lenders under the Sheridan I Term Loan Facilities and the Sheridan I RBL Facilities (collectively, the "Consenting Lenders"), the Manager, and certain Manager Parties[3] regarding the terms of a restructuring support agreement (the "RSA"), the form of which is attached to the Disclosure Statement as Exhibit B. Among other things, the RSA will obligate the Consenting Lenders to vote to approve the Debtors' "prepackaged" plan of reorganization and support the Debtors' restructuring. The Debtors anticipate that the RSA will be executed as soon as practicable in advance of the anticipated petition date.

The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured debt through the issuances of new equity, subject to dilution by new warrants, and participation in a take-back exit facility. **Importantly, the Plan provides for the satisfaction of all trade, customer, royalty, and other non-funded debt claims in full in the ordinary course of business.** The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

**Key Terms of the Plan[4]**

The Plan provides, among other things, that upon emergence:

- **All outstanding and undisputed General Unsecured Claims against the Debtors will be unimpaired and unaffected by the chapter 11 cases and will be paid in full in cash or reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim;**
- All Allowed Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full in cash, or receive such other customary treatment that renders such Claims unimpaired under the Bankruptcy Code;
- Each Holder of an Allowed Sheridan I RBL Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any;
- Each Holder of an Allowed Sheridan I Term Loan Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any; and
- All Interests in the Debtors will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect; *provided* that the Debtors' limited partners who do not opt out of the voluntary releases contained in the Plan shall receive, as settlement consideration, new warrants, which shall be exercisable into 25% of the shares of the new common stock of New Sheridan issued and outstanding on the Effective Date, at the option of the holders of the new warrants and for no consideration, as of the first day on which holders of such new common stock have received distributions with a value equal to the sum of the Threshold Amount and the Accrual Amount (each as defined in the New Warrant Term Sheet attached to the Plan as Exhibit B).

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3(a) | SIP I RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Key Dates and Information Regarding Confirmation of the Plan**

To implement the financial restructuring contemplated by the RSA, the Debtors expect to file voluntary petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), on or before March 24, 2020. **Upon commencement, the Debtors will request a hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") to be held before the Honorable Marvin Isgur, courtroom 404, or the Honorable David R. Jones, courtroom 400, of the United States Bankruptcy Court, Houston Division, 515 Rusk Street Houston, Texas 77002, on March 24, 2020, at 2:30 p.m. (prevailing Central Time), subject to the availability of the Bankruptcy Court.** At the Combined Hearing, the Bankruptcy Court will consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**Voting Record Date.** The voting record date was **February 12, 2020** which was the date used for determining which Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) (the "Voting Classes") were entitled to vote on the Plan.

**How May an Interested Party Object to the Plan or Disclosure Statement?** Any objections (each, an "Objection") to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) served so as to be **actually received** no later than **March 20, 2020, at 4:00 p.m., prevailing Central Time** (the "Objection Deadline") on the below parties.

**Objections may be either: (i) emailed to the Debtors' proposed notice and claims agent, Prime Clerk LLC, prior to the Objection Deadline at sheridanobjections@primeclerk.com; (ii) mailed to proposed co-counsel to the Debtors at the addresses below so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors at the e-mail addresses below prior to the Objection Deadline.** Any Objections received by the Debtors (including via e-mail) before the chapter 11 cases are commenced shall be served on the below parties upon receipt and will be forwarded to the Bankruptcy Court and the Debtors' top fifty (50) largest unsecured creditors listed on each of their bankruptcy petitions and be filed on the Bankruptcy Court's docket by the Debtors immediately upon the filing of such chapter 11 cases.

(i) ***Debtors:* Sheridan Holding Company I, LLC**, 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056, Attention: Cheryl S. Phillips; (ii) ***Proposed Co-Counsel to the Debtors:* Kirkland & Ellis LLP**, 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Attention: Joshua A. Sussberg, P.C. and Steven N. Serajeddini, joshua.sussberg@kirkland.com, steven.serajeddini@kirkland.com -and- **Kirkland & Ellis LLP**, 300 North LaSalle Street, Chicago, IL 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Attention: Spencer A. Winters and Jaimie Fedell, spencer.winters@kirkland.com, jaimie.fedell@kirkland.com -and- **Jackson Walker LLP**, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attention: Matthew D. Cavenaugh and Jennifer F. Wertz, mcavenaugh@jw.com, jwertz@jw.com; (iii) ***Consenting Sheridan I Revolving Lenders:* Vinson & Elkins LLP**, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201-2975, Attention: William L. Wallander and Erec Winandy; (iv) ***Consenting Sheridan I Term Lenders:* Davis Polk & Wardwell LLP**, 450 Lexington Avenue, New York, New York 10017, Attention: Damian S. Schaible, Nate Sokol, and Stephen D. Piraino; and (v) ***United States Trustee:* Office of the United States Trustee for the Southern District of Texas**, 515 Rusk Street, Suite 3516, Houston, Texas 77002.

**When Will the Meeting of Creditors Pursuant to Section 341 Occur?** As part of the relief requested by the Debtors in connection with the filing of their chapter 11 cases, the Debtors will request that the U.S. Trustee **not** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code. Accordingly, such meeting will not be convened if the Plan is confirmed within seventy five (75) days after the Petition Date or such other time as set by the Bankruptcy Court.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES UNLESS SUCH HOLDERS: (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.**

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

[3] The Manager Parties include Sheridan ICM, LLC, Sheridan SMG, LLC, Sheridan SMG I Carry, LLC, Sheridan Production Company, LLC, Sheridan Production Company I, LLC, Warburg Pincus LLC, and WPS Production Partners, LLC.

[4] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

**TECHNOLOGY**

# Coronavirus Hits Apple's Financial Forecast

Tech production lines are pulling back, anticipating lower demand amid an outbreak.

## The Week in Tech

By NELLIE BOWLES

Hello, New York Times tech readers. I'm Nellie Bowles, the tech and culture reporter.

It was a week that captured the central issues of tech in 2020: privacy versus the convenience of smart home devices, dependence on the smooth running of China's manufacturing industry, battles over regulation in Europe and the lockdown on internal dissent at Silicon Valley companies.

So to those wanting to take a break from the endless Democratic primary jockeying, settle into a good chair, because what the week brought you is a basket of beautiful tech features.

We begin:

Coronavirus is starting to affect tech production lines and demand for products. Apple cut its sales expectations for the quarter, citing the virus's impact on factories and stores.

The warning was a clear indication of how big the company has bet on China and how the impact of the outbreak might ripple out into the global economy, explored in an article by Daisuke Wakabayashi.

Amazon executives are also preparing for coronavirus disruptions. An article by Karen Weise and Michael Corkery outlined the measures the company is taking to hedge against the potential that the impact of the virus gets worse. The Everything Store is "making larger and more frequent orders of Chinese-made products that had already been shipped to the United States," they wrote.

PETRA FORD FOR THE NEW YORK TIMES

**A bracelet that prevents recording by Siri, Alexa and other smart devices, developed at the University of Chicago, is one approach to guarding your privacy.**

But at the same time, some suppliers are trying to lower demand, cutting back on advertising and promotions so they don't run out of stuff.

### Privacy Debates and Doorbells

Speaking of Amazon: Not everyone agrees on where to draw the line between privacy and convenience, sometimes not even everyone in the same house. One couple fighting over whether to keep an Alexa-enabled Echo speaker in the home invented their own solution: a bracelet of silence that jams microphones. Wear it and it's like smart-home armor. The tale of the couple, two computer science professors, was brought to us by Kashmir Hill.

But if you do agree on getting something that records video and listens — especially a Ring doorbell — there are some privacy best practices, which Brian X. Chen outlined in his latest Tech Fix column. There are many, many steps required, including getting a burner phone number. And his conclusion: "If that all sounds like a lot of effort just to use a security camera, that's because the security concerns make Ring products impractical to own."

In Europe, leaders are very good at regulating technology, pioneering responses to issues of privacy and antitrust, but can it build tech giants of its own?

My colleagues Adam Satariano and Monika Pronczuk wrote: "As Europe has created a reputation as the world's most aggressive watchdog of Silicon Valley, it has failed to nurture its own tech ecosystem.

That has left countries in the region increasingly dependent on companies that many leaders distrust." Now it is trying to change that and reclaim "technological sovereignty."

Not surprisingly, Silicon Valley companies have been making more trips to Brussels recently to lobby against some of that regulation: a new digital policy, including first-of-its-kind rules on the ways that artificial intelligence can be used by companies, Adam wrote.

### Some Can't-Miss Stories

■ Noam Scheiber and Kate Conger had a big story in The New York Times Magazine on the Great Google Revolt: what happened when a group of employees tried to make the company stop doing work they saw as unethical.

Mostly, they were fired. Dive into the article to understand how Google went from an ultra-transparent company that encouraged employee dissent to, well, not.

■ The Style section's Penelope Green took us to deathbeds. As more people choose to die at home and more families have smartphones, deathbed photos are returning.

"What's happening now is that people are taking back that process," said Stanley B. Burns, 81, an ophthalmologist who runs the Burns Archive, a collection of post-mortem and medical photos. "But the impulse to photograph is the same as it was for the Victorians."

■ Our colleague in Opinion, Susan Fowler, shook the tech world in 2017 when she wrote a first-person account of working at Uber and suffering the indignities and discrimination of a sexist, start-up workplace.

Her memoir, "Whistleblower: My Journey to Silicon Valley and Fight for Justice at Uber," is out now, and the Book Review called it "a powerful illustration of the obstacles our society continues to throw up in the paths of ambitious young women."

■ Kickstarter officially voted to unionize. There have been large efforts to organize tech labor, but many have faltered.

■ San Diego is likely to recognize Instacart workers as employees rather than independent contractors, according to a story in Bloomberg Law.

■ A general reminder from The New York Times Magazine's Future of Work issue: Professional video game players are in high demand as the industry competes for talent, and now they make even more money.

According to Newzoo, a games and e-sports analytics company, competitive e-sports revenue last year was about $1.1 billion, an almost 27 percent increase from 2018, Robert Capps wrote. So, in conclusion, get in while the getting is good.

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| PIER 1 IMPORTS, INC., *et al.*,[1] | ) Case No. 20-30805 (KRH) |
| Debtors. | ) (Jointly Administered) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that on February 18, 2020, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered the *Order (I) Establishing Bidding Procedures, (II) Scheduling the Bid Deadlines and an Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Form of Asset Purchase Agreement, (V) Authorizing Assumption of the Plan Support Agreement, and (VI) Granting Related Relief* [Docket No. 102] (the "Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") to select the party or parties to purchase the Debtors' Assets. The Auction will be governed by the bidding procedures approved pursuant to the Order (attached to the Order as Exhibit 1, the "Bidding Procedures").

Copies of the Order, the Bidding Procedures, or other documents related thereto are available upon request to Epiq Corporate Restructuring, LLC by calling (866) 977-0883 (toll free) or (503) 520-4412 (international) or by visiting the Debtors' Case Website at https://dm.epiq11.com/Pier1.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **Monday, March 23, 2020, at 5:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider Qualified Bids submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures as set forth in the Order, on **Tuesday, March 31, 2020** at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, NY 10022, **at a time to be determined at a later date**. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one (1) business day before such Auction, and file a notice of the date, time, and place of the Auction with the Court no later than two business days before such Auction and post such notice on the Debtors' Case Website. The Debtors may modify the date, time, and place of the Auction by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than one (1) business day before the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that approval of the Sale of the Debtors' Assets to the Successful Bidder(s), and any objections thereto, will be heard in connection with confirmation of the plan.

Richmond, Virginia, Dated: February 20, 2020, /s/ Jeremy S. Williams, **KUTAK ROCK LLP,** Michael A. Condyles (VA 27807), Peter J. Barrett (VA 46179), Jeremy S. Williams (VA 77469), Brian H. Richardson (VA 92477), 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219-4071, Telephone: (804) 644-1700, Facsimile: (804) 783-6192, Email: Michael.Condyles@KutakRock.com, Peter.Barrett@KutakRock.com, Jeremy.Williams@KutakRock.com, Brian.Richardson@KutakRock.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession* -and- **KIRKLAND & ELLIS LLP,** Joshua A. Sussberg, P.C. (admitted *pro hac vice*), Emily E. Geier (admitted *pro hac vice*), AnnElyse Scarlett Gains (admitted *pro hac vice*), 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Email: joshua.sussberg@kirkland.com, emily.geier@kirkland.com, annelyse.gains@kirkland.com -and- Joshua M. Altman (admitted *pro hac vice*), 300 North LaSalle Street, Chicago, Illinois 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Email: josh.altman@kirkland.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession.*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 3]. The location of the Debtors' service address is 100 Pier 1 Place, Fort Worth, Texas 76102.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

The best employers.
The best candidates.
With postings
campaigned
over 1,300 sites.

Jobs

Find a good fit. Visit nytimes.com/jobs

**DICKSTEIN SHAPIRO, LLP**
**NOTICE OF INTENT**
**TO DISPOSE OF CLIENT FILES**

Dickstein Shapiro LLP ("Dickstein") is a law firm, which is no longer in the practice of law as of February 2016. As of February 8, 2016 (the "Wind-Down Date"), Dickstein's principal place of business was 1825 Eye Street NW, Washington, D.C. 20006 (the "D.C. Office"). Dickstein also had offices in New York, New York, Menlo Park, California, and Los Angeles, California.

As of the Wind-Down Date, Dickstein maintained certain files of former clients of the firm, which files were not transferred with the former partners to their new firms (the "Retained Client Files"). Dickstein shall now undertake to dispose of certain Retained Client Files remaining in its possession. Parties who believe that their file(s) are in the possession of Dickstein and desire to retrieve such file(s) are asked to follow these file disposition procedures. **There is no requirement by any such party to retrieve a file(s) it otherwise does not wish to obtain.** After a certain period of time, as set forth below, all unretrieved files may be destroyed.

**1. HOW TO REQUEST AN OPPORTUNITY TO RETRIEVE YOUR FILE.**

To request an opportunity to claim and retrieve a client file, (i) the former client on whose behalf services were rendered; (ii) a qualified agent of such client; or (iii) the attorney formerly or presently responsible for the file, shall complete and return a File Retrieval Form, according to the instructions contained therein, which can be obtained by contacting Dickstein's Chief Liquidation Officer at:

Carroll Services LLC
19680 Marino Lakes Cir.
Unit 2403
Miromar Lakes, FL 33913
Attn: James P Carroll, Chief Liquidation Officer
Tel: (617) 899-9007
Email: jim.carroll@carrollservicesllc.com

**Such forms should be received not later than May 31, 2020.**

To the extent a File Retrieval Form is timely received, the identity of the client or qualified agent requesting the file (s) will be verified and, to the extent the claimed file is one that may be located by Dickstein, such former client or qualified agent will be provided an opportunity to obtain the file(s). Such file(s) will not be disposed of or abandoned by Dickstein if adequate arrangements are made with Dickstein within sixty (60) days following timely receipt of the File Retrieval Form.

**2. CONSEQUENCES OF FAILURE TO REQUEST AN OPPORTUNITY TO RETRIEVE YOUR CLIENT FILE(S)**

FOR THOSE RETAINED CLIENT FILES FOR WHICH NO FILE RETRIEVAL FORM IS TIMELY RECEIVED, DICKSTEIN MAY DESTROY SUCH FILES. ACCORDINGLY, YOUR FILE MAY BE DESTROYED IF YOU CHOOSE NOT TO ACT.

**THERE IS NO OBLIGATION TO RETRIEVE YOUR FILE(S).**

Dated: February 24, 2020

James P. Carroll
Chief Liquidation Officer
Dickstein Shapiro LLP
*No Longer in Practice of Law*

Dickstein's offices were located at: 1825 Eye Street, NW, Washington DC; 1875 Eye Street, NW, Washington DC; 1850 K Street NW, Washington DC; 1633 Broadway, New York, NY; 2049 Century Park East, Los Angeles, CA; 3500 Alameda de Las Pulgas, Menlo Park, CA.

The New York Times

Support brighter futures.

Learn how you can sponsor classroom subscriptions at
**nytimes.com/sponsor.**

Dated as of February 21, 2020

Subject: **Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters.**

To Whom It May Concern,

On or before February 21, 2020, the anticipated debtors and debtors in possession (collectively, the "Debtors"),[1] commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), from Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]

**The Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, https://cases.primeclerk.com/sheridanballots.** Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed cocounsel, Kirkland & Ellis LLP and Jackson Walker LLP, at the respective addresses specified below. Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court. Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

If you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases, by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridaniballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

The Debtors have reached an agreement-in-principle with a majority of the lenders under the Sheridan I Term Loan Facilities and the Sheridan I RBL Facilities (collectively, the "Consenting Lenders"), the Manager, and certain Manager Parties[3] regarding the terms of a restructuring support agreement (the "RSA"), the form of which is attached to the Disclosure Statement as Exhibit B. Among other things, the RSA will obligate the Consenting Lenders to vote to approve the Debtors' "prepackaged" plan of reorganization and support the Debtors' restructuring. The Debtors anticipate that the RSA will be executed as soon as practicable in advance of the anticipated petition date.

The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured debt through the issuances of new equity, subject to dilution by new warrants, and participation in a take-back exit facility. **Importantly, the Plan provides for the satisfaction of all trade, customer, royalty, and other non-funded debt claims in full in the ordinary course of business.** The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

**Key Terms of the Plan**[4]

The Plan provides, among other things, that upon emergence:

- **All outstanding and undisputed General Unsecured Claims against the Debtors will be unimpaired and unaffected by the chapter 11 cases and will be paid in full in cash or reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim;**
- All Allowed Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full in cash, or receive such other customary treatment that renders such Claims unimpaired under the Bankruptcy Code;
- Each Holder of an Allowed Sheridan I RBL Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any;
- Each Holder of an Allowed Sheridan I Term Loan Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any; and
- All Interests in the Debtors will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect; *provided* that the Debtors' limited partners who do not opt out of the voluntary releases contained in the Plan shall receive, as settlement consideration, new warrants, which shall be exercisable into 25% of the shares of the new common stock of New Sheridan issued and outstanding on the Effective Date, at the option of the holders of the new warrants and for no consideration, as of the first day on which holders of such new common stock have received distributions with a value equal to the sum of the Threshold Amount and the Accrual Amount (each as defined in the New Warrant Term Sheet attached to the Plan as Exhibit B).

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3(a) | SIP I RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Key Dates and Information Regarding Confirmation of the Plan**

To implement the financial restructuring contemplated by the RSA, the Debtors expect to file voluntary petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), on or before March 24, 2020. **Upon commencement, the Debtors will request a hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") to be held before the Honorable Marvin Isgur, courtroom 404, or the Honorable David R. Jones, courtroom 400, of the United States Bankruptcy Court, Houston Division, 515 Rusk Street Houston, Texas 77002, on March 24, 2020, at 2:30 p.m. (prevailing Central Time), subject to the availability of the Bankruptcy Court.** At the Combined Hearing, the Bankruptcy Court will consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**Voting Record Date.** The voting record date was **February 12, 2020**, which was the date used for determining which Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) (the "Voting Classes") were entitled to vote on the Plan.

**How May an Interested Party Object to the Plan or Disclosure Statement?** Any objections (each, an "Objection") to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) served so as to be **actually received** no later than **March 20, 2020, at 4:00 p.m., prevailing Central Time** (the "Objection Deadline") on the below parties.

**Objections may be either: (i) emailed to the Debtors' proposed notice and claims agent, Prime Clerk LLC, prior to the Objection Deadline at sheridanobjections@primeclerk.com; (ii) mailed to proposed co-counsel to the Debtors at the addresses below so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors at the e-mail addresses below prior to the Objection Deadline.** Any Objections received by the Debtors (including via e-mail) before the chapter 11 cases are commenced shall be served on the below parties upon receipt and will be forwarded to the Bankruptcy Court and the Debtors' top fifty (50) largest unsecured creditors listed on each of their bankruptcy petitions and be filed on the Bankruptcy Court's docket by the Debtors immediately upon the filing of such chapter 11 cases.

(i) ***Debtors:*** **Sheridan Holding Company I, LLC,** 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056, Attention: Cheryl S. Phillips; (ii) ***Proposed Co-Counsel to the Debtors:*** **Kirkland & Ellis LLP,** 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Attention: Joshua A. Sussberg, P.C. and Steven N. Serajeddini, joshua.sussberg@kirkland.com, steven.serajeddini@kirkland.com -and- **Kirkland & Ellis LLP,** 300 North LaSalle Street, Chicago, IL 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Attention: Spencer A. Winters and Jaimie Fedell, spencer.winters@kirkland.com, jaimie.fedell@kirkland.com -and- **Jackson Walker LLP,** 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attention: Matthew D. Cavenaugh and Jennifer F. Wertz, mcavenaugh@jw.com, jwertz@jw.com; (iii) ***Consenting Sheridan I Revolving Lenders:*** **Vinson & Elkins LLP,** 2001 Ross Avenue, Suite 3900, Dallas, TX 75201-2975, Attention: William L. Wallander and Erec Winandy; (iv) ***Consenting Sheridan I Term Lenders:*** **Davis Polk & Wardwell LLP,** 450 Lexington Avenue, New York, New York 10017, Attention: Damian S. Schaible, Nate Sokol, and Stephen D. Piraino; and (v) ***United States Trustee:*** **Office of the United States Trustee for the Southern District of Texas,** 515 Rusk Street, Suite 3516, Houston, Texas 77002.

**When Will the Meeting of Creditors Pursuant to Section 341 Occur?** As part of the relief requested by the Debtors in connection with the filing of their chapter 11 cases, the Debtors will request that the U.S. Trustee **not** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code. Accordingly, such meeting will not be convened if the Plan is confirmed within seventyfive (75) days after the Petition Date or such other time as set by the Bankruptcy Court.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES UNLESS SUCH HOLDERS: (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.**

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

[3] The Manager Parties include Sheridan ICM, LLC, Sheridan SMG, LLC, Sheridan SMG I Carry, LLC, Sheridan Production Company, LLC, Sheridan Production Company I, LLC, Warburg Pincus LLC, and WPS Production Partners, LLC.

[4] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

Store
FROM THE NEW YORK TIMES

**Page Reprints.**
store.nytimes.com
800.671.4332

## Exhibit 3

**Houston Chronicle Publication Notice**

| 0000211471   SHERIDAN HOLDING CO. II, LLC | Page 1 of 2 | Houston Chronicle<br>CLASSIFIEDS |



## AFFIDAVIT OF PUBLICATION

### STATE OF TEXAS:

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared, the Newspaper Representative at the HOUSTON CHRONICLE, a daily newspaper published in Harris County, Texas, and generally circulated in the Counties of: HARRIS, TRINITY, WALKER, GRIMES, POLK, SAN JACINTO, WASHINGTON, MONTGOMERY, LIBERTY, AUSTIN, WALLER, CHAMBERS, COLORADO, BRAZORIA, FORT BEND, GALVESTON, WHARTON, JACKSON, and MATAGORDA and that the publication, of which the annexed herein, or attached to, is a true and correct copy, was published to-wit:

SHERIDAN HOLDING CO. II, LLC     0000211471     HC039002320
RAN A LEGAL NOTICE
SIZE BEING:  4 x9.25 I   (37.00I)

| Product | Date | Class | Page |
|---|---|---|---|
| Houston Chronicle | Feb 25 2020 | Legal Notices | B 4 |

_Victoria Bone_    *RClerk*
NEWSPAPER REPRESENTATIVE

Sworn and subscribed to before me, this 25th Day of February A.D. 2020



_Charles E Walichowski_
Notary Public in and for the State of Texas

Dated as of February 21, 2020

**Subject:** Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters.

To Whom It May Concern,

On or before February 21, 2020, the anticipated debtors and debtors in possession (collectively, the "**Debtors**"),[1] commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), from Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "**Plan**"), attached as **Exhibit A** to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "**Disclosure Statement**").[2]

The Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, **https://cases. primeclerk.com/sheridanballots**. Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed cocounsel, Kirkland & Ellis LLP and Jackson Walker LLP, at the respective addresses specified below. Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court. Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www. txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

If you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases, by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridanballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

The Debtors have reached an agreement-in-principle with a majority of the lenders under the Sheridan I Term Loan Facilities and the Sheridan I RBL Facilities (collectively, the "**Consenting Lenders**"), the Manager, and certain Manager Parties[3] regarding the terms of a restructuring support agreement (the "**RSA**"), the form of which is attached to the Disclosure Statement as **Exhibit B**. Among other things, the RSA will obligate the Consenting Lenders to vote to approve the Debtors' "prepackaged" plan of reorganization and support the Debtors' restructuring. The Debtors anticipate that the RSA will be executed as soon as practicable in advance of the anticipated petition date.

The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured debt through the issuances of new equity, subject to dilution by new warrants, and participation in a take-back exit facility. **Importantly, the Plan provides for the satisfaction of all trade, customer, royalty, and other non-funded debt claims in full in the ordinary course of business.** The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

**Key Terms of the Plan[4]**

The Plan provides, among other things, that upon emergence:

• All outstanding and undisputed General Unsecured Claims against the Debtors will be unimpaired and unaffected by the chapter 11 cases and will be paid in full in cash or reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim;

• All Allowed Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full in cash, or receive such other customary treatment that renders such Claims unimpaired under the Bankruptcy Code;

• Each Holder of an Allowed Sheridan I RBL Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any;

• Each Holder of an Allowed Sheridan I Term Loan Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any; and

• All Interests in the Debtors will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect; provided that the Debtors' limited partners who do not opt out of the voluntary releases contained in the Plan shall receive, as settlement consideration, new warrants, which shall be exercisable into 25% of the shares of the new common stock of New Sheridan issued and outstanding on the Effective Date, at the option of the holders of the new warrants and for no consideration, as of the first day on which holders of such new common stock have received distributions with a value equal to the sum of the Threshold Amount and the Accrual Amount (each as defined in the New Warrant Term Sheet attached to the Plan as **Exhibit B**).

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3(a) | SIPI RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(b) | SIPI A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(c) | SIPI I-A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(a) | SIPI Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(b) | SIPI I-A Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(c) | SIPI I-M Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired /Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired /Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Key Dates and Information Regarding Confirmation of the Plan**

To implement the financial restructuring contemplated by the RSA, the Debtors expect to file voluntary petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**"), on or before March 24, 2020. Upon commencement, the Debtors will request a hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "**Combined Hearing**") to be held before the Honorable Marvin Isgur, courtroom 404, or the Honorable

David R. Jones, courtroom 400, of the United States Bankruptcy Court, Houston Division, 515 Rusk Street Houston, Texas 77002, on March 24, 2020, at 2:30 p.m. (prevailing Central Time), subject to the availability of the Bankruptcy Court. At the Combined Hearing, the Bankruptcy Court will consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**Voting Record Date.** The voting record date was **February 12, 2020**, which was the date used for determining which Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) (the "**Voting Classes**") were entitled to vote on the Plan.

**How May an Interested Party Object to the Plan or Disclosure Statement?** Any objections (each, an "**Objection**") to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) served so as to be **actually received** no later than **March 20, 2020, at 4:00 p.m., prevailing Central Time** (the "**Objection Deadline**") on the below parties.

**Objections may be either: (i) emailed to the Debtors' proposed notice and claims agent, Prime Clerk LLC, prior to the Objection Deadline, at sheridanobjections@primeclerk.com; (ii) mailed to proposed co-counsel to the Debtors at the addresses below so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors at the e-mail addresses below prior to the Objection Deadline.** Any Objections received by the Debtors (including via e-mail) before the chapter 11 cases are commenced shall be served on the below parties upon receipt and will be forwarded to the Bankruptcy Court and the Debtors' top fifty (50) largest unsecured creditors listed on each of their bankruptcy petitions and be filed on the Bankruptcy Court's docket by the Debtors immediately upon the filing of such chapter 11 cases.

(i) *Debtors:* Sheridan Holding Company I, LLC, 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056, Attention: Cheryl S. Phillips; (ii) *Proposed Co-Counsel to the Debtors:* Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Attention: Joshua A. Sussberg, P.C. and Steven M. Serajeddini, Joshua. sussberg@kirkland.com, steven.serajeddini@kirkland.com -and- **Kirkland & Ellis LLP,** 300 North LaSalle Street, Chicago, IL 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Attention: Spencer A. Winters and Jaimie Fedell, spencer.winters@kirkland.com, Jaimie.fedell@kirkland.com -and- Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attention: Matthew D. Cavenaugh and Jennifer F. Wertz, mcavenaugh@ jw.com, jwertz@jw.com; (iii) *Consenting Sheridan I Revolving Lenders:* Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201-2975, Attention: William L. Wallander and Eric Wilmington; (iv) *Consenting Sheridan I Term Lenders:* Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attention: Damian S. Schaible, Nate Sokol, and Stephen D. Piraino; and (v) *United States Trustee:* Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002.

**When Will the Meeting of Creditors Pursuant to Section 341 Occur?** As part of the relief requested by the Debtors in connection with the filing of their chapter 11 cases, the Debtors will request that the U.S. Trustee not be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code. Accordingly, such meeting will not be convened if the Plan is confirmed within seventyfive (75) days after the Petition Date or such other time as set by the Bankruptcy Court.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**
**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES UNLESS SUCH HOLDERS: (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I-A, L.P. (8094); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

[3] The Manager Parties include Sheridan ICM, LLC, Sheridan SMG, LLC, Sheridan SMG I Carry, LLC, Sheridan Production Company, LLC, Sheridan Production Company I, LLC, Warburg Pincus LLC, and WPS Production Partners, LLC.

[4] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

Legal Notices

To place legal notices email legals@chron.com or call 713.224.6868.

NOTICE TO CREDITORS

Notice To Creditors Ad $74.00*

Call the Legals Team 713-224-6868 Ext. 6435 or 4204

*$74.00 includes first 36 lines and 1 Affidavit of Publication

*$1.92 per line over 36 lines

**NOTICE TO CREDITORS**

Notice is hereby given that original Letters of Administration for the Estate of KATHERINE NEEDHAM MIKUS a/k/a KATHERINE NEEDHAM MIKUSH, Deceased, were issued on February 19, 2020, in Cause No. PR39799, pending in the County Court at Law No. 3 And Probate Court, Brazoria County, Texas, to: FRANCES MARIE CROWDER.

All persons having claims against this Estate which is currently being administered are required to present them to the undersigned within the time and in the manner prescribed by law.

c/o: **A.G. Crouch**
**Attorney at Law**
**235 W. Sealy Street**
**Alvin, Texas 77511**

**DATED** the 19th day of February, 2020.

/s/ A.G. Crouch
A.G. Crouch
Attorney for FRANCES MARIE CROWDER
State Bar No.: 05148000
235 W. Sealy Street
Alvin, Texas 77511
Telephone: (281) 331-5288
Facsimile: (281) 331-9346
E-mail: agcrouch@crouchlawoffice.com

BIDS & PROPOSALS

**INVITATION TO BIDDERS**

Sealed Bids, in duplicate, addressed to GALVESTON COUNTY MUNICIPAL UTILITY DISTRICT NO. 31, Attention Daniel Reyna, President, Board of Directors, will be received at the office of A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025, until 1:00 p.m. Local Time, March 10, 2020, and then publicly opened and read for "WATER, SANITARY SEWER, STORM SEWER, AND PAVING TO SERVE RAINSONG SECTION THREE-B AND CENTRAL PARK BOULEVARD for GALVESTON COUNTY MUNICIPAL UTILITY DISTRICT NO. 31, Galveston County, Texas" Scope of Work of the Contract includes the construction of water, sanitary, drainage, and paving to serve a single-family subdivision in Galveston County. (Key Map No. 700-N).

Bids received after the closing time will be returned unopened. A **MANDATORY** pre-bid conference will be held on March 3, 2020, at 1:00 p.m. Local Time, at the office of A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025. Attendance by each prospective bidder or its representative at the pre-bid conference is **MANDATORY**, and no Bid will be opened unless the bidder or representative was present at the pre-bid conference.

Each Bid must be accompanied by a Bid Bond or a certified or cashier's check, acceptable to the Owner, in an amount not less than five percent (5%) of the total amount Bid, as a guarantee that the successful bidder will enter into the Contract and execute the Bonds on the forms provided, and provide the required insurance certificates within seven (7) days after the date Contract Documents are received by the Contractor.

Copies of the bidding documents may be obtained from www.CivcastUSA.com: search project title. Bidders must register on this website in order to view and/or download specifications, plans, soils report, and environmental reports for this Project. There is NO charge to view or download documents.

The Owner reserves the right to reject any or all Bids and to waive all defects and irregularities in bidding or bidding process except time of submitting a Bid. The Successful Bidder, if any, will be the responsible Bidder which in the Board's judgment will be most advantageous to the District and result in the best and most economical completion of the Project.

**The requirements of Subchapter J, Chapter 552, Government Code, may apply to this Bid and/or Contract and the Contractor agrees that the Contract can be terminated if the Contractor knowingly or intentionally fails to comply with a requirement of that subchapter.**

**San Jacinto College (SJC) Request for Qualifications Project No. 20-23 Financial Audit Services**

SJC is soliciting sealed qualifications from firms to provide financial audit services. Solicitation documents under RFQ 20-23 Financial Audit Services are available and qualifications may be submitted at https://sanjac.ionwave.net. Submittal is due March 17, 2020 by 10:00 a.m.

Direct inquiries to Genevieve.Scholes@sjcd.edu or 281-998-6349.

Your brand in front of millions.

Place a digital ad today. chron.com/advertise HOUSTON★CHRONICLE

**ADVERTISEMENT FOR BIDS**

**HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 61 REHABILITATION OF DISTRICT WATER LINES – PHASE II**

Sealed Bids for the construction of the REHABILITATION OF DISTRICT WATER LINES – PHASE II will be received, by HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 61, at the office of the Engineer, A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025, until 2:00 pm, local time on March 10, 2020, at which time the Bids received will be publicly opened and read. The Project consists of rehabilitation of approximately 15,000 linear feet of 12-inch, 8-inch, and 6-inch water line using "in situ" replacement with pre--chlorinated pipe bursting method, including replacement of valves, fire hydrants, and service connections (Key Map No. 445-U, V, Y, Z).

Bids shall be on a lump sum and unit price basis as indicated in the Bid Form.

The Issuing Office for the Bidding Documents is: A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025, telephone 713-942-2700, Darla Dewar, dkd@as-engineers.com. Bidding Documents may be examined online at www.CivcastUSA.com .

A **mandatory** pre-bid conference will be held at 2:00 pm on March 3, 2020, in the office of the Engineer at the above address. Attendanceis a prerequisite for qualification of Bidders. Failure of a bidder to attend the pre-bid conference may be cause for rejection of the bid.

Bid security, Conflict of Interest Questionnaire, and Texas Ethics Commission Form 1295 shall be furnished in accordance with the Instructions to Bidders.

**ADVERTISEMENT FOR BIDS**

**PORTER MUNICIPAL UTILITY DISTRICT LIFT STATION "C" REPLACEMENT**

Sealed Bids for the construction of the LIFT STATION "C" REPLACEMENT will be received, by PORTER MUNICIPAL UTILITY DISTRICT, at the office of the Engineer, A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025, until 10:00 am, local time on March 10, 2020, at which time the Bids received wi ll be publicly opened and read. The Project consists of replacing an existing submersible lift station with a proposed eight-foot (8') wet well and pre-fabricated Gorm an Rupp Modular Above Ground Lift Station and associated site work (Key Map No. 296-G).

Bids shall be on a lump sum and unit price basis as indicated in the Bid Form.

The Issuing Office for the Bidding Documents is: A&S Engineers, Inc., 10377 Stella Link Road, Houston, TX 77025, telephone 713-942-2700, Darla Dewar, dkd@as-engineers.com. Bidding Documents may be examined online at www.CivcastUSA.com .

A **mandatory** pre-bid conference will be held at 10:00 am on March 3, 2020, in the office of the Engineer at the above address. Attendance is a prerequisite for qualification of Bidders. Failure of a bidder to attend the pre-bid conference may be cause for rejection of the bid.

Bid security, Conflict of Interest Questionnaire, and Texas Ethics Commission Form 1295 shall be furnished in accordance with the Instructions to Bidders.

Reaching local communities.

chron.com/advertise HOUSTON★CHRONICLE

LEGAL NOTICES

**Notice**

**Public Meeting**
**Farm-to-Market (FM) 2100**
**From Huffman-Cleveland Road North to Future SH 99**

**CSJ: 1062-02-011**

**Harris County, Texas**

The Texas Department of Transportation (TxDOT) proposes the construction of improvements to Farm-to-Market (FM) 2100 between Huffman-Cleveland Road to future State Highway (SH) 99 (Grand Parkway) in northeastern Harris County, Texas. This notice advises the public that TxDOT will be conducting a second public meeting on the proposed project. The meeting will be held on March 5, 2020, at the May Community Center, located at 2100 Wolf Road, Huffman, Texas 77336. This meeting will be held in an open house format from 5:30 p.m. to 7:30 p.m. **No formal presentation will be made**. The purpose of the meeting is to present proposed design changes that occurred following the February 9, 2017 Public Meeting and to receive additional public comments on the proposed project.

The project would accommodate future anticipated traffic demand and growth in the region, while improving safety by providing a divided highway with raised medians and dedicated left turn turnouts at select intersections. The length of the proposed project is approximately 5.7 miles.

The existing FM 2100 roadway consists of two 12-foot-wide travel lanes (one in each direction), 0- to 4-foot-wide outside shoulders, vegetated ditches, and no sidewalks or bicycle accommodations. The existing Right-of-Way (ROW) in this section of the project is approximately 60 to 150 feet in width.

The acquisition of approximately 176 acres of new ROW is anticipated. Of these estimated 176 acres, approximately 106 acres would support the roadway, and approximately 70 acres would support the construction of detention ponds. The proposed improvements include widening the two-lane facility to four lanes by adding one 12-foot-wide travel lane in each direction, widening the outside shoulders to 12 feet in width, adding an 18-foot-wide raised median, and adding 5-foot-wide sidewalks in each direction. The proposed ROW is typically 200 feet in width. Since the last public meeting, the proposed project alignment has been adjusted to veer to the northeast through undeveloped property just north of Magnolia Lane and connect to Plum Grove Road north of Meyer Road.

The proposed project may include potential displacements of three residences, one commercial property, and two churches. Information about the TxDOT Relocation Assistance Program, benefits and services for displaced persons, as well as information about the tentative schedules for ROW acquisition and construction can be obtained from the TxDOT Houston District office at the address listed below. Relocation assistance is available for displaced persons and businesses.

Maps and other drawings showing the proposed project's location, geometric design, and environmental constraints will be available for viewing at the public meeting. Other information about the proposed project is on file and available for inspection Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m. at the TxDOT Houston District Office located at 7600 Washington Avenue, Houston, Texas 77007. To schedule an appointment at the Houston District, please contact Ms. Reina Gonzalez, at (713) 802-5269.

The information will also be posted online on TxDOT's website: https://www.txdot.gov/inside-txdot/projects/studies/houston/fm2100-huffman-cleveland-sh99.html. Information will also be made available for viewing at the North Harris County Area Office, located at 16803 Eastex Freeway (I-69/US 59), Humble, Texas 77396. To schedule an appointment at the North Harris County Area Office, please call (281) 319-6400.

All interested persons are invited to attend this public meeting. Written comments from the public regarding this project may be submitted at the meeting. Written comments may also be submitted either in person or by mail to the TxDOT District Office, Director of Project Development, Texas Department of Transportation, P.O. Box 1386, Houston, Texas 77251-1386. Written comments must be postmarked, submitted through the website, or emailed to HOU-PIOWebMail@txdot.gov **on or before March 20, 2020**, to be included in the Public Meeting Documentation.

The public meeting will be conducted in English. Persons interested in attending the meeting who have special communication or accommodation needs, or need an interpreter, are encouraged to contact the TxDOT Houston District Public Information Office at 713-802-5076. Requests should be made at least two days before the public meeting. Every reasonable effort will be made to accommodate these needs.

If you have any general questions or concerns regarding the proposed project or the meeting, please contact Ms. Reina Gonzalez (TxDOT Houston District – Environmental Coordinator) at Reina.Gonzalez@txdot.gov.

***The environmental review, consultation, and other actions required by applicable Federal environmental laws for this project are being, or have been, carried-out by TxDOT pursuant to 23 U.S.C. 327 and a Memorandum of Understanding dated December 9, 2019, and executed by FHWA and TxDOT.***

**FAMILY COURT FOR THE STATE OF DELAWARE**
NOTICE OF FAMILY COURT PROTECTION FROM ABUSE ACTION
To Karrief Dean, (Respondent)
Petitioner, Justine Diaz-Harris & Charles P. Harris has filed a Petition for an Order of Protection From Abuse against you in the Family Court of the State of Delaware for New Castle County.
Case No. 20-04813 & 20-04933
A court hearing has been scheduled for 3/4/2020 at 10:00am
The Family Court is located 500 N. King St. Wilmington, DE 19801. If you fail to appear, the hearing may proceed without you.
There is an Ex-Parte Order in effect.
If you wish to obtain information on this filing prior to hearing, please respond to the Family Court location noted above

**LEGAL NOTICE**
**INVITATION TO BIDDERS**

The Fort Bend Grand Parkway Toll Road Authority will receive sealed bids for construction of Widening Consisting of Grading, Concrete Pavement, Base Drainage, SW3P, and Pavement Markings, ETC. from 0.05 Miles North of US 59 to 0.07 Miles North of East Riverpark Dr. (Project 126-1003). All sealed bids are to be submitted to Fort Bend Grand Parkway Toll Road Authority, C/O BGE, Inc. 10777 Westheimer, Suite 400, Houston, Texas, by 3:00 P.M. on Tuesday, March 17, 2020. Plans and specifications are available at **www.civcastusa.com** (no charge for plans and specifications).

OVER 15 MILLION Houstonians a month interact with our digital products.

Place a digital ad today. chron.com/advertise HOUSTON★CHRONICLE

LEGAL NOTICES

Dated as of February 21, 2020

Subject: **Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters.**

To Whom It May Concern,

On or before February 21, 2020, the anticipated debtors and debtors in possession (collectively, the "Debtors"),[1] commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), from Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) of the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]

**The Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, https://cases.primeclerk.com/sheridanballots**. Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed cocounsel, Kirkland & Ellis LLP and Jackson Walker LLP, at the respective addresses specified below. Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court. Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

If you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases, by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridaniballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

The Debtors have reached an agreement-in-principle with a majority of the lenders under the Sheridan I Term Loan Facilities and the Sheridan I RBL Facilities (collectively, the "Consenting Lenders"), the Manager, and certain Manager Parties[3] regarding the terms of a restructuring support agreement (the "RSA"), the form of which is attached to the Disclosure Statement as Exhibit B. Among other things, the RSA will obligate the Consenting Lenders to vote to approve the Debtors' "prepackaged" plan of reorganization and support the Debtors' restructuring. The Debtors anticipate that the RSA will be executed as soon as practicable in advance of the anticipated petition date.

The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured debt through the issuances of new equity, subject to dilution by new warrants, and participation in a take-back exit facility. **Importantly, the Plan provides for the satisfaction of all trade, customer, royalty, and other non-funded debt claims in full in the ordinary course of business.** The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

**Key Terms of the Plan[4]**

The Plan provides, among other things, that upon emergence:

- **All outstanding and undisputed General Unsecured Claims against the Debtors will be unimpaired and unaffected by the chapter 11 cases and will be paid in full in cash or reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim;**
- All Allowed Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full in cash, or receive such other customary treatment that renders such Claims unimpaired under the Bankruptcy Code;
- Each Holder of an Allowed Sheridan I RBL Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any;
- Each Holder of an Allowed Sheridan I Term Loan Claim will receive its ratable share of: (i) the term loans provided under the exit facility; (ii) 100% of the new equity issued and outstanding on the Effective Date (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any; and
- All Interests in the Debtors will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect; *provided* that the Debtors' limited partners who do not opt out of the voluntary releases contained in the Plan shall receive, as settlement consideration, new warrants, which shall be exercisable into 25% of the shares of the new common stock of New Sheridan issued and outstanding on the Effective Date, at the option of the holders of the new warrants and for no consideration, as of the first day on which holders of such new common stock have received distributions with a value equal to the sum of the Threshold Amount and the Accrual Amount (each as defined in the New Warrant Term Sheet attached to the Plan as Exhibit B).

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3(a) | SIP I RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Key Dates and Information Regarding Confirmation of the Plan**

To implement the financial restructuring contemplated by the RSA, the Debtors expect to file voluntary petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), on or before March 24, 2020. **Upon commencement, the Debtors will request a hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") to be held before the Honorable Marvin Isgur, courtroom 404, or the Honorable David R. Jones, courtroom 400, of the United States Bankruptcy Court, Houston Division, 515 Rusk Street Houston, Texas 77002, on March 24, 2020, at 2:30 p.m. (prevailing Central Time), subject to the availability of the Bankruptcy Court.** At the Combined Hearing, the Bankruptcy Court will consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**Voting Record Date.** The voting record date was **February 12, 2020**, which was the date used for determining which Holders of Claims in Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) (the "Voting Classes") were entitled to vote on the Plan.

**How May an Interested Party Object to the Plan or Disclosure Statement?** Any objections (each, an "Objection") to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) served so as to be **actually received** no later than **March 20, 2020, at 4:00 p.m., prevailing Central Time** (the "Objection Deadline") on the below parties.

**Objections may be either: (i) emailed to the Debtors' proposed notice and claims agent, Prime Clerk LLC, prior to the Objection Deadline at sheridanobjections@primeclerk.com; (ii) mailed to proposed co-counsel to the Debtors at the addresses below so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors at the e-mail addresses below prior to the Objection Deadline.** Any Objections received by the Debtors (including via e-mail) before the chapter 11 cases are commenced shall be served on the below parties upon receipt and will be forwarded to the Bankruptcy Court and the Debtors' top fifty (50) largest unsecured creditors listed on each of their bankruptcy petitions and be filed on the Bankruptcy Court's docket by the Debtors immediately upon the filing of such chapter 11 cases.

(i) ***Debtors:*** **Sheridan Holding Company I, LLC,** 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056, Attention: Cheryl S. Phillips; (ii) ***Proposed Co-Counsel to the Debtors:*** **Kirkland & Ellis LLP,** 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Attention: Joshua A. Sussberg, P.C. and Steven N. Serajeddini, joshua.sussberg@kirkland.com, steven.serajeddini@kirkland.com -and- **Kirkland & Ellis LLP,** 300 North LaSalle Street, Chicago, IL 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Attention: Spencer A. Winters and Jaimie Fedell, spencer.winters@kirkland.com, jaimie.fedell@kirkland.com -and- **Jackson Walker LLP,** 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attention: Matthew D. Cavenaugh and Jennifer F. Wertz, mcavenaugh@jw.com, jwertz@jw.com; (iii) ***Consenting Sheridan I Revolving Lenders:*** **Vinson & Elkins LLP,** 2001 Ross Avenue, Suite 3900, Dallas, TX 75201-2975, Attention: William L. Wallander and Erec Winandy; (iv) ***Consenting Sheridan I Term Lenders:*** **Davis Polk & Wardwell LLP,** 450 Lexington Avenue, New York, New York 10017, Attention: Damian S. Schaible, Nate Sokol, and Stephen D. Piraino; and (v) ***United States Trustee:*** **Office of the United States Trustee for the Southern District of Texas,** 515 Rusk Street, Suite 3516, Houston, Texas 77002.

**When Will the Meeting of Creditors Pursuant to Section 341 Occur?** As part of the relief requested by the Debtors in connection with the filing of their chapter 11 cases, the Debtors will request that the U.S. Trustee **not** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code. Accordingly, such meeting will not be convened if the Plan is confirmed within seventyfive (75) days after the Petition Date or such other time as set by the Bankruptcy Court.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES UNLESS SUCH HOLDERS: (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.**

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

[3] The Manager Parties include Sheridan ICM, LLC, Sheridan SMG, LLC, Sheridan SMG I Carry, LLC, Sheridan Production Company, LLC, Sheridan Production Company I, LLC, Warburg Pincus LLC, and WPS Production Partners, LLC.

[4] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

**COMBINED NOTICE OF FINDING OF NO SIGNIFICANT IMPACT AND INTENT TO REQUEST RELEASE OF FUNDS**

**February 25, 2020**
City of Houston
Housing and Community Development Department (HCDD)
2100 Travis, 9th Floor
Houston, TX 77002
(832) 394-6183

**This Notice shall satisfy the above-cited two separate but related procedural notification requirements.**

**REQUEST FOR RELEASE OF FUNDS**

On or about Thursday, March 12, 2020 City of Houston's Housing and Community Development Department will submit a request to the U.S. Department of Housing and Urban Development for the release of the following funds:

**Community Development Block Grant (CDBG) funds authorized by Title I of the Housing and Community Development Act of 1974 (P.L. 93-383, as amended), to undertake a project known as:**

**Project Title: Edison Performing Arts Center (EPAC)**

**Location: 7100 W. Fuqua, Houston, Fort Bend County, Texas 77489**

Purpose of project: The proposed project, The Edison Performing Arts Center, is a multifaceted facility designed to aid the development of the arts in Southwest Houston. The planned development consists of the redevelopment of an existing 7.0-acre tract currently occupied by a portion of the Willowridge Shopping Center, a vacant retail center constructed in the early 1980s. The Performing Arts Center will utilize approximately 81,000-square-feet of the building space to redevelop the eastern portion of this shopping center, while the western portion will be redeveloped as an affordable housing complex known as Edison Lofts.

The Housing and Community Development Department (HCDD) recommends Council approval of a contract between the City of Houston and Edison Arts Foundation (EAF). The project owner is requesting $5,000,000.00 in Federal Community Development Block Grant (CDBG) funds for the acquisition of land and partial demolition to meet the national objective committed at closing. The redevelopment is proposed to serve as an Afterschool program, performing arts center, and a retail space which 30% of the funding will be provided by Private Equity.

HCDD will propose to advance up to $2,000,000.00 on a reimbursement basis during the pre-development period. The remaining $3,000,000.00 of the grant would be applied to the hard costs for the Public Facility.

The City of Houston has classified Edison Performing Arts Center as an Environmental Assessment (24 CFR 58.36, subpart E) subject to laws and authorities at 24 CFR 58.5, 24 CFR 58.6, National Environmental Policy Act (NEPA) analysis, and the additional EA Factors discussed by HUD. P **lease note that all of the activities described above must take place only after the Authority to Use Grant Funds (AUGF) is issued by HUD.**

**Grant No. & Amount:** **B-14-MC-48-0018....................$1,139,531.55**
**B-16-MC-48-0018..................$75,000.00**
**B-17-MC-48-0018.................$195,000.00**
**B-18-MC-48-0018.................$112,563.81**
**B-19-MC-48-0018...............$3,477,904.64**

**Total $5,000,000.00 of federal funding.**

| Sources | Amount |
|---|---|
| **CoH HCDD {CDBG-entitlement)** | **$5,000,000.00** |
| Capital Campaign | $7,069,823.00 |
| EAF Equity | $225,000.00 |
| Private Loan | $1,966,408.00 |
| **TOTAL** | **$14,261,231.00** |

**FINDING OF NO SIGNIFICANT IMPACT**

The City of Houston has determined that the project will have no significant impact on the human environment. Therefore, an Environmental Impact Statement under the National Environmental Policy Act of 1969 (NEPA) is not required. Additional project information is contained in the Environmental Review Record (ERR) on file at the above address and is available for public examination or copying weekdays 8 A.M. to 5 P.M.

**PUBLIC COMMENTS**

Any individual, group, or agency disagreeing with this determination or wishing to comment on the project may submit written comments to the City of Houston, Housing and Community Development Department, ATTN: Environmental Review Officer, 2100 Travis, 9th Floor, Houston, Texas 77002. All comments received by the close of business on **Wednesday, March 11, 2020** will be considered by the City of Houston prior to authorizing submission of a request for release of funds. Commenters should specify which part of this Notice they are addressing.

**RELEASE OF FUNDS**

The City of Houston certifies to HUD that Sylvester Turner, in his capacity as Mayor, consents to accept the jurisdiction of the Federal Courts if an action is brought to enforce responsibilities in relation to the environmental review process and that these responsibilities have been satisfied. HUD's approval of the certification satisfies its responsibilities under NEPA and related laws and authorities, and allows the City of Houston to use Program funds.

**OBJECTIONS TO RELEASE OF FUNDS**

HUD will consider objections to its release of funds and the City of Houston certification received by the close of business on Friday, March 27, 2020 or a period of fifteen days from its receipt of the request (whichever is later) only if they are on one of the following bases: (a) the certification was not executed by the Certifying Officer or other officer of the City of Houston approved by HUD; (b) the City of Houston, as Responsible Entity, has omitted a step or failed to make a decision or finding required by HUD regulations at 24 CFR Part 58; (c) the grant recipient or other participants in the project have committed funds or incurred costs not authorized by 24 CFR Part 58 before approval of a release of funds by HUD; or (d) another Federal agency acting pursuant to 40 CFR Part 1504 has submitted a written finding that the project is unsatisfactory from the standpoint of environmental quality. Objections must be prepared and submitted in accordance with the required procedures (24 CFR Part 58) and shall be addressed to: U.S. Department of Housing and Urban Development, 1301 Fannin Street, Suite 2200, Houston, Texas 77002. Potential objectors should contact HUD to verify the actual last day of the objection period.

Sylvester Turner, Mayor
City of Houston

Email legals@chron.com or call 713.224.6868 HOUSTON★CHRONICLE HoustonChronicle.com

Chronicle Classifieds Where More People Go To Work 713-224-6868

Stay legal and get noticed by emailing our team at legals@chron.com or calling 713.224.6868

IF YOU THINK LEGAL NOTICES ARE PAINFUL, WAIT UNTIL YOU PLACE ONE IN THE WRONG PAPER.

HOUSTON★CHRONICLE HoustonChronicle.com

**Exhibit 4**

**Notice of Non-Voting Status and Opportunity to Opt Out**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | **IMPORTANT**:  No chapter 11 case |
|  | § | has been commenced as of the date of |
|  | § | distribution of this notice. |
| Debtors. | § |  |
|  | § |  |

## NOTICE OF (I) NON-VOTING STATUS TO
## HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED
## CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN
## AND HOLDERS OR POTENTIAL HOLDERS OF IMPAIRED CLAIMS
## CONCLUSIVELY PRESUMED TO REJECT THE PLAN AND (II) OPPORTUNITY
## FOR HOLDERS OF CLAIMS TO OPT OUT OF THE THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT**, Sheridan Holding Company I, LLC and its affiliates, (collectively, the "Debtors") intend to commence chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and have commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]  The Debtors have not filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan.  The Debtors expect to commence the chapter 11 cases on or before March 24, 2020.

**PLEASE TAKE FURTHER NOTICE THAT the Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website,**

---

[1]   The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

**https://cases.primeclerk.com/sheridanballots.** Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed co-counsel, Kirkland & Ellis LLP and Jackson Walker LLP. Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court. Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

PLEASE TAKE FURTHER NOTICE THAT you are a Holder or potential Holder of a Claim against the Debtors that, due to the nature and treatment of such Claim under the Plan, *is not entitled to vote on the Plan*. Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is not Impaired under the Plan and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code is *not* entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT if you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridaniballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

**WHILE YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THE OPT-OUT FORM ATTACHED HERETO PROVIDES YOU WITH THE SEPARATE OPTION TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN ARTICLE VIII OF THE PLAN.**

PLEASE TAKE FURTHER NOTICE THAT the following provisions are included in the Plan:

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"):**

**Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination,**

negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Third-Party Release under the Plan:

"**Released Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the Term Loan Group (e) each Company Party; (f) each Sheridan I Revolving Lender; (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Interests; (l) each Exit Facility Lender; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n); provided that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

"**<u>Releasing Party</u>**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors;  (c) each Consenting Stakeholder; (d) the Term Loan Group; (e) each Company Party;  (f) each Sheridan I Revolving Lender;  (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Claims; (l) all Holders of Interests; (m) each Exit Facility Lender; (n) each current and former Affiliate of each Entity in clause (a) through the following clause (o); and (o) each Related Party of each Entity in clause (a) through this clause (o); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further,* that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

<div align="center">*      *      *</div>

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASES INCLUDED IN THE PLAN.  IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE CLAIMS AND NOTICING AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.**

Houston, Texas
February 21, 2020

/s/ Matthew D. Cavenaugh
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you may be a Holder of a Claim that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  Holders of Claims are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before March 20, 2020, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

**If you believe you are a Holder of a Claim with respect to Sheridan Holding Company I, LLC or its Debtor affiliates and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, you may submit your election to opt-out through one of the following methods:  (i) completing, signing, and returning the Opt-Out Form via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, so that it is actually received by the Claims and Noticing Agent prior to the Opt-Out Deadline or (ii) by completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at https://cases.primeclerk.com/sheridanballots.**

**<u>Opt-Out Form</u>**.

To ensure that your hard copy Opt-Out Form is counted, clearly sign and return your Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") BY MARCH 20, 2020, AT 4:00 P.M. PREVAILING CENTRAL TIME (THE "<u>OPT-OUT DEADLINE</u>").  IF THE OPT-OUT FORM IS RECEIVED AFTER THE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED.**

**<u>Item 1</u>.**        **Amount of Claim.**

The undersigned hereby certifies that, as of February 12, 2020 (the "<u>Voting Record Date</u>"), the undersigned was the Holder of either (a) Class 1 Other Secured Claims, (b) Class 2 Other Priority Claims, or (c) Class 5 General Unsecured Claims in the following aggregate amount (insert amount in box below):

| |
|---|
| Class 1 Other Secured Claims Amount $ _____ |
| OR |
| Class 2 Other Priority Claims Amount $ _____ |
| OR |
| Class 5 General Unsecured Claims Amount $ _____ |

**<u>Item 2</u>.**        **Important information regarding the Third-Party Release.**

AS A HOLDER OF A CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS

NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐       **By checking this box, you elect to opt <u>out</u> of the Third-Party Releases.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference

**each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) THE TERM LOAN GROUP (E) EACH COMPANY PARTY; (F) EACH SHERIDAN I REVOLVING LENDER; (G) EACH SHERIDAN I TERM LENDER; (H) MANAGER; (I) EACH MANAGER PARTY; (J) EACH AGENT; (K) ALL HOLDERS OF INTERESTS; (L) EACH EXIT FACILITY LENDER; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (N); AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (N); PROVIDED THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASED PARTY IN THE CONFIRMATION ORDER.

UNDER THE PLAN "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) THE TERM LOAN GROUP; (E) EACH COMPANY PARTY; (F) EACH SHERIDAN I REVOLVING LENDER; (G) EACH SHERIDAN I TERM LENDER; (H) MANAGER; (I) EACH MANAGER PARTY; (J) EACH AGENT; (K) ALL HOLDERS OF CLAIMS; (L) ALL HOLDERS OF INTERESTS; (M) EACH EXIT FACILITY LENDER; (N) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (O); AND (O) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (O); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER,* THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASING PARTY IN THE CONFIRMATION ORDER.

**USE OF E-BALLOT OPT-OUT FORM**

**You may submit your Opt-Out Form by electronic, online transmission solely through the E-Balloting Portal found on the Debtors' case information website https://cases.primeclerk.com/sheridanballots and following the directions set forth on the E-Balloting Portal regarding submitting your Opt-Out Form as described more fully below.**

1. **Please visit https://cases.primeclerk.com/sheridanballots.**

2. **Click on the "E-Ballot" section of the Debtors' website.**

3. **Follow the directions to submit your Opt-Out Form.  If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should not return a hard copy of your Opt-Out Form.**

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED OPT-OUT FORM:**

**UNIQUE E-BALLOT ID#_____**

**"E-BALLOTING" IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**OPT-OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

5

**Item 3.**  **Certifications.**

By signing this paper Opt-Out Form, the undersigned certifies:

(a) that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b) that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and Holders or Potential Holders of Impaired Claims Conclusively Presumed to Reject the Plan and (II) Opportunity for Holders of Claims to Opt Out of the Third-Party Releases* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

(c) that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d) that no other Opt-Out Form with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |
| | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA FIRST CLASS MAIL (OR IN THE REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER OR HAND DELIVERY TO:**

<div align="center">

**Sheridan Holding Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

</div>

<div align="center">

\*          \*          \*

</div>

## **Exhibit 5**

**Class 8 Notice of Non-Voting Status and Opportunity to Opt Out**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | **IMPORTANT**:  No chapter 11 case |
|  | § | has been commenced as of the date of |
|  | § | distribution of this notice. |
| Debtors. | § |  |
|  | § |  |

**NOTICE OF (I) NON-VOTING STATUS TO HOLDERS
OR POTENTIAL HOLDERS OF INTERESTS (OTHER THAN
INTERCOMPANY INTERESTS) AND (II) OPPORTUNITY FOR
HOLDERS OF INTERESTS TO OPT OUT OF THE THIRD-PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** Sheridan Holding Company I, LLC and its affiliates, (collectively, the "Debtors") intend to commence chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and have commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  Copies of the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") have been provided with this notice.[2]  The Debtors have not filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan.  The Debtors expect to commence the chapter 11 cases on or before March 24, 2020.

**PLEASE TAKE FURTHER NOTICE THAT the Plan and Disclosure Statement are accessible now, free of charge, on the Debtors' restructuring website, https://cases.primeclerk.com/sheridanballots**.  Copies of the Plan and the Disclosure Statement may also be obtained upon request of the Debtors' proposed co-counsel, Kirkland & Ellis LLP and

---

[1]  The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

Jackson Walker LLP.  Upon the commencement of the chapter 11 cases, the Debtors will file the Plan and Disclosure Statement on the docket with the Bankruptcy Court.  Thereafter, the Plan and Disclosure Statement will be available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov and will be on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they will be available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of an Interest in Class 8 in the Debtors' Plan that, due to the nature and treatment of such Interest under the Plan, *is **not** entitled to vote on the Plan*.  Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is Impaired under the Plan and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, is ***not*** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you have questions regarding this notice you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (b) emailing sheridaniballots@primeclerk.com and referencing "Sheridan I" in the subject line; and/or (c) calling the Debtors' restructuring hotline at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll).

**WHILE YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THE OPT-OUT FORM ATTACHED HERETO PROVIDES YOU WITH THE SEPARATE OPTION TO <u>NOT GRANT</u> THE VOLUNTARY RELEASE CONTAINED IN ARTICLE VIII OF THE PLAN.  PURSUANT TO THE PLAN, GRANTING SUCH RELEASES IS A CONDITION TO RECEIVING A DISTRIBUTION FROM THE SETTLEMENT CONSIDERATION.**

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:[3]

Under Article IV.H of the Plan, all Interests will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Interests will not receive any distributions on account of such Interests.  Notwithstanding the foregoing, on or as soon as reasonably practicable after the Effective Date, Limited Partners shall receive, in exchange for the releases provided by such holders of the Released Parties, their ratable share of the Limited Partner Settlement Consideration; *provided*, *however*, **that any Limited Partner that elects to opt out of the voluntary releases contained in Article VIII of the Plan shall not be entitled to receive its ratable share of the Limited Partner Settlement Consideration**.

The Limited Partner Settlement Consideration shall consist of new warrants exercisable into 25% of the shares of the new common stock issued and outstanding on the Effective Date, at the option of the holders of the New Warrants and for no consideration, as of the first day on which holders of New Sheridan Equity have received distributions with a value equal to the sum of the

---

[3]   This summary is qualified in its entirety by the terms of the Plan.  In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

Threshold Amount and the Accrual Amount (as defined in the New Warrant Term Sheet attached to the Plan as  Exhibit B).  The Threshold Amount shall equal (i) the outstanding Sheridan I RBL Claims and Sheridan I Term Loan Claims immediately prior to the Petition Date *less* the Excess Balance Sheet Cash, if any, distributed to holders of Sheridan I RBL Claims and Sheridan I Term Loan Claims *minus* (ii) distributions in respect of the New Sheridan Equity, subject to certain exceptions as further described in the New Warrant Term Sheet.  The Accrual Amount shall be at a rate of 12% per annum from and including the Effective Date.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE VIII.D</u> CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "<u>THIRD-PARTY RELEASE</u>"):**

**Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Third-Party Release under the Plan:

"**Released Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the Term Loan Group (e) each Company Party; (f) each Sheridan I Revolving Lender; (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Interests; (l) each Exit Facility Lender; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n); provided that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

"**Releasing Parties**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the Term Loan Group; (e) each Company Party; (f) each Sheridan I Revolving Lender; (g) each Sheridan I Term Lender; (h) Manager; (i) each Manager Party; (j) each Agent; (k) all Holders of Claims; (l) all Holders of Interests; (m) each Exit Facility Lender; (n) each current and former Affiliate of each Entity in clause (a) through the following clause (o); and (o) each Related Party of each Entity in clause (a) through this clause (o); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

\*        \*        \*

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASES INCLUDED IN THE PLAN.  IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE CLAIMS AND NOTICING AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.**

Houston, Texas
February 21, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Joshua A. Sussberg, P.C. (*pro hac vice* admission pending) |
| Jennifer F. Wertz (TX Bar No. 24072822) | Steven N. Serajeddini (*pro hac vice* admission pending) |
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| 1401 McKinney Street, Suite 1900 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Houston, Texas 77010 | 601 Lexington Avenue |
| Telephone:   (713) 752-4200 | New York, New York 10022 |
| Facsimile:   (713) 752-4221 | Telephone:   (212) 446-4800 |
| Email:   mcavenaugh@jw.com | Facsimile:   (212) 446-4900 |
|    jwertz@jw.com | Email:   joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT-OUT FORM**

You are receiving this opt out form (the "<u>Opt-Out Form</u>") because you may be a Holder of a Class 8 Interest that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>").  Holders of Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before March 20, 2020, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

**If you believe you are a Holder of a Class 8 Interest with respect to Sheridan Holding Company I, LLC or its Debtor affiliates and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, you may submit your election to opt-out through one of the following methods:  (i) completing, signing, and returning the Opt-Out Form via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, so that it is actually received by the Claims and Noticing Agent prior to the Opt-Out Deadline or (ii) completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at <u>https://cases.primeclerk.com/sheridanballots</u>.**

**Opt-Out Form**.

To ensure that your hard copy Opt-Out Form is counted, clearly sign and return your Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "CLAIMS AND NOTICING AGENT") BY MARCH 20, 2020, AT 4:00 P.M. PREVAILING CENTRAL TIME (THE "OPT-OUT DEADLINE"). IF THE OPT-OUT FORM IS RECEIVED AFTER THE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.          Amount of Claim or Interest.**

The undersigned hereby certifies that, as of February 12, 2020 (the "Voting Record Date"), the undersigned was the Holder of Class 8 Interests in the following aggregate amount (insert amount in box below):

| |
|---|
| Class 8 Interests  _____ |

**Item 2.          Important information regarding the Third-Party Release.**

AS A HOLDER OF AN INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐          **By checking this box, you elect (i) to opt out of the Third-Party Releases and (ii) not to receive your ratable share of the Limited Partner Settlement Consideration.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

     **Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity,**

2

contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:   (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) THE TERM LOAN GROUP (E) EACH COMPANY PARTY; (F) EACH SHERIDAN I REVOLVING LENDER; (G) EACH SHERIDAN I TERM LENDER; (H) MANAGER; (I) EACH MANAGER PARTY; (J) EACH

AGENT; (K) ALL HOLDERS OF INTERESTS; (L) EACH EXIT FACILITY LENDER; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (N); AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (N); PROVIDED THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASED PARTY IN THE CONFIRMATION ORDER.

UNDER THE PLAN "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) THE TERM LOAN GROUP; (E) EACH COMPANY PARTY; (F) EACH SHERIDAN I REVOLVING LENDER; (G) EACH SHERIDAN I TERM LENDER; (H) MANAGER; (I) EACH MANAGER PARTY; (J) EACH AGENT; (K) ALL HOLDERS OF CLAIMS; (L) ALL HOLDERS OF INTERESTS; (M) EACH EXIT FACILITY LENDER; (N) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (O); AND (O) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (O); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER,* THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASING PARTY IN THE CONFIRMATION ORDER.

[*Remainder of page left intentionally blank*]

## USE OF E-BALLOT OPT-OUT FORM

You may submit your Opt-Out Form by electronic, online transmission solely through the E-Balloting Portal found on the Debtors' case information website https://cases.primeclerk.com/sheridanballots and following the directions set forth on the E-Balloting Portal regarding submitting your Opt-Out Form as described more fully below.

1.  Please visit https://cases.primeclerk.com/sheridanballots.

2.  Click on the "E-Ballot" section of the Debtors' website.

3.  Follow the directions to submit your Opt-Out Form.  If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should <u>not</u> return a hard copy of your Opt-Out Form.


IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED OPT-OUT FORM:

UNIQUE E-BALLOT ID#_____

"E-BALLOTING" IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.

OPT-OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.

**Item 3.**  **Certifications.**

By signing this paper Opt-Out Form, the undersigned certifies:

(a)  that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Interests set forth in Item 1;

(b)  that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders or Potential Holders of Interests (Other than Intercompany Interests) and (II) Opportunity for Holders of Interests to Opt Out of the Third-Party Releases* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

(c)  that the Entity has submitted the same respective election concerning the releases with respect to all Interests set forth in Item 1; and

(d)  that no other Opt-Out Form with respect to the amount(s) of Interests identified in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA FIRST CLASS MAIL (OR IN THE REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER OR HAND DELIVERY TO:**

**Sheridan Holding Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

\*      \*      \*

**Exhibit 6**

**Ballot**

**BALLOT FOR VOTING ON THE JOINT PREPACKAGED PLAN
OF REORGANIZATION OF SHERIDAN HOLDING COMPANY I, LLC AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE[1]**

| | |
|---|---|
| **IMPORTANT NOTE**: | PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT (THE "BALLOT") AND THE DEBTORS' JOINT PREPACKAGED PLAN OF REORGANIZATION (AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN") OF SHERIDAN HOLDING COMPANY I, LLC, ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF. |
| **DEADLINE**: | THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "CLAIMS AND NOTICING AGENT") PRIOR TO 4:00 P.M. (PREVAILING CENTRAL TIME) ON MARCH 6, 2020 (THE "VOTING DEADLINE"). |
| **QUESTIONS**: | If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Claims and Noticing Agent by emailing sheridaniballots@primeclerk.com and reference "Sheridan I" in the subject line or at 877-472-2555 (domestic toll-free) or 917-942-8380 (international toll). |
| **NOTICE**: | You have received this Ballot because the Company's books and records indicate that you are a Holder of an Allowed Claim[2] in Class(es) 3(a), 3(b), 3(c), 4(a), 4(b), or 4(c) (each a "Voting Class" and collectively the "Voting Classes") as of February 12, 2020 (the "Voting Record Date") and as set forth in Item 1 of the Ballot.  Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims. |
| | This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately. |
| | You should review the Plan before you vote.  You may wish to seek legal advice concerning the proposals related to the Plan. |

---

[1]   The anticipated Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

| | |
|---|---|
| **TRANSACTION BACKGROUND:** | The Company is soliciting votes to accept or reject the Plan from Holders of Sheridan I RBL Claims and Sheridan I Term Loan Claims.  The Company may file for protection under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") in a bankruptcy court of competent jurisdiction (the "<u>Court</u>") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  The Company will file the Plan and the related disclosure statement (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>") with the Court.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan.  The Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Classes, among others. |
| **TREATMENT OF YOUR CLAIMS**: | Subject to the terms and conditions of the Plan, you will receive the treatment identified in **<u>Exhibit A</u>**. |
| | **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.** |

**VOTING — COMPLETE THIS SECTION**

| | |
|---|---|
| **ITEM 1**:<br>**PRINCIPAL**<br>**AMOUNT**<br>**OF**<br>**CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Claims in the Voting Classes as set forth below (your "<u>Claims</u>").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.<br><br>Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan.  You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.<br><br>The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.<br><br>The Holder of the Claims in the Voting Classes set forth below votes to (*please check <u>one and only one box</u> per applicable Voting Claim or Interest*): |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| **Classes 3(a), 3(b), and 3(c) (Sheridan I RBL Claims)** | | | |
| Class 3(a) | SIP I RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| **Classes 4(a), 4(b), and 4(c) (Sheridan I Term Loan Claims)** | | | |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

**ITEM 2**:
**RELEASE**
**INFORMATION**

Article VIII.D of the Plan provides for a third-party release (the "**Third-Party Release**"):

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A COMPANY PARTY AND ANOTHER COMPANY PARTY, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RSA, THE DISCLOSURE STATEMENT, THE EXIT FACILITY, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RSA, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING

TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITY CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITY DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE</u>:

UNDER THE PLAN, "RELEASING PARTY" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) THE TERM LOAN GROUP; (E) EACH COMPANY PARTY; (F) EACH SHERIDAN I REVOLVING LENDER; (G) EACH SHERIDAN I TERM LENDER; (H) MANAGER; (I) EACH MANAGER PARTY; (J) EACH AGENT; (K) ALL HOLDERS OF CLAIMS; (L) ALL HOLDERS OF INTERESTS; (M) EACH EXIT FACILITY LENDER; (N) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (O); AND (O) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (O); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN

6

**ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION;** *PROVIDED*, *FURTHER*, **THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASING PARTY IN THE CONFIRMATION ORDER.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU (A) CHECK THE BOX BELOW OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

<u>**The Holder of the Claims identified in Item 1 elects to:**</u>

> ☐ <u>**OPT OUT of the Third-Party Release**</u>

| | |
|---|---|
| <u>**ITEM 3:**</u><br>**CERTIFICATION, BALLOT COMPLETION, AND DELIVERY INSTRUCTIONS** | By signing this Ballot, the undersigned certifies to the Court and the Debtors: |

    (a) that, as of the Voting Record Date, either:  (i) the undersigned is the Holder of the Claims in the Voting Classes as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Classes as set forth in Item 1;

    (b) that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

    (c) that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

    (d) that no other Ballots with respect to the Claims in the Voting Classes identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY.  THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE. YOU MAY SUBMIT YOUR BALLOT VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND-DELIVERY TO THE FOLLOWING ADDRESS:**

**Sheridan Holding Ballot Processing,
C/O Prime Clerk LLC,
One Grand Central Place,
60 East 42nd Street,
Suite 1440
New York, NY 10165**

**OR**

**YOU MAY SUBMIT YOUR BALLOT ELECTRONICALLY BY SCANNING A SIGNED COPY OF YOUR BALLOT AND E-MAILING YOUR SCANNED BALLOT TO THE FOLLOWING E-MAIL ADDRESS:**

sheridaniballots@primeclerk.com

**PLEASE DIRECT ALL VOTING QUESTIONS TO THE CLAIMS AND NOTICING AGENT BY E-MAILING SHERIDANIBALLOTS@PRIMECLERK.COM AND REFERENCING "SHERIDAN I" IN THE SUBJECT LINE, OR CALLING 877-472-2555 (DOMESTIC, TOLL-FREE) OR 917-942-8380 (INTERNATIONAL, TOLL)**

**Important Information Regarding Releases under the Plan**:[3]

**Article VIII.C:  Releases by the Debtors**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

<u>Article VIII.D:  Releases by Holders of Claims and Interests</u>

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

**Article VIII.E:  Exculpation**

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Article VIII.F:  Injunction**

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  This Ballot contains voting options with respect to the Plan.

2.  To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (if applicable) (a) using the enclosed pre-paid, pre-addressed return envelope, (b) via first class mail, overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, or (c) via e-mail to sheridaniballots@primeclerk.com, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, 4:00 p.m. (prevailing Central Time) on March 6, 2020.

3.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will NOT be counted unless the Company otherwise determines.

4.  To vote, you MUST deliver your completed Ballot (whether via e-mail or Paper Ballot) so that it is ACTUALLY RECEIVED by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above.  The Voting Deadline is 4:00 p.m. (prevailing Central Time) on March 6, 2020.

5.  Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines.  No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6.  Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or e-mail attaching a scanned PDF copy of your executed Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

7.  If you deliver multiple Ballots to the Claims and Noticing Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8.  You must vote all of your Claims in each particular Voting Class either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims in each of the Voting Classes, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9.  This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. SIGN AND DATE your Ballot.[4]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature included on an e-mailed Ballot will be deemed immediately legally valid and effective.

12. If your Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

## PLEASE DELIVER YOUR BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING SHERIDANIBALLOTS@PRIMECLERK.COM AND REFERENCE "SHERIDAN I" IN THE SUBJECT LINE, OR BY CALLING 877-472-2555 (DOMESTIC, TOLL-FREE) OR 917-942-8380 (INTERNATIONAL, TOLL)**

---

[4]   If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## **Exhibit A**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:[1]

| Class 3(a) | SIP I RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP I RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |
|---|---|---|
| Class 3(b) | SPP I-A RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP I-A RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |
| Class 3(c) | SPP I-M RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP I-M RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |
| Class 4(a) | SIP I Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP I Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |
| Class 4(b) | SPP I-A Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP I-A Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |
| Class 4(c) | SPP I-M Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP I-M Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of: (i) the New Term Loans under the Exit Facility; (ii) the New Sheridan Equity (subject to dilution by the Warrant Shares); and (iii) the Excess Balance Sheet Cash, if any. |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[1]   This summary is qualified in its entirety by the terms of the Plan.  In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.