## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

### JOINT MOTION FOR ENTRY
### OF (A) A PRELIMINARY APPROVAL
### ORDER (I) DIRECTING THE APPLICATION OF
### BANKRUPTCY RULE 7023, (II) PRELIMINARILY APPROVING
### THE SETTLEMENT, (III) APPOINTING THE SETTLEMENT
### ADMINISTRATOR, (IV) APPROVING FORM AND MANNER
### OF NOTICE TO CLASS MEMBERS, (V) CERTIFYING A CLASS,
### DESIGNATING CLASS REPRESENTATIVES, AND APPOINTING
### CLASS COUNSEL FOR SETTLEMENT PURPOSES ONLY,
### (VI) SCHEDULING A SETTLEMENT FAIRNESS HEARING, AND
### (B) A JUDGMENT FINALLY APPROVING THE SETTLEMENT

> THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

Sheridan Production Company, LLC ("SPC"), and Tony R. Whisenant, Kyle Allan Taylor, Stanley

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

Ray Born and Ronda Jean Born (collectively, the "Class Representatives") respectfully state the following in support of this joint motion (this "Motion"):[2]

### Relief Requested

1.      The Debtors, SPC, and the Class Representatives, on behalf of themselves and on behalf of similarly situated class members (the "Settlement Class Members" or the "Settlement Class," excluding the Settlement Class Members that timely elect to opt-out of the Settlement Class), by and through their respective counsel, hereby seek entry of:

(a)     a preliminary approval order (the "Preliminary Approval Order"), substantially in the form attached hereto as **Exhibit A**:

(i)     directing the application of rule 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, by incorporation, rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules");

(ii)    preliminarily approving the *Settlement Agreement*, dated as of March 20, 2020, attached hereto as **Exhibit 1** to **Exhibit A** (the "Settlement Agreement" or the "Settlement")[3] among the Debtors, SPC, and the Class Representatives (collectively, the "Parties");

(iii)   appointing JND Legal Administration ("JND") as the settlement administrator (the "Settlement Administrator");

(iv)    approving the form and manner of notice to the Settlement Class Members;

(v)     certifying the Settlement Class, designating Tony R. Whisenant, Kyle Allan Taylor, Stanley Ray Born and Ronda Jean Born as the Class Representatives, and appointing the law firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., DeVore Law Firm, P.L.C., and Diamond McCarthy LLP, as the settlement class counsel (the "Settlement Class Counsel") for settlement purposes only; and

---

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration of Lisa A. Stewart, Executive Chairman and Chief Executive Officer of Sheridan Holding Company I, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously on the date hereof (the "Petition Date") and incorporated by reference herein.

[3]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

(vi)    scheduling a final fairness hearing (the "Settlement Fairness Hearing") approximately 90 days after the entry of the Preliminary Approval Order, or as soon thereafter as is convenient for the Court; and

(b)    a judgment (the "Judgment"), substantially in the form attached hereto as **Exhibit B**, finally approving the Settlement Agreement pursuant to Civil Rule 23 and Bankruptcy Rule 7023 after the Settlement Fairness Hearing.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Court has authority to apply Civil Rule 23 pursuant to Bankruptcy Rules 7023 and 9014.  The Parties confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order or judgment by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are section 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 7023, 9014, and 9019, and Civil Rule 23.

## Introduction

5.    The Court should approve the Settlement.  The Class Representatives filed the Class Action and the Born Action (each as defined below) against the Debtors and SPC on behalf of themselves and purportedly on behalf of the Settlement Class, asserting claims for breach of lease and breach of fiduciary duty based on the deduction of midstream costs from royalty involving wells located in the state of Oklahoma.  The Settlement Agreement contemplates a settlement of the Class Action and the Born Action and includes mutual releases and settlement proceeds of $5,094,000 for the benefit of the Settlement Class.

6.      The Settlement represents hard-fought, good-faith, arms'-length negotiations between the Parties.  The Settlement is fair, equitable, in the best interests of the Debtors' estates, appropriate in the Debtors' business judgment, and easily falls within the range of reasonable outcomes.  Approval of the Settlement will, among other things, avoid protracted and costly litigation for the Debtors and avoid uncertain outcomes, thereby positioning the Debtors for continued growth and long-term success.  The Settlement has been the subject of significant negotiation between the Parties and the consideration being provided thereunder centers around the mutual releases and distributions being provided to the Settlement Class Members.

7.      For essentially the same reasons, the Settlement is also fair and reasonable to the Settlement Class Members.  Even assuming the Class Representatives were to prevail in their respective lawsuits, it could take years for the Settlement Class Members to receive any relief on their claims.  By way of the Settlement Agreement, the Settlement Class Members will realize an immediate benefit by receiving their respective distributions from the Settlement Proceeds.

8.      As the Parties seek to release class claims through the Settlement Agreement, it is appropriate for the Court to direct the application of Bankruptcy Rule 7023, and, by incorporation, Civil Rule 23.  To assure due process, the Parties seek evaluation and final approval of the Settlement Agreement through two stages.  In the first stage, for settlement purposes only, the Court would certify the Settlement Class, designate the Class Representatives, and appoint the Settlement Class Counsel.  In addition, the Court would appoint the Settlement Administrator, approve the form and manner of notice to be provided to the Settlement Class of the Settlement Agreement (the "Notice of Settlement"), and preliminarily approve the Settlement Agreement. The Settlement Administrator would in turn serve the Notice of Settlement, which would apprise the Settlement Class Members of their ability to object to the terms of the Settlement Agreement

4

at the Settlement Fairness Hearing.  In the second stage, the Court would hold the Settlement Fairness Hearing and, following the Settlement Fairness Hearing, enter the Judgment finally approving the Settlement Agreement and an order approving the Class Fees and Expenses.

9.      The Parties believe that the Settlement Agreement is in the best interests of the Debtors' estates, SPC, the Settlement Class Members, and other parties in interest.  Accordingly, the Parties respectfully request that the Court enter the Preliminary Approval Order and the Judgment granting the relief requested in this Motion.

**Background**

## I.      The History of the Debtors.

10.      Sheridan Holding Company I, LLC and its Debtor affiliates are an independent oil and natural gas company with production and development activities in the Rocky Mountains, Texas, and Oklahoma.  The Debtors comprise one of three series of private placement oil and gas investment funds in the Sheridan group, all under the common management of non-debtor Sheridan Production Partners Manager, LLC ("Manager").  Established in 2007 and headquartered in Houston, Texas, the Debtors have focused on acquiring "unloved" oil and gas properties from large independent operators and conducting exploration and production activities across three states in two geographic basins.  The Debtors' assets are primarily mature producing properties with long-lived production, relatively shallow decline curves, and lower-risk development opportunities.  The Debtors' net revenue for the twelve-month period that ended December 31, 2019 was approximately $116 million with EBITDA of $18.2 million.  As of the Petition Date, the Debtors have approximately $616.1 million in total funded debt obligations.

11.      SPC, a non-debtor subsidiary of Manager, serves as the primary contract operator for nearly all of the Debtors' assets and employs all personnel utilized by the Debtors and their non-Debtor affiliates in the operations of the businesses.  SPC performs services for the Debtors

with respect to the operation of the Debtors' properties, including but not limited to, drilling, testing, completion and operation of the Debtors' wells, and procurement of drilling rigs, equipment, supplies, and other services as may be necessary for the operation and supervision of the contractors and vendors providing such equipment and services.   Finally, SPC is the counterparty to a majority of the Debtors' office leases, contracts, licenses, and other surface use agreements and easements.   Without the services contracted to SPC by the Debtors, the Debtors would be unable to operate their business.

12.     On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## II.     A History of the Actions.

13.     On May 1, 2012, two individual plaintiffs, Stanley Ray Born and Ronda Jean Born filed a lawsuit against SPC in the District Court of Caddo County, Oklahoma.   *See Born, et al. v. Sheridan Production Company, LLC,* No. CJ-2012-47 (the "Born Action").   Pursuant to the Born Action, Stanley Ray Born and Ronda Jean Born alleged that SPC took undisclosed improper deductions from royalty and, in so doing, breached its express and implied duties under the oil and gas leases and its fiduciary or quasi-fiduciary duty under Oklahoma law.

14.     On December 6, 2014, Tony R. Whisenant ("Whisenant") filed a putative class action lawsuit against SPC in the District Court of Beaver County, Oklahoma, on behalf of royalty owners in wells in Beaver County, Oklahoma.   *See Whisenant v. Sheridan Production Company,*

6

*LLC,* No. CJ-2014-19 (the "Whisenant Action").   Pursuant to the Whisenant Action, Whisenant asserted claims for breach of lease and breach of fiduciary duty based on SPC's alleged deduction of costs incurred after the gathering line inlet from royalty.   Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), SPC subsequently removed the Whisenant Action to the federal court where it was assigned Case No. CIV-15-81-SLP.   After unsuccessful efforts seeking remand of the case to state court, Whisenant filed an amended complaint with SPC's consent that would have expanded both the geographic and temporal scope of the class claims asserted under the Whisenant Action.   The district court ordered the amended complaint "stricken" because it was filed after the scheduling order's deadline for amending the pleadings and without an extension of the deadline or leave from the court to authorize the filing.

15.     On January 10, 2018, Kyle Allan Taylor ("Taylor") filed a putative class action in the United States District Court for the Western District of Oklahoma, on behalf of all royalty owners in the State of Oklahoma whose wells are or were operated (or marketed and directly paid to royalty owners) by SPC, asserting claims for breach of lease and breach of fiduciary duty based on the deduction of costs incurred after the gathering line inlet from royalty.   *See Taylor v. Sheridan Production Company, LLC,* No. CIV-18-29-JWD (the "Taylor Action").   Given the common questions of law and fact involved with the Whisenant Action and the Taylor Action, and because the claims in the larger statewide Taylor Action subsumed the narrower claims in the Whisenant Action, the parties agreed to consolidation of the cases (the "Class Lawsuit"), with the Taylor Action being designated the lead case.

16.     Following depositions conducted in the Class Lawsuit, on December 6, 2019, Taylor filed an amended complaint in the Taylor Action naming Debtors Sheridan Production Partners I-M, L.P. and Sheridan Production Partners I-A, L.P. as defendants, as the beneficial

owners of the leases, and Debtor Sheridan Holding Company I, LLC, as a defendant, as the holder of legal title to the leases (the "Amended Taylor Complaint").  The Debtors and SPC have adamantly denied, and continue to deny, the claims asserted in the Class Lawsuit and the Born Action and have vigorously defended against them.

**III.    Essential Terms of the Proposed Settlement.**

17.    The Settlement Agreement provides for certification of the Settlement Class comprised of all royalty owners who received or who were entitled to receive royalty payments from SPC attributable to production from Oklahoma wells that are or have been operated (or marketed and directly paid to royalty owners) by SPC and produced gas (such as residue gas, natural gas liquids, or helium) prior to the Petition Date.  Excluded from the Settlement Class are: (1) the Office of Natural Resources Revenue f/k/a Mineral Management Services (Indian tribes and the United States); (2) the Debtors and SPC and their employees, officers, and directors; and (3) any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, production, gathering, processing, or marketing. For the avoidance of doubt, the Settlement Class shall not include any putative members of the Settlement Class who timely and properly elect to opt-out of the Settlement Class.

18.    As set forth in the Settlement Agreement, within five business days of the Debtors' or the reorganized Debtors' receipt of the properly-executed Form W-9 reflecting the payee name and address and a valid taxpayer identification number and wiring instructions for the Taylor Settlement Account, the Debtors or the Reorganized Debtors, as applicable, shall transfer or cause to be transferred by wire transfer $5,094,000 (the "Settlement Proceeds"), of which $94,000 is designated for Administration Expenses, into the Taylor Settlement Account for the benefit of the Settlement Class.  The amount of the Settlement Proceeds may ultimately be adjusted as set forth in the Settlement Agreement, including for the return to the Debtors of any Monies Payable to

Opt-Outs.  Class Fees and Expenses (which includes Settlement Class Counsel's attorney fees, the

Class Representatives' contribution award, and payment of expert and consulting fees) and

Administration Expenses will be paid from the Settlement Proceeds.  The remaining Settlement

Proceeds shall be distributed by the Settlement Administrator to the Settlement Class Members in

accordance with the Plan of Allocation and Distribution attached to the Settlement Agreement as

**Exhibit A**.  The material terms of the Settlement Agreement are as follows:[4]

     a.     <u>Certification of the Class</u>:  The Settlement Class shall be certified for settlement purposes only, pursuant to Civil Rule 23(b)(3) as made applicable to these proceedings by Bankruptcy Rule 7023.

     b.     <u>Appointment of Settlement Administrator</u>:  JND shall be appointed as the Settlement Administrator.

     c.     <u>Designation of Class Representatives</u>:  Tony R. Whisenant, Kyle Allan Taylor, Stanley Ray Born and Ronda Jean Born shall be designated as the Class Representatives.

     d.     <u>Appointment of Settlement Class Counsel</u>:  The law firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., DeVore Law Firm, P.L.C., and Diamond McCarthy LLP shall be appointed as Settlement Class Counsel.

     e.     <u>Stipulations</u>:  Within two (2) business days after the date hereof, the Parties will stipulate to the administrative closing of the Class Lawsuit and the Born Action. Following the date on which the Judgment becomes Final and Non-Appealable (as defined in the Settlement Agreement), the Parties will stipulate to the dismissal with prejudice of the Class Lawsuit and the Born Action.

     f.     <u>Establishment of the Settlement Account:</u>  Three business days after entry of the Preliminary Approval Order, the Settlement Administrator will establish the Taylor Settlement Account for the benefit of the Settlement Class.

     g.     <u>Payments by Debtors</u>:  Five business days after the entry of the Preliminary Approval Order, the Debtors or the reorganized Debtors, as applicable, shall transfer or cause to be transferred by wire transfer the Settlement Proceeds to the Taylor Settlement Account.

---

[4]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and the provisions of the Settlement Agreement, the Settlement Agreement shall control.

h.   <u>Taxation of Settlement Distributions</u>:  Neither the Debtors, SPC, nor any affiliate of the Debtors or SPC shall have any duties, obligations, or liabilities with regard to any income tax, gross production tax, severance tax, petroleum excise tax, or similar tax filings or payments that the members of the Settlement Class and/or Settlement Class Counsel may be required to make with respect to their respective shares of the Settlement Proceeds.

i.   <u>Administration Expenses</u>:  The Administration Expenses shall include costs, fees and/or expenses incurred or charged in connection with the following:  (a) efforts to identify the names and addresses of Settlement Class Members; (b) preparation, mailing, and publication of all notices required to be sent to Settlement Class Members; (c) maintenance of the dedicated website to facilitate communications with Settlement Class Members and their access to information; (d) responding to telephone and electronic inquiries regarding the Settlement by Settlement Class Members; (e) implementation of the Plan of Allocation and Distribution (including, but not limited to, the cost to print and mail Distribution Checks, and the cost of experts to calculate the allocation and distribution); (f) fees and expenses associated with the establishment and maintenance of the Taylor Settlement Account; (g) fees and expenses of the Settlement Administrator; (h) costs of preparing and mailing Distribution Checks and tax documentation to Settlement Class Members; and, (i) fees and expenses of bankruptcy counsel to represent the Settlement Class with hourly fees and expenses presented at the Settlement Fairness Hearing.

j.   <u>Issuance of Notice of the Settlement</u>:  The Settlement Administrator will send the Notice of Settlement, by mail to the putative members of the Settlement Class for whom a mailing address can be found in SPC's and the Debtors' current electronic databases containing last known addresses of royalty payees.  The Settlement Administrator will publish the Notice of Settlement (i) in *The Oklahoman*, a newspaper of general circulation in Oklahoma and (ii) on *PR Newswire*, a nationwide press release distribution website.

k.   <u>Mutual Releases</u>:  The Parties will grant mutual releases for, among other things, all claims within the production periods of the Class Wells prior to the Petition Date for greater, additional, lesser, unpaid, late paid, or overpaid amounts of royalty and/or interest arising from any alleged breach or breaches of express royalty clauses or implied covenants in oil and gas leases, alleged failure to obtain the highest or best price; alleged violations or breaches of the Oklahoma Production Revenue Standards Act; alleged improper or unlawful deductions (of any kind) of/for production and postproduction costs from royalty (and/or based upon the direct and/or indirect factoring of such costs into the computation of royalties), including without limitation, use of gas for fuel, line loss, shrinkage, compression, use of gas for processing or compression, gathering, dehydration, blending, treating, fractionation, transportation, and storage fees, alleged claims for royalty or other payments for or based on Btu content of gas, natural gas liquids, casinghead gas, residue gas, helium, sulfur, and all other substances found in, or extracted or manufactured from, natural gas.

l.  Released Parties:  Released Parties include (a) the Debtors, SPC, affiliates of the Debtors and SPC, the reorganized Debtors and the respective past, present and future affiliates, employees, officers, directors, limited partners, general partners, shareholders, managers, members, attorneys, agents and/or other representatives of such entities; (b) the Settlement Class Members (including the Class Representatives) and Settlement Class Counsel; and (c) other working interest owners in the Class Wells, but only to the extent the Debtors, SPC, and/or affiliates of the Debtors or SPC marketed gas or gas constituents and paid royalty on behalf of such other working interest owners during the Class Period.

m.  Covenant Not to Sue:  Except as otherwise provided in the Settlement Agreement, each Settlement Class Member, the Debtors, SPC, and each affiliate of the Debtors and SPC agree that under no circumstances will he/she/it seek to recover or receive, directly or indirectly, any further amount of money from the Debtors, SPC, or any of the other Released Parties for any of the Released Claims.  For the consideration stated in the Settlement Agreement, each Settlement Class Member, the Debtors, SPC, and each affiliate of the Debtors and SPC covenant not to sue any of the Released Parties for any of the Released Claims.

n.  Effect of Excessive Opt Out:  The Debtors and SPC have the right and option, in their sole discretion, to terminate the Settlement Agreement if members of the Settlement Class who have claims which, in the aggregate, exceed ten percent (10%) of the Settlement Proceeds, elect to opt out of the Settlement.

o.  Procedure for Approval of Fees and Expenses:  Settlement Class Counsel and Class Representatives will file a motion seeking approval of the Class Fees and Expenses (the "Fees and Expenses Motion").  The Fees and Expenses Motion will be filed no later than 14 days before the objection deadline set forth in the Preliminary Approval Order.  Settlement Class Counsel will request that the Fees and Expenses Motion be heard at the Settlement Fairness Hearing.

**Basis for Relief**

**I.  The Court has Jurisdiction Over This Matter and Should Direct the Application of Bankruptcy Rule 7023 and Civil Rule 23.**

19.  As discussed herein, the Settlement will, among other things, avoid protracted and costly litigation between the Debtors and the Class Representatives and enable the parties to avoid uncertain outcomes.  Absent the Settlement, it is reasonably foreseeable that the Class Representatives would object to confirmation of the Debtors' *Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time,

the "Plan") filed contemporaneously herewith.  *See* Fed. R. Bankr. P. 9014 advisory cmte. note (1982) ("Whenever there is an actual dispute, other than an adversary proceeding before the bankruptcy court, the litigation to resolve that dispute is a contested matter . . . ."); *In re Ephedra Products Liability Litig.*, 329 B.R. 1, 7 (Bankr. S.D.N.Y. 2005) (holding that a matter is a "contested matter" for purposes of [Bankruptcy] Rule 9014 when "opposition is known or reasonably foreseeable"); *see also* Fed. R. Bankr. P. 3020(b)(1) ("An objection to confirmation is governed by [Bankruptcy] Rule 9014.").

20.     Bankruptcy Rule 9014, which governs contested matters, provides that "[t]he court may, at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c); *see In re Today's Destiny, Inc.*, 388 B.R. 737, 758 (Bankr. S.D. Tex. 2008) ("A 'contested matter' triggers Rule 9014.").   Among the rules in Part VII of the Bankruptcy Rules are rule 7023, which makes applicable Civil Rule 23.  *See* Fed. R. Bankr. P. 7023; *id.* 7023.1; *see also In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) ("class action proceedings are expressly allowed in the Federal Bankruptcy Rules").

21.     Because the Settlement Agreement seeks to release class claims, the Parties agree that it is appropriate for the Court to direct the application of Bankruptcy Rule 7023 and, by extension, Civil Rule 23.  *See Matter of Skinner Group, Inc.*, 206 B.R. 252, 255 & n.1 (Bankr. N.D. Ga. 1997) (applying Bankruptcy Rule 7023 and Civil Rule 23 for the purpose of certifying a settlement class and preliminarily approving a settlement of claims that were the subject of "numerous actions" in both state and federal court").  Civil Rule 23 "promote[s] efficiency and economy in litigation," and "these principles are not less compelling in the bankruptcy context." *In re Wilborn*, 609 F.3d at 754.

II.     **The Court Should Certify The Class, Designate Class Representatives, And Appoint Class Counsel Pursuant To Civil Rule 23.**[5]

     A.     **The Court Should Certify the Class.**

22.     Courts have found that "settlement classes are a typical feature of modern class litigation, and courts routinely certify them . . . to facilitate the voluntary resolution of legal disputes." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 913 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *see also*, *e.g.*, *Prezant v. De Angelis*, 636 A.2d 915, 924 (Del. 1994) (recognizing the "beneficial aspects of temporary settlement classes," which "allow several steps of litigation to be collapsed into one").

23.     To certify the Settlement Class for settlement purposes only, the Court must determine that the requirements of Civil Rule 23(a) as well as Civil Rule 23(b)(1), (b)(2), or (b)(3) are satisfied. *See*, *e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); *Prezant*, 636 A.2d at 924. The Court is not to adjudicate the merits of the claims at the certification stage. *See Langbecker v. Electric Data Systems Corp.*, 476 F.3d 299, 307 (5th Cir. 2007). The Court has "wide discretion" in making the final determination. *Ordonez Orosco v. Napolitano*, 598 F.3d 222, 225 (5th Cir. 2010). Here, certification is warranted because the requirements of Civil Rules 23(a) and 23(b)(3) are readily satisfied.

     1.     **The Settlement Class Satisfies the Requirements of Civil Rule 23(a).**

24.     Civil Rule 23(a) establishes four requirements for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23; *In re*

---

[5]     The positions expressed in this section II are those of the Class Representatives only and not of the Debtors or SPC. The Debtors and SPC do not dispute these positions solely for purposes of the proposed Settlement.

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012).  The Settlement Class meets each of these requirements.

25.     *Numerosity.*  Civil Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  A showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed. 1992)); *In re Talbert,* 347 B.R. 804, 808–809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members, while noting that classes consisting of as few as 25 or 30 members are certifiable).  Courts may also consider additional factors, including "(i) the interest of judicial economy, (ii) whether the class involves small individual claims, (iii) the geographical dispersion of the class, and (iv) the ease with which class members may be identified."  *In re Rodriguez*, 432 B.R. 671, 692 (Bankr. S.D. Tex. 2010).  But Civil Rule 23(a)(1) does not require a movant to show that every factor points toward numerosity for a court to find that numerosity exists.  *See Mullen*, 186 F.3d at 624–25; *see also Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, No. CIV.A. 12-2043, 2014 WL 7330602, at *3 (E.D. La. Dec. 18, 2014) ("[a] common sense approach" is appropriate).

26.     Here, the Settlement Class easily meets the numerosity requirement.  Pursuant to the Debtors' and SPC's electronic databases, the Notice of Settlement will be provided to more than 18,000 potential Settlement Class Members dispersed throughout the United States.  Accordingly, the Settlement Class is so numerous that joinder is impracticable.  *See Mullen*, 186 F.3d at 624 ("the size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement").

27.     *Commonality*.  Civil Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 368 (2011) (*citing* Fed. R. Civ. P. 23).  "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d at 811 (citing *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012)).  "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.*  Regardless, "a *single* common question will do."  *Id.* (emphasis added); *see* 1 Newberg on Class Actions § 3:21 (5th ed.) ("It is well settled that the requirement of 'common questions of law or fact' in Rule 23(a) is disjunctive; that is, *either* a question of law *or* a question of fact will suffice.").

28.     Where a practice has allegedly caused class-wide harm, the commonality requirement for settlement purposes is met.  *See Rodriguez*, 432 B.R. at 695; *see also* 1 Newberg on Class Actions § 3:20 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.").

29.     In settlement of royalty owner class actions such as this one, individual factual differences regarding oil and gas lease language, well location, or producing formations do not preclude a finding of commonality.  *See, e.g.*, *Naylor Farms, Inc. v. Chaparral Energy, LLC,* 923 F.3d 779, 795-98 (10th Cir. 2019) (analyzing commonality and predominance under Rule 23 in contested context and affirming certification of royalty underpayment class under Oklahoma law despite variations in gas quality, lease language, and royalty payment methodology); *Chieftain Royalty Company v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL 501656, at *2 (E.D. Okla.

Jan. 18, 2018); *Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2010 WL 2474051, at *1-3 (W.D. Okla. June 9, 2010); *Hill v. Marathon Oil Co.*, No. CIV-08-37-R, 2010 WL 2365447, at *3-4 (W.D. Okla. June 9, 2010); *Naylor Farms v. Anadarko OGC Co.*, No. CIV-08-668-R, 2009 WL 8572026, at *5 (W.D. Okla. Aug. 26, 2009) (concluding that "differing language of the leases is not an impediment to certification of the class on the basis of commonality."); *Chieftain Royalty Co. v. QEP Energy Co.*, 281 F.R.D. 499, 503 (W.D. Okla. 2012).

30.     This case is no exception.  Here, common questions of law and fact permeate the claims brought on behalf of all Settlement Class Members.  Such questions include, among others:

a.      Whether the Settlement Class is the beneficiary of an implied covenant obligating the Debtors and SPC to prepare the gas market at the Debtors' and SPC's sole cost.

b.      Whether the raw gas is prepared for market at the meter run/gathering line inlet.

c.      If not, what costs did the Debtors and SPC charge the Settlement Class Members directly (or indirectly by hiring midstream companies to provide gas preparation services) and deduct (in cash or in kind) amounts for doing so.

d.      Whether the Debtors and SPC paid royalty to the Settlement Class Members for all gas constituents, such as fractionated NGLs and helium produced from the Debtors' wells.

*See* Amended Taylor Complaint ¶ 17.

31.     For settlement purposes, the common questions raised in the Amended Taylor Complaint generate common answers that would drive resolution of these claims.  *See In re Deepwater Horizon*, 739 F.3d at 811.  Accordingly, the Settlement Class satisfies the commonality requirement.  *See id.*; *see also In re Riverbed Tech., Inc. v. Stockholders Litig.*, No. 10484-VCG, 2015 WL 5458041, at *2 (Del. Ch. Sept. 17, 2015).

32.     *Typicality*.  Civil Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). The "test for typicality is not demanding."  *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.

2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832 (5th Cir. 2012). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.*; *see also* 1 Newberg on Class Actions § 3:29 ("A plaintiff with typical claims will pursue his or her own self-interest in the litigation and, in so doing, will advance the interests of the class members, which are aligned with those of the representative."). In other words, the test is whether the representative plaintiff's claims "arise from the same common nucleus of facts as the claims of absent class members." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007).

33.     Here, the claims of the Class Representatives and the claims of the other Settlement Class Members share the same essential characteristics and arise from a common nucleus of facts. Given that the Class Representatives' claims involve SPC's alleged method of paying royalty, the Class Representatives have the same interests and seek a remedy for the same alleged injuries as other Settlement Class Members. Further, the Class Representatives do not allege that they were singled out in any respect; instead, the Class Representatives allege that they and the other Class Members suffered the same harm as a result of the same course of events. Thus, the typicality requirement set forth in Civil Rule 23(a)(3) is satisfied in the context of this case where certification is sought for purposes of settlement only.

34.     *Adequacy of Representation*. Civil Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves examination of both the representatives' counsel and the representatives themselves. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017), *cert. denied sub nom. Almond v. Singing River Health Sys.*, 138 S. Ct. 1000 (2018); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). More specifically, "[t]he adequacy requirement

mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Id*. "The adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Berger v. Compaq Comput. Corp*., 257 F.3d 475, 479–80 (5th Cir. 2001) (quoting *Amchem*, 521 U.S. at 625). Minor conflicts of interest will not defeat certification, however; "the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d at 813 n. 99 (*quoting Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

35.    Here, there is no intraclass conflict because the interests of the Class Representatives and those of the Settlement Class Members are fully aligned for settlement purposes. The Class Representatives are royalty owners paid by SPC and they understand their duties as class representatives. Additionally, the Class Representatives have retained counsel competent and experienced in class action and royalty owner litigation.

### 2.    The Settlement Class Satisfies the Requirements of Civil Rule 23(b)(3).

36.    Pursuant to Civil Rule 23(b)(3), class certification is proper when a court finds that common questions of law or fact predominate over questions affecting only individual members and that a class action is superior to other methods of adjudication. In analyzing whether common questions of law or fact predominate over questions affecting only individual members, courts have considered whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See*; *Dukes*, 564 U.S. at 350-51; *Amchem,* 521 U.S. at 623-24; *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766-67 (5th Cir. 2020); *Torres v. S.G.E. Management, L.L.C.*, 838 F.3d 629, 635-36 (5th Cir. 2016); *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016).

37.    Specifically, Civil Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof. What

the rule does require is that common questions predominate over any questions affecting only individual [class] members." *Amgen Inc. v. Conn. Ret. Plans*, 568 U.S. 455, 469 (2013) (quoting Civil Rule 23(b)(3)). Further, "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Here, just as typicality exists, predominance also exists for settlement purposes. All of the alleged claims of the Class Representatives relate to whether SPC took improper deductions from royalty owed to the Settlement Class Members and, in so doing, breached its express and implied duties under the oil and gas leases. Accordingly, the Court should find that the predominance requirement is met for purposes of this Settlement.

38.     Furthermore, as noted above, Civil Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Mullen*, 186 F.3d at 623-24. Civil Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

39.     Here, certification of the Settlement Class meets the standards for superiority. The Settlement Class Members share a collective interest in prosecuting actions against the Debtors and SPC for their alleged wrongful conduct. It would be enormously inefficient for both the judicial system and the parties in interest to engage in multiple trials in individual actions on the

same issues.  Further, the amount of each Settlement Class Member's individual claim is relatively small.  Individually, there is little incentive in controlling the prosecution of separate actions. *See Hill*, 2010 WL 2474051, at *7 (the "[p]utative class members, each of whose royalty interests may be quite small, would have little incentive to prosecute their claims individually because their costs would likely exceed the value of their individual claims.  Thus, class treatment is a superior option here because the alternatives are either no recourse for thousands . . . to whom the courthouse would be out of bounds, or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.").  Lastly, as to manageability, there will be no difficulty in the management of this action as a settlement class action.  *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").  Having shown satisfaction of the Civil Rule 23 requirements in the context of the Settlement, the Class Representatives respectfully ask that the Court certify the Settlement Class.

**B.  The Court Should Designate Tony R. Whisenant, Kyle Allan Taylor, Stanley Ray Born and Ronda Jean Born as Class Representatives and Appoint the Law Firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., DeVore Law Firm, P.L.C., and Diamond McCarthy LLP, as Settlement Class Counsel.**

40.    In light of the foregoing, pursuant to Civil Rules 23(c)(1)(B) and 23(g), the Court should designate Tony R. Whisenant, Kyle Allan Taylor, Stanley Ray Born and Ronda Jean Born as Class Representatives and appoint law firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., DeVore Law Firm, P.L.C., and Diamond McCarthy LLP, as Settlement Class Counsel.  As explained above, the Class Representatives' interests and those of the other Settlement Class Members are fully aligned.  In addition, the law firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., and DeVore Law Firm, P.L.C., have devoted considerable resources to identifying and

investigating the claims asserted by the Class Representatives, and they remain fully committed to devoting resources on behalf of the Settlement Class Members going forward.  Additionally, as demonstrated by the Declaration of Rex A. Sharp, the law firms of Sharp Barton, L.L.P., Grant Law Firm, P.L.L.C., and DeVore Law Firm, P.L.C., are well qualified and experienced when it comes to prosecuting complex litigation on behalf of royalty holders such as the Settlement Class Members and are best positioned to represent the Settlement Class.  Diamond McCarthy LLP is bankruptcy counsel to the Settlement Class.  Diamond McCarthy LLP was retained by Sharp Barton L.L.P. on behalf of the Settlement Class to advise Settlement Class Counsel on bankruptcy matters.  Diamond McCarthy LLP is well qualified and experienced in representing creditors and other parties in interest in complex bankruptcy cases.

### III.    The Court Should Preliminarily Approve the Settlement.

41.    Once a court determines that a class should be certified for purposes of settlement, the settlement generally requires two approvals:  a preliminary approval and a final approval after a fairness hearing.  *See*, *e.g.*, *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). "Preliminary approval is . . . the first stage of the settlement process, and the court's primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  4 Newberg on Class Actions § 13:10 (5th ed.).  It is at the final fairness hearing in the second stage of the process that class members may formally object to the settlement.  *See In re Heartland Payment Sys.*, 851 F.Supp.2d at 1062–63 (citing Fed. R. Civ. P. 23(e)(5)).

42.    The standard for preliminary approval is not high; the Court must find that "(1) the proposed settlement appears to be the product of serious, informed non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; (4) and falls within the range of possible [judicial]

approval." *In re Shell Oil Refinery*, 155 F.R.D. at 555 (citing Manuel for Complex Litigation, Second § 30.44 (1985)); *accord McNamara v Bre-X Minerals Ltd.*, 214 F.R.D. 424, n.2 (E.D. Tex. 2002) ("the purpose of the preliminary approval is to detect any *obvious* defects that will preclude final approval of the settlement") (internal citations omitted).

43.     The Settlement Agreement easily satisfies the standard for preliminary approval. *First*, the Settlement Agreement arises out of informed and arms'-length bargaining between the Parties.   The Debtors and SPC have been engaged in ongoing discussions with the Class Representatives regarding a potential settlement of the claims asserted in the Class Lawsuit and the Born Action for over a year.  The Parties exchanged a significant amount of information during their negotiations and the Class Representatives were represented by their own legal counsel in the negotiations.   The Parties ultimately agreed on the terms of the Settlement Agreement after extensive, hard-fought, good-faith negotiations.

44.     *Second*, the Settlement Agreement has no obvious deficiencies.  To the contrary, it represents a fair and reasonable compromise that is in the best interests of the Debtors' estates, SPC, the Settlement Class Members, and other parties in interest.  Further, in light of the inherent risks and costs associated with litigating the Class Lawsuit and the Born Action, the Settlement Agreement will allow the Debtors, SPC, and all interested parties, including the Class Representatives, to avoid the inherent uncertainty and substantial costs of a prolonged legal battle regarding the Class Lawsuit and the Born Action.  For essentially the same reasons, the Settlement Agreement is fair and reasonable to the Settlement Class Members.  Without the Settlement Agreement, the Settlement Class Members face uncertainty regarding the outcome of the Class Lawsuit and the Born Action, the resolution of which could take years.

45. *Third*, no aspect of the Settlement Agreement improperly grants preferential treatment to the Class Representatives or any segment of the Settlement Class.  In connection with the Fees and Expenses Motion, the Settlement Class Counsel shall seek the approval of a contribution award for the Class Representatives of a one-time combined total payment of $100,000 or two percent (2%) of the Settlement Proceeds, for their years of service on behalf of the Settlement Class Members.  Excepting this one-time contribution award, all Settlement Class Members benefit on equal terms from the structural and other benefits outlined in the Settlement Agreement.

46. *Fourth*, for the reasons set forth above, the Settlement Agreement falls well within the range of outcomes that could secure judicial approval.  The Settlement Agreement is the product of good-faith, arms'-length negotiations between the Parties that provides a recovery for what may have otherwise continued as lengthy, expensive, and complex litigation.

## IV.   The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement and Approve the Retention of JND as the Settlement Administrator.

47. Civil Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the terms of any proposed settlement. Fed. R. Civ. P. 23(e).  This requirement is designed to "inform class members of the nature of the pending litigation; of the settlement's general terms; that complete information is available from court files; and that any class member may appear and be heard at the fairness hearing."  *DeHoyos* 240 F.R.D. at 300.  Proper notice "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and to be heard." *Id.* at 300 (citing *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987)).

48. With the Court's approval, the Settlement Administrator will mail the Notice of Settlement, substantially in the form attached to the Preliminary Approval Order as **Exhibit 2**,  to

each Settlement Class Member for whom Debtors and SPC provide a mailing address.  The Parties

propose that within ten (10) business days following entry of the Preliminary Approval Order, the

Settlement Administrator will serve the Notice of Settlement upon each Class Member at the last

known address of each Settlement Class Member according to the Debtors' and SPC's electronic

databases (or as updated by the Settlement Administrator's searches for current addresses).   In

addition, subject to the Court's approval, the Settlement Administrator will publish the Notice of

Settlement, substantially in the form attached to the Preliminary Approval Order as **Exhibit 3**,

(a) in *The Oklahoman*, a newspaper of general circulation in Oklahoma and

(b) on *PR Newswire*, a nationwide press release distribution website.  *See DeHoyos* 240

F.R.D. at 296 (observing that notice by mail is preferred when all or most of the class members

can be identified); *see also* 3 Newberg on Class Actions § 8:15 (5th ed.) ("[S]ettlement notice, like

any form of notice, must comply with the Constitution's due process requirements – that is, the

notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections.'") (quoting

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *In re Nissan Motor

Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) ("the type of notice to which a member

of a class is entitled to depends upon the information available to the parties about that person").

      49.    The Notice of Settlement outlines the terms of the Settlement Agreement, notifies

the Settlement Class of the anticipated motion for Class Fees and Expenses and Administration

Expenses, and describes how each Settlement Class Member may obtain a copy of the Settlement

Agreement.[6]  The Notice of Settlement also states the date, time, location, and purpose of the

---

[6]    The Notice of Settlement also refers each class member to www.taylorsheridanfund1settlement.com for further status updates on the case and copies of the Amended Taylor Complaint, the Settlement Agreement, this Motion, and other important documents, including the forthcoming motion for Class Fees and Expenses, after their filing.

Settlement Fairness Hearing, informs each Settlement Class Member of the Settlement Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement at the Settlement Fairness Hearing.  The Notice of Settlement further provides detailed instructions on how a Settlement Class Member may opt out of the Settlement Class or object to the Settlement or the anticipated motion for Class Fees and Expenses.  Accordingly, the form and manner of the Notice of Settlement are sufficient and should be approved.  No other notice need be provided.

50.     As demonstrated by the Declaration of Jennifer Keough of JND, JND possesses the requisite qualifications and experience to administer the Settlement Agreement and the Plan of Allocation and Distribution.  The Class Representatives believe that JND should be appointed the Settlement Administrator for the reasons set forth therein. The Debtors and SPC take no position regarding the appointment of JND as the Settlement Administrator.

**V.     The Court Should Schedule a Settlement Fairness Hearing.**

51.     In addition to preliminary approval, a class settlement requires final approval after a fairness hearing, at which class members may appear and formally raise objections, if any.  *See* Fed. R. Civ. P. 23(e)(2), 23(e)(5); *In re Shell Oil Refinery*, 155 F.R.D. at 555; *In re Heartland Payment Sys.*, 851 F.Supp.2d at 1062–63;  Manual for Complex Litigation, Fourth § 21.633 ("The fairness hearing . . . will provide class members an opportunity to present their views on the proposed settlement and to hear arguments and evidence for and against the terms.").

52.     The Parties propose that the Court schedule the Settlement Fairness Hearing approximately 90 days from the date of entry of the Preliminary Approval Order, which will allow the Debtors and SPC to comply with the notice requirements of the Class Action Fairness Act and will provide adequate notice to the Settlement Class Members so that Settlement Class Members may consider the terms of the Settlement Agreement and decide whether to object.  *See* Fed. R. Bankr. P. 2002(a)(3) (providing that "parties in interest" must receive "at least 21 days' notice" of

"the hearing on approval of a compromise or settlement of a controversy"); s*ee also In re Transpacific Passenger Air Trans. Antitrust Litig.*, 701 F.App'x 554, 556 (9th Cir. 2017) (approving a hearing 35 days after notice to the class members); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 430 (5th Cir. 1977) (same; notice of "almost four weeks"); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (same; notice of 19 days); *Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (same; notice of "three weeks"); *In re Sprint Corp. Securities Litig.*, No. 01CV04080-CM, 2004 WL 955859, at *3 (D. Kan. Feb. 24, 2004) (same; notice of 32 days); *Marie Raymond Revocable Trust v. MAT Five LLC*, 980 A.2d 388, 409 (Del. Ch. 2008) ("the general practice of the Court of Chancery is to provide notice to class members between 30 and 45 days prior to the settlement hearing").

## VI.   After the Fairness Hearing, the Court Should Finally Approve the Settlement and Grant Related Relief.

### A.   The Settlement Agreement Satisfies the Requirements of Sections 363(b) of the Bankruptcy Code and Meets the Applicable Standard for Settlements Under Bankruptcy Rule 9019.

53.   Following the Settlement Fairness Hearing, the Court should finally approve the Settlement Agreement.  It is well settled that settlements are "a normal part of the process of reorganization" and "are 'desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly.'" *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *9 (Bankr. S.D. Tex. June 5, 2009) (citations omitted).  The decision whether to approve or deny a settlement "is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (Matter of AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984).  Generally, the role of the bankruptcy court is not to "decide the merits of individual issues" in evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Indeed, "in complex controversies, courts may

conduct less exacting factual inquiries before approving a settlement which appears to substantially benefit the estate." *Id.* Instead, the court should determine whether the settlement as a whole is "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) (approving a settlement of direct, class, and derivative claims that were the subject of actions pending outside the bankruptcy over objections because "the settlement is fair and equitable and in the best interest of the estate"), *aff'd,* 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd,* 487 F. App'x 663 (2d Cir. 2012).

54.     A settlement proponent is not required to show that a settlement is the best possible compromise, but only that the settlement falls "within the range of reasonable litigation alternatives." *See In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (internal quotations and citations omitted). A proposed settlement should be approved if it is fair, equitable, and in the best interest of the estate. *See In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Courts in the Fifth Circuit follow a three-factor balancing test to analyze proposed settlements under Bankruptcy Rule 9019: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *See id.* at 540 (internal citations omitted); *see also Matter of Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997). The third factor is broken into two more specific factors: (a) whether the settlement is in the best interests of the creditors, with proper deference to their reasonable views; and (b) the extent to which the settlement is truly the product of arms'-length bargaining (and not of fraud or collusion). *See In re Age Ref.*, 801 F.3d at 540; *In re Foster Mortg. Corp.*, 68 F.3d 914, 917–18 (5th Cir. 1995).

55.     Additionally, the Bankruptcy Code authorizes the use of property outside the ordinary course of business with court approval and a valid business reason.  Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *In re ASARCO, LLC*, 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010) (finding business judgment standard to be appropriate standard for out-of-the-ordinary course transaction under section 363(b)); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.").

56.     For the following reasons, the Parties respectfully submit that the Settlement Agreement satisfies the standards for approval under applicable law and that the Court should therefore approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

        **1.     The Probability of Success in Litigating the Class Lawsuit and the Born Action is Uncertain**.

57.     While the Debtors and SPC adamantly denied, and continue to deny, the claims asserted in the Class Lawsuit and the Born Action, the Debtors and SPC, in consultation with their

28

advisors, cannot be certain that they would succeed in defending the Class Lawsuit or the Born Action. Similarly, if litigated, the questions raised in the Class Lawsuit and the Born Action would likely involve complicated factual disputes requiring expensive and time-consuming discovery. Accordingly, at this stage, the probability of success in litigating the Class Lawsuit and the Born Action is uncertain.[7]

> **2.      Litigating the Complex Issues Raised in the Class Lawsuit and the Born Action Could Create Considerable Expense, Inconvenience, and Delay.**

58.      With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," continued litigation with the Class Representatives and potential future litigation with the Settlement Class Members would almost certainly be costly and time consuming. To date, the Debtors and SPC have expended significant resources in furtherance of a resolution of the Class Lawsuit and the Born Action. The issues raised in the Class Lawsuit and the Born Action are complex and any potential resolution of the claims asserted in these actions would require extensive discovery and expert witness testimony. If the Court declines to approve the Settlement Agreement, the Debtors' and/or the reorganized Debtors' management team would almost certainly need to dedicate substantial time and effort to the defense of these actions, thereby distracting them from the Debtors' day-to-day operations.

> **3.      The Settlement Agreement is Fair and Equitable and in the Best Interests of Creditors.**

59.      Importantly, the Settlement Agreement is supported by an ad hoc group of holders of the Debtors' prepetition funded debt. Pursuant to the Plan, holders of the Debtors' prepetition funded debt will receive 100% of the new equity in the reorganized Debtors. Accordingly, such

---

[7]      In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

holders, as the future owners of the reorganized Debtors, have an interest in ensuring that the Settlement Agreement is in their best interest.  Furthermore, the Settlement Agreement is in the best interest of all of the Debtors' creditors.  The Settlement Agreement will provide all stakeholders with certainty regarding the resolution of potential claims of the Settlement Class, which could expose the Debtors to additional liabilities, while avoiding the cost and expense of litigation related thereto.

60.     Finally, as discussed herein, the Settlement Agreement arises out of arms'-length negotiations between the Parties.  The Class Lawsuit and the Born Action were filed prior to the Debtors' commencement of these chapter 11 cases and the Parties have been engaged in settlement negotiations for more than a year.  The Parties are committed to resolving the Class Lawsuit and the Born Action in a consensual manner to avoid protracted and costly litigation.  Based on the foregoing considerations, the Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates and their creditors.

**B.     The Settlement Agreement Satisfies the Requirements of Civil Rule 23.**

61.     Civil Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *In re Shell Oil Refinery*, 155 F.R.D. at 555; *DeHoyos*, 240 F.R.D. at 285-86.  "The general rule applicable to the court's exercise of its discretion in deciding the fairness of a proposed [settlement of a] class action is that the court must ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression."  *DeHoyos*, 240 F.R.D. at 286 (internal

citations omitted) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)).  "[T]here is a strong presumption in favor of finding the settlement fair."  *Id*.  Furthermore, "the proposed settlement is not required to achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in a contested matter," but instead the "[c]ourt may rely on the judgement of experienced counsel for the parties."  *Id*.

62.     The Fifth Circuit has held that the following six factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate:  "(1) the existence of fraud or collusion behind the settlement; (2) the probability of plaintiffs' success on the merits;  (3) the range of possible recovery; (4)  the complexity, expense and likely duration of the litigation; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of the class counsel, class representatives, and absent class members."  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1205, 1209 (5th Cir. 1982)); *In re Katrina Canal Breaches Litigation*, 628 F.3d 185, 194-95 (5th Cir. 2010) (citing *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004)); *cf. In re TD Banknorth*, 938 A.2d 654, 658 (Del. Ch. 2007) ("an  evaluation  of  whether  a settlement is fair and reasonable" "requires  balancing  the strengths  of  the  claims  being  compromised  against  the  benefits  the settlement provides  to the class members.").  The *Reed* factors strongly support approval of the Settlement Agreement.

63.     *First*, as noted herein, the Settlement Agreement arises out of serious, informed, arms'-length bargaining between the Parties.  There is no evidence that the Settlement Agreement is collusive or fraudulent.

64.     *Second* and *third*, the Settlement Agreement reflects the probability of success on the merits and the range of possible recovery.  Although the Court "must not try the case in the

settlement hearings," it should generally "compare [the settlement's] terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172. Here, in light of the attendant risks associated with litigating the Class Lawsuit and the Born Action, the Settlement Agreement falls well within the range of reasonableness. The settlement provides for mutual releases between the Debtors, SPC, and the Settlement Class Members and payment of the Settlement Proceeds to be distributed to the Settlement Class. Absent approval of the Settlement Agreement, the Parties face uncertainty regarding the outcome of the Class Lawsuit and the Born Action, the resolution of which could take years.

65.     *Fourth* and *fifth*, the complexity, expense and likely duration of the litigation, as well as the stage of the proceedings, all point in favor of approving the Settlement Agreement. As discussed herein, extensive discovery and expert witness testimony would be required if the Class Lawsuits and the Born Action were to proceed in their respective courts. Accordingly, continuing the litigation that could otherwise be resolved pursuant to the Settlement Agreement would likely entail significant expense and delay for all parties involved.

66.     *Sixth*, the Settlement Agreement enjoys the support of the Class Representatives and the Settlement Class Counsel who engaged in negotiations with the Debtors and SPC for more than a year to secure its terms. All Settlement Class Members will be afforded the opportunity to opt-out of the Settlement Agreement and object to any of the Settlement Agreement's terms at the Settlement Fairness Hearing. At that time, if significant objections manifest, the Court and the Parties may address them as appropriate.

67.     For all of the foregoing reasons, the Parties respectfully request that the Court enter the Preliminary Approval Order and, after the Settlement Fairness Hearing, the Judgment as the

Settlement Agreement represents a reasonable compromise of the claims presented by the Settlement Class.

### **Notice**

68.     The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' revolving credit facilities and senior secured term loan facilities; (d) counsel to the steering committee and ad hoc group of holders of claims specified in clause (c); (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.


[*Remainder of page intentionally left blank.*]

WHEREFORE, the Class Representatives, the Debtors and SPC respectfully request that the Court enter the Preliminary Approval Order and the Judgment, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
March 23, 2020

/s/ Matthew D. Cavenaugh
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*/s/ Charles Rubio*
Charles Rubio (TX Bar No. 24083768)
Diamond McCarthy, LLP
909 Fannin Street, 37th Floor
Houston, Texas 77010
(212) 430-5438
CRubio@diamondmccarthy.com

and

Rex. A. Sharp OBA No. 011990, TX No. 18118800 (*pro hac vice* admission pending)
SHARP BARTON, L.L.P.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rex@sharpbarton.com

and

Michael E. Grant, OBA No. 11848 (*pro hac vice* admission pending)
Grant Law Firm, P.L.L.C.
512 N.S. 12th Street
Oklahoma City, OK 73103
(405) 232-6357
(405) 232-6358 fax
de1471@coxinet.net

and

Allan DeVore, OBA No. 2328 (*pro hac vice* admission pending)
Jandra Cox, OBA No. 16610 (*pro hac vice* admission pending)
DeVore Law Firm, P.LC.
5709 NW 132nd St.
Oklahoma City, OK 73142
(405) 603-8585
dlf@DeVoreLawOK.com

*Proposed Counsel to the Settlement Class*

**Certificate of Service**

I certify that on March 23, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Matthew D. Cavenaugh
Matthew D. Cavenaugh