**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

**SUMMARY COVER SHEET TO THE FIRST AND
FINAL FEE APPLICATION OF KIRKLAND & ELLIS
LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP,
PROPOSED ATTORNEYS FOR THE REORGANIZED DEBTORS,
FROM MARCH 23, 2020 THROUGH AND INCLUDING MARCH 24, 2020**

In accordance with the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E"), proposed attorneys for the above-captioned reorganized debtors (collectively, the "Reorganized Debtors" and before the Effective Date of the Plan (each as defined herein), the "Debtors"), submit this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from March 23, 2020 through March 24, 2020 (the "Fee Period").

K&E submits the Fee Application as a final fee application in accordance with the *Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 11] (the "Plan"), which requires K&E to file final fee applications no later than 45 days after the Effective Date, and the *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 76] (the "Confirmation Order").[3]

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

[3] Paragraph 85 of the Confirmation Order provides that: "[f]rom and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ

| Name of Applicant | | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
|---|---|---|
| Applicant's professional role in case | | Counsel to the Debtors |
| Effective date of order approving professional's retention | | The Reorganized Debtors have requested that the Bankruptcy Court approve K&E's retention effective as of March 23, 2020. |
| | Beginning of Period | Ending of Period |
| Time period covered in application | March 23, 2020 | March 24, 2020 |
| Time periods covered by any prior applications | Not Applicable | Not Applicable |
| Total amounts awarded in all prior applications | | Not Applicable |
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied) | | $158,486.50 |
| Total fees applied for in this application (including any retainer amounts to be applied) | | $158,486.50 |
| Total professional fees requested in this application | | $155,018.50 |
| Total actual professional hours covered by this application | | 162.10 |
| Average hourly rate for professionals | | $950.00 |
| Total paraprofessional fees requested in this application | | $3,468.00 |
| Total actual paraprofessional hours covered by this application | | 10.20 |
| Average hourly rate for paraprofessionals | | $340.00 |
| Reimbursable expenses sought in this application | | $2,047.98 |
| Total to be paid to priority unsecured creditors under the plan | | $0[4] |

and pay any Professional in the ordinary course of business without further notice to or action, order, or approval of the Court.

[4] Each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Claim. *See* Plan, Article III.B.

| Name of Applicant | **Kirkland & Ellis LLP and**<br>**Kirkland & Ellis International LLP** |
|---|---|
| Percentage dividend to priority unsecured creditors under the plan | $100% |
| Total to be paid to general unsecured creditors under the plan | $6,755,596[5] |
| Percentage dividend to general unsecured creditors under the plan | 100% |
| Date of confirmation hearing | March 24, 2020 |
| Indicate whether plan has been confirmed | Yes [Docket No. 76] |

---

[5]   Each Holder of an Allowed General Unsecured Claim shall receive either: (i) Reinstatement of such Claim pursuant to section 1124 of the Bankruptcy Code; or (ii) Cash in an amount equal to such Claim. *See* Plan, Article III.B.

Dated: April 21, 2020          */s/ Steven N. Serajeddini*
  Houston, Texas              Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
                             Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
                             **KIRKLAND & ELLIS LLP**
                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                             601 Lexington Avenue
                             New York, New York 10022
                             Telephone:    (212) 446-4800
                             Facsimile:    (212) 446-4900
                             Email:         joshua.sussberg@kirkland.com
                                                   steven.serajeddini@kirkland.com

                             -and-

                             Spencer A. Winters (admitted *pro hac vice*)
                             **KIRKLAND & ELLIS LLP**
                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                             300 North LaSalle Street
                             Chicago, Illinois 60654
                             Telephone:    (312) 862-2000
                             Facsimile:    (312) 862-2200
                             Email:         spencer.winters@kirkland.com

                             *Proposed Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

**FIRST AND FINAL FEE APPLICATION OF KIRKLAND & ELLIS
LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP, PROPOSED
ATTORNEYS FOR THE REORGANIZED DEBTORS, FOR THE PERIOD
FROM MARCH 23, 2020 THROUGH AND INCLUDING MARCH 24, 2020**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E"),[2]

proposed attorneys for the above-captioned reorganized debtors (collectively,

the "Reorganized Debtors" and before the Effective Date of the Plan (each as defined herein),

the "Debtors"), hereby submit their first and final fee application (the "Fee Application") for

allowance of compensation for professional services provided in the amount of $158,486.50 and

reimbursement of actual and necessary expenses in the amount of $2,047.98 that K&E incurred

for the period from March 23, 2020, through March 24, 2020 (the "Fee Period"). In support of

this Fee Application, K&E submits the declaration of Steven N. Serajeddini, the president of

---

[1]   The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Reorganized Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 11] (the "Plan") or the *Disclosure Statement Relating to the Joint Prepackaged Plan of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (the "Disclosure Statement"), as applicable.

Steven N. Serajeddini, P.C., a partner of K&E (the "Serajeddini Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference.  In further support of this Fee Application, K&E respectfully states as follows.

### Jurisdiction and Venue

1.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 2016, Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Background and Case Summary

4.     On March 23, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  During these chapter 11 cases, the Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     A description of the Debtors' businesses and the reasons for commencing the chapter 11 cases are set forth in the *Declaration of Lisa A. Stewart, Executive Chairman, President, Chief Investment Officer, and Chief Executive Officer of Sheridan Holding Company I, LLC, in*

*Support of Chapter 11 Petitions and First Day Motions*, filed on March 23, 2020 [Docket No. 5] and incorporated herein by reference.

6.       On March 24, 2020, the Bankruptcy Court approved the Disclosure Statement, confirmed the Plan, and entered the *Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 76].

7.       On March 30, 2020, the Effective Date of the Plan occurred and the Reorganized Debtors filed the *Notice of (I) Entry of Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan and (II) Occurrence of the Effective Date* [Docket No. 116].

8.       Because of the prepackaged nature of these chapter 11 cases, the Debtors did not seek entry of an interim compensation order.  Thus, K&E seeks approval in this Fee Application of all fees and expenses incurred during the Fee Period on a final basis.

### The Debtors' Retention of K&E

9.       On April 1, 2020, the Reorganized Debtors filed the Retention Application (as defined below), including the proposed *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Reorganized Debtors Effective as of March 23, 2020* (the "Proposed Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Proposed Retention Order, if entered, would authorize the Reorganized Debtors to compensate and reimburse K&E in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Bankruptcy Court.  The Proposed Retention Order would also authorize the Reorganized Debtors to compensate K&E at K&E's hourly rates charged for services of this type and to reimburse K&E for K&E's actual and necessary out-of-pocket expenses incurred, subject to application to this Bankruptcy Court.  The particular terms of K&E's

engagement are detailed in the engagement letter by and between K&E and the Debtors, dated November 28, 2018 and attached hereto as **Exhibit C** (the "Engagement Letter").

10.     The Proposed Retention Order would authorize K&E to provide the following services consistent with and in furtherance of the services enumerated above:

a.      advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advise and consult on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attend meetings and negotiate with representatives of creditors and other parties in interest;

d.      take all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      prepare pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      represent the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advise the Debtors in connection with any potential sale of assets;

h.      appear before the Bankruptcy Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advise the Debtors regarding tax matters;

j.      take any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      perform all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Reorganized Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## Disinterestedness of K&E

11.     To the best of the Reorganized Debtors' knowledge and as disclosed in the Serajeddini Declaration and the *Declaration of Steven N. Serajeddini in Support of the Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Reorganized Debtors Effective as of March 23, 2020* [Docket No. 125-1] (collectively, the "K&E Declarations"), (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Reorganized Debtors' estates and (b) K&E has no connection to the Reorganized Debtors, their creditors, or other parties in interest, except as may be disclosed in the K&E Declarations.

12.     K&E and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent, entities that may be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Reorganized Debtors and these chapter 11 cases.  In the K&E Declarations, K&E disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.

13.     K&E performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

14.     Except to the extent of the advance payments paid to K&E that K&E previously disclosed to this Bankruptcy Court in the K&E Declarations, K&E has received no payment and no promises for payment from any source other than the Debtors for services provided or the Reorganized Debtors for services to be provided in any capacity whatsoever in connection with these chapter 11 cases.

15.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared, nor has K&E agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of K&E or (b) any compensation another person or party has received or may receive.

**Fees and Expenses Incurred During Fee Period**

**A.     Customary Billing Disclosures.**

16.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by K&E for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructuring and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Bankruptcy Court and all parties in interest, attached hereto as **Exhibit D** is K&E's budget and staffing plan for this Fee Period, and attached hereto as **Exhibit E** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.     Fees Incurred During Fee Period.**

17.     In the ordinary course of K&E's practice, K&E maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. For the convenience of the Bankruptcy Court and all parties in interest, attached hereto as

**Exhibit F** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at K&E's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Reorganized Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Reorganized Debtors Effective as of March 23, 2020* (the "Retention Application").

## C.    Expenses Incurred During Fee Period.

18.    In the ordinary course of K&E's practice, K&E maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.   K&E currently charges $0.16 per page for standard duplication in its offices in the United States.   K&E does not charge its clients for incoming facsimile transmissions.

19.    For the convenience of the Bankruptcy Court and all parties in interest, attached hereto as **Exhibit G** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which K&E is seeking reimbursement.

**Summary of Legal Services Rendered During the Fee Period**

20.     As discussed above, during the Fee Period, K&E provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

21.     To provide a meaningful summary of K&E's services provided on behalf of the Debtors and their estates, K&E has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[3]

| Matter Number | Project Category Description | Hours | | Total Compensation | | Expenses | Total |
|---|---|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed | | |
| 2 | Chapter 11 Filing | 105 – 121 | 51.40 | $94,500 - $110,000 | $42,680.00 | - | $42,680.00 |
| 3 | Case Administration | 80 – 92 | 52.30 | $67,500 – $80,000 | $47,509.00 | - | $47,509.00 |
| 4 | Disclosure Statement, Plan, and Confirmation | 230 – 265 | 65.80 | $225,000 – $260,000 | $64,769.50 | - | $64,769.50 |
| 5 | Hearings | 55 – 63 | 2.80 | $63,000 – $70,000 | $3,528.00 | - | $3,528.00 |
| 7 | Expenses | - | - | - | - | $2,047.98 | $2,047.98 |
| **Totals** | | **470 – 541** | **172.30** | **$450,000 – $520,000** | **$158,486.50** | **$2,047.98** | **$160,534.48** |

22.     The following is a summary, by Matter Category, of the most significant professional services provided by K&E during the Fee Period.  This summary is organized in accordance with K&E's internal system of matter numbers.  The detailed descriptions demonstrate that K&E was heavily involved in performing services for the Debtors to meet the needs of the

---

[3]     In certain instances, K&E may have billed the same amount of fees, but different amount of hours to different matter categories.  This difference is the result of different staffing of each such matter category.

Debtors' estates in these chapter 11 cases.  A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by K&E partners, associates and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit H**.

23.     In addition, K&E's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit I**, and K&E's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit J**.

    **(a)**  **Chapter 11 Filing [Matter No. 2]**

      Total Fees: $42,680.00
      Total Hours: 51.40

24.     This Matter Category includes time spent on a variety of tasks that were completed during the filing of the Debtors' chapter 11 cases, including:

    (i)  reviewing and revising the Debtors' petitions and "first day" motions, proposed orders, and notices;  and

    (ii)  participating in numerous telephone and office conferences, corresponding with, and drafting correspondence to, the Debtors, their advisors, and other parties in interest with respect to the foregoing.

    **(b)**  **Case Administration [Matter No. 3]**

      Total Fees: $47,509.00
      Total Hours: 52.30

25.     This Matter Category includes time spent on a variety of tasks that were necessary to ensure the efficient and smooth administration of legal services related to the Debtors' chapter 11 cases, including:

    (i)  managing and administering these chapter 11 cases;

    (ii)  preparing for the first day hearing;

    (iii)  organizing and maintaining voluminous document files for the cases; and

(iv)    ensuring compliance with all of the other applicable requirements of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders or procedures issued by the Bankruptcy Court.

26.    Time billed to this Matter Category also includes work and meetings related to multiple matters such that the time cannot be easily allocated to one of the other matters.

**(c)    Disclosure Statement, Plan, and Confirmation [Matter No. 4]**

Total Fees:    $64,769.50
Total Hours:   65.80

27.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to obtaining approval of the Disclosure Statement and confirmation and consummation of the Plan, including:

(i)    drafting, revising, compiling, and filing the Plan and the *Notice of Filing Plan Supplement for the Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtors Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17];

(ii)    researching, drafting, revising, and filing the Confirmation Order, the *Memorandum of Law of Sheridan Holding Company I, LLC,* et al.*, in Support of an Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 18], and the supporting declarations [Docket Nos. 5, 14, 15, 16, 23];

(iii)    preparing for the confirmation hearing;

(iv)    coordinating consummation of the Restructuring Transactions; and

(v)    participating in numerous telephone and office conferences, corresponding with, and drafting correspondence to, the Debtors, their advisors, and other parties in interest with respect to the foregoing.

**(d)    Hearings [Matter No. 5]**

Total Fees:    $3,528.00
Total Hours:   2.80

28.    This Matter Category includes time spent by K&E attorneys attending the March 24, 2020 first day and confirmation hearing.

10

## Actual and Necessary Expenses Incurred by K&E

29.     As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit G** attached hereto, K&E has incurred a total of $2,047.98 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse K&E's direct operating costs, which are not incorporated into the K&E hourly billing rates.   K&E charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

## Reasonable and Necessary Services Provided by K&E

**A.**     **Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

30.     The foregoing professional services provided by K&E on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

31.     Many of the services performed by partners and associates of K&E were provided by K&E's Restructuring Group.  K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with over 150 attorneys focusing on this area of the law.  The attorneys at K&E have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

32.     In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from K&E's corporate, debt finance, executive compensation, insurance, and tax groups were heavily involved with K&E's representation of the Debtors.  These practice groups also enjoy a national and international reputation for their expertise.   Overall, K&E brings to these

chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

33.      The time constraints imposed by the circumstances of these chapter 11 cases required K&E attorneys and other employees to devote substantial time during the evening and on the weekend of the filing to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, and as further disclosed in the Retention Application, K&E attorneys and other K&E employees who worked late in the evening or on the weekend of the filing were reimbursed for their reasonable meal and transportation costs. K&E's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

34.      In addition, due to the location of the Debtors' businesses, creditors and other parties in interest in relation to K&E's offices, frequent multi-party telephone conferences involving numerous parties were required.  The disbursements for such services are not included in K&E's overhead for the purpose of setting billing rates and K&E has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

35.      Among other things, K&E makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, K&E regularly reviews its bills to ensure that the Debtors are only billed for services

that were actual and necessary and, where appropriate, prorates expenses.  In that regard, K&E will waive certain fees and reduce its expenses if necessary.  In the Fee Period, K&E voluntarily reduced its fees by $5,710.25.  Consequently, K&E does not seek payment of such fees in the Fee Application.

### K&E's Requested Compensation and Reimbursement Should be Allowed

36.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Bankruptcy Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

13

11 U.S.C. § 330(a)(3).

37.     K&E respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  K&E further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents. K&E further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

38.     During the course of these chapter 11 cases, K&E's hourly billing rates for attorneys ranged from $610.00 to $1,525.00.  The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  K&E strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

39.     Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

40.     In sum, K&E respectfully submits that the professional services provided by K&E on behalf of the Debtors and their estates during these chapter 11 cases were necessary and

14

appropriate given the complexity of these chapter 11 cases, the time expended by K&E, the nature and extent of K&E's services provided, the value of K&E's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, K&E respectfully submits that approval of the compensation sought herein is warranted and should be approved.

41.     No previous application for the relief sought herein has been made to this or any other Bankruptcy Court.

### Reservation of Rights and Notice

42.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  K&E reserves the right to include such amounts in future fee applications.  Any party that wishes to object to the Fee Application, must file its objection with the Bankruptcy Court, and serve it on the affected professional and the notice parties listed in paragraph 43 so that it is actually received on or before May 12, 2020, at 4:00 p.m. (Prevailing Central Time).

43.     The Reorganized Debtors will provide notice of this Application to:  (a) U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Reorganized Debtors (on a consolidated basis); (c) the administrative agent under the Reorganized Debtors' revolving credit facilities and fund I senior secured term loan facilities and counsel thereto; (d) counsel to the steering committee and ad hoc group of holders of claims specified in clause (c); (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Reorganized Debtors conduct business; (i) the state attorneys general for states in which the Reorganized Debtors conduct business; (j) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

44.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, K&E respectfully requests that the Bankruptcy Court enter an order, substantially in the form attached hereto as **Exhibit K**, (a) awarding K&E final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $158,486.50, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $2,047.98; (b) authorizing and directing the Reorganized Debtors to remit payment to K&E for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated:  April 21, 2020
Houston, Texas

/s/ Steven N. Serajeddini
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                      steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            spencer.winters@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Serajeddini Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
|  | § |  |
| Reorganized Debtors. | § | (Jointly Administered) |
|  | § |  |

DECLARATION OF
STEVEN N. SERAJEDDINI
IN SUPPORT OF THE FIRST AND FINAL
FEE APPLICATION OF KIRKLAND & ELLIS LLP
AND KIRKLAND & ELLIS INTERNATIONAL LLP,
PROPOSED ATTORNEYS FOR THE REORGANIZED DEBTORS, FOR
THE PERIOD OF MARCH 23, 2020 THROUGH AND INCLUDING MARCH 24, 2020

I, Steven N. Serajeddini, being duly sworn, state the following under penalty of perjury:

1.      I am the president of Steven N. Serajeddini, P.C., a partner of the law firm of
Kirkland & Ellis LLP ("K&E"), located at 601 Lexington Avenue, New York, New York 10022.[2]
I am the lead attorney from K&E working on the above-captioned chapter 11 cases.  I am a member
in good standing of the Bars of the States of Illinois and New York, and I have been admitted to
practice in *pro hac vice* in this matter.  There are no disciplinary proceedings pending against me.

2.      I have read the foregoing first and final fee application of K&E, proposed attorneys
for the Debtors, for the Fee Period (the "Fee Application").  To the best of my knowledge,

---

[1]     The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's
federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment
Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P.
(8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP
I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite
2500, Houston, Texas 77056.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Fee Application.

information and belief, the statements contained in the Fee Application are true and correct.  In addition, I believe that the Fee Application complies with Local Bankruptcy Rule 2016-1(a).

3.      In connection therewith, I hereby certify that:

(i)      to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

(ii)      except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by K&E and generally accepted by K&E's clients.  In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of the Debtors' case;

(iii)      the fees sought do not exceed the fees budgeted for the same time period in the budget and staffing plan by more than 10%;

(iv)      K&E did not increase hourly rates from those disclosed in the Retention Application during the Fee Period;

(v)      K&E is not seeking compensation with respect to time spent reviewing or revising time records and preparing, reviewing, and revising invoices;

(vi)      in providing a reimbursable expense, K&E does not make a profit on that expense, whether the service is performed by K&E in-house or through a third party;

(vii)      in accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 504, no agreement or understanding exists between K&E and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; and

(viii)      all services for which compensation is sought were professional services on behalf of the Debtors and not on behalf of any other person.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 21, 2020                    Respectfully submitted,

                                            */s/ Steven N. Serajeddini*

                                            Steven N. Serajeddini
                                            as President of Steven N. Serajeddini, P.C., as
                                            Partner of Kirkland & Ellis LLP; and as Partner of
                                            Kirkland & Ellis International LLP

**<u>Exhibit B</u>**

**Proposed Retention Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | **Re: Docket No. 125** |

## ORDER AUTHORIZING THE RETENTION
## AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR
## THE REORGANIZED DEBTORS EFFECTIVE AS OF MARCH 23, 2020

Upon the application (the "Application")[2] of the above-captioned reorganized debtors (collectively, the "Reorganized Debtors," and before the Effective Date (as defined in the Application), the "Debtors") for the entry of an order (this "Order") authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Bankruptcy Rules"); and the Court having reviewed the Application, the Declaration of Steven N. Serajeddini, the president of Steven N. Serajeddini, P.C., a partner of Kirkland & Ellis LLP, and

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include:  Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

a partner of Kirkland & Ellis International LLP (the "Serajeddini Declaration"), and the declaration of Lisa A. Stewart, the Executive Chairman of Sheridan Production Partners Manager, LLC, with respect to its Series I (the "Stewart Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Serajeddini Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is granted to the extent set forth herein.

2.     The Reorganized Debtors are authorized to retain and employ Kirkland as their attorneys effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**, as modified herein.

3.     Kirkland is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter. Specifically, but without limitation, Kirkland for rendering the following legal services:

a.     advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.     advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

d.     taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.  performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.  Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. For billing purposes, Kirkland shall keep its time in one tenth (1/10) hour increments in accordance with the *Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"). Kirkland also intends to make a reasonable effort to comply with the requests from United States Trustee for the Southern District of Texas (the "U.S. Trustee") for information and additional disclosures as set forth in the Revised UST Guidelines, both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.  Kirkland is authorized without further order of the Court to apply amounts from the prepetition advance payment retainer to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practice. At the conclusion of Kirkland's engagement by the Reorganized Debtors, if the amount of any advance payment retainer held by Kirkland is in excess of the amount of Kirkland's outstanding and estimated fees, expenses, and costs, Kirkland will pay to the Reorganized Debtors the amount by which any advance payment retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached in the Applications, the "Client Waiver" of the right to object to fees and expenses once paid is not effective while the Client is a debtor-in-possession.  The Client Waiver shall not be construed to limit, restrict, or impair, while Client is a debtor-in-possession, Client's responsibility to protect and conserve estate assets by reviewing and objecting to the allowance of professional fees in accordance with 11 U.S.C. §§ 330, 331, and 1106(a)(1) (incorporating sections 704(a)(5) and 704(a)(2)).

8.      Kirkland shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

9.      The Reorganized Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

11.     To the extent the Application, the Serajeddini Declaration, the Stewart Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2020
Houston, Texas

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit C

**Engagement Letter**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Joshua A. Sussberg, P.C.
To Call Writer Directly:
+1 212 446 4829
joshua.sussberg@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

November 28, 2018

Sheridan Production Company, LLC
1360 Post Oak Blvd., Suite 2500
Houston, TX 77056
Attn: Cheryl S. Phillips, Vice President and General Counsel

Re:     Retention to Provide Legal Services

Dear Cheryl:

We are very pleased that you have asked us to represent Sheridan Investment Partners II, L.P., Sheridan Production Partners II-A, L.P., Sheridan Production Partners II-M, L.P. and only those subsidiaries and affiliates listed in the addendum hereto, as the same may be supplemented from time to time (collectively, "Client") in connection with a potential restructuring. Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.** This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties"). This Agreement sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.** The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court). The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

Beijing   Boston   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   Palo Alto   San Francisco   Shanghai   Washington, D.C.

KIRKLAND & ELLIS LLP

November 28, 2018
Page 2

**Expenses.**  Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges. Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties.  By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.**  The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances.  Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.**  Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $200,000.00.  In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses.  The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs.  Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that: Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests.  The fact that Client

KIRKLAND & ELLIS LLP

November 28, 2018
Page 3

has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

# KIRKLAND & ELLIS LLP

November 28, 2018
Page 4

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.** All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time. Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years. Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction. It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records. The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter. Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")). Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials. For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

**Data Protection.** You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com. We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

# KIRKLAND & ELLIS LLP

November 28, 2018
Page 5

**Conflicts of Interest.** As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client. The Firm notes that the Firm currently represents or has represented Warburg Pincus, LLC, HarbourVest Partners L.P. or each of their respective affiliates (collectively, the "Interested Parties") and will continue to do so in such unrelated matters. The Firm will not represent the Interested Parties in matters related to the Client. Because Client is engaged in activities (and may in the future engage in additional activities) in which Client's interests may diverge from those of the Interested Parties or the Firm's other clients, the possibility exists that the Interested Parties or one of the Firm's clients may take positions adverse to Client.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm may be retained or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate,

# KIRKLAND & ELLIS LLP

November 28, 2018
Page 6

director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement. Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you. You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters. Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding"). The attorney investment entities are passive and have no management or other control rights in such funds or companies. The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter. While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding. Please let us know if Client has any questions or concerns regarding the Passive Holdings. By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**. If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing

## KIRKLAND & ELLIS LLP

November 28, 2018
Page 7

employment by Client will be subject to the approval of the court with jurisdiction over the petition. If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.** It is impossible to provide any promise or guarantee about the outcome of Client's matters. Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee. Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.** In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

**Reimbursement of Fees and Expenses.** Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement. Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding. Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

## KIRKLAND & ELLIS LLP

November 28, 2018
Page 8

**LLP.** Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware. Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.** This Agreement sets forth the Parties' entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding. This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable. Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing. Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment. The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

## KIRKLAND & ELLIS LLP

November 28, 2018
Page 9

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us. Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours

KIRKLAND & ELLIS LLP

By: _____
Printed Name: Joshua A. Sussberg
Title: Partner

Agreed and accepted this 29ᵗʰ day of November, 2018

Sheridan Investment Partners II, L.P.,
Sheridan Production Partners II-A, L.P.,
and Sheridan Production Partners II-M, L.P.

By: _____
Name: Cheryl S. Phillips
Title: Vice President + General Counsel

KIRKLAND & ELLIS LLP

Page 10

## **ADDENDUM:  List of Client Affiliates/Subsidiaries**

Sheridan Holding Company I, LLC

Sheridan Investment Partners I, LLC

Sheridan Production Partners I, LLC

Sheridan Production Partners I-A, L.P.

Sheridan Production Partners I-B, L.P.

Sheridan Production Partners I-M, L.P.

SPP I-B GP, LLC

Sheridan Holding Company II, LLC

Sheridan Investment Partners II GP, LLC

Sheridan Investment Partners II, L.P.

Sheridan Production Partners II, LLC

Sheridan Production Partners II-A, L.P.

Sheridan Production Partners II-B, L.P.

Sheridan Production Partners II-M, L.P.

SPP II-B GP, LLC

SPP II-M GP, LLC

Page No. 1

## KIRKLAND & ELLIS LLP

## CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES

*Effective 01/01/2018*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  ▶ Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  ▶ Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  ▶ Scanned Images:
    - $0.16 per page for black and white or color scans
  ▶ Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

Page No. 2

- **Travel Expenses**: We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees. We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade. K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses. K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable. However, certain retrospective rebates may not be passed along.

- **Catering Charges**: Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**: We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred. Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**: We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf. K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**: We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services**: Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services. Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**: K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter. K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services**: Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title. There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

Page No. 3

- **Off-Site Legal Files Storage:**  Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage:**  K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $4.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of.  For e-discovery data on the Relativity platform, K&E LLP will also charge clients $4.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services:**  Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies:**  There is no client charge for standard office supplies.  Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers:**  If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants:**  If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures:**  Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client.  In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

3

**Exhibit D**

**Budget and Staffing Plan**

| Matter Number | Project Category Description | Hours Budgeted | Total Compensation Budgeted[1] |
|---|---|---|---|
| 2 | Chapter 11 Filing | 105 – 121 | $94,500 - 110,000 |
| 3 | Case Administration | 80 – 92 | $67,500 – $80,000 |
| 4 | Disclosure Statement, Plan, and Confirmation | 230 – 265 | $225,000 – $260,000 |
| 5 | Hearings | 55 – 63 | $63,000 – $70,000 |
| **Total** | | **470 – 541** | **$450,000 – $520,000** |

---

[1]   Budgeted numbers do not necessarily amount to a 1:1 ratio because they reflect a blended hourly rate and a variable allocation of timekeepers and hours, depending on the needs for each matter number.

**Exhibit E**

**Voluntary Rate Disclosure**

- The blended hourly rate for all K&E domestic timekeepers (including both professionals and paraprofessionals) who billed to non-bankruptcy matters (collectively, the "Non-Bankruptcy Matters")[1] during the 12-month period beginning on May 1, 2019, and ending on April 30, 2020 (the "Comparable Period") was, in the aggregate, approximately **$940.31** per hour (the "Non-Bankruptcy Blended Hourly Rate").[2]

- The blended hourly rate for all K&E timekeepers (including both professionals and paraprofessionals) who billed to the Debtors during the Fee Period was approximately **$919.83** per hour (the "Debtor Blended Hourly Rate").[3]

- A detailed comparison of these rates is as follows:

| Position at K&E | Debtor Blended Hourly Rate for This Fee Application | Non-Bankruptcy Blended Hourly Rate |
|---|---|---|
| Partner | $1,303.70 | $1,292.89 |
| Of Counsel | - | $1,008.31 |
| Associate | $845.14 | $802.42 |
| Contract Attorney | - | - |
| Visiting Attorney | - | $568.39 |
| Law Clerk | - | $345.29 |
| Paralegal | $340.00 | $371.81 |
| Junior Paralegal | - | $244.73 |
| Support Staff | - | $347.74 |
| **Total** | **$919.83** | **$940.31** |

---

[1]  It is the nature of K&E's practice that certain non-bankruptcy engagements require the advice and counsel of professionals and paraprofessionals who work primarily within K&E's Restructuring Group. Accordingly, "Non-Bankruptcy Matters" consist of matters for which K&E domestic timekeepers represented a client in a matter other than an in-court bankruptcy proceeding. Moreover, the Non-Bankruptcy Matters include time billed by K&E domestic timekeepers who work primarily within K&E's Restructuring Group.

[2]  K&E calculated the blended rate for Non-Bankruptcy Matters by dividing the *total dollar amount* billed by K&E domestic timekeepers to the Non-Bankruptcy Matters during the Comparable Period by the *total number of hours* billed by K&E domestic timekeepers to the Non-Bankruptcy Matters during the Comparable Period.

[3]  K&E calculated the blended rate for timekeepers who billed to the Debtors by dividing the *total dollar amount billed* by such timekeepers during the Fee Period by the *total number of hours billed* by such timekeepers during the Fee Period.

**Exhibit F**

**Summary of Total Fees Incurred and Hours Billed During the Fee Period**

| Attorney Name | Position | Department | Date of Admission | Fees Billed In this Application | Hours Billed In this Application | Number of Rate Increases | Hourly Rate Billed In this Application | Fees Billed In this Application |
|---|---|---|---|---|---|---|---|---|
| Stephen C. Hackney, P.C. | Partner | Litigation - General | 1997 | $22,875.00 | 15.00 | N/A | $1,525.00 | $22,875.00 |
| Steven N. Serajeddini, P.C. | Partner | Restructuring | 2010 | $2,286.50 | 1.70 | N/A | $1,345.00 | $2,286.50 |
| David Wheat, P.C. | Partner | Taxation | 1988 | $1,372.50 | 0.90 | N/A | $1,525.00 | $1,372.50 |
| Cyril V. Jones | Partner | Corporate - M&A/Private Equity | 2011 | $1,434.00 | 1.20 | N/A | $1,195.00 | $1,434.00 |
| Arthur L. Lotz | Partner | Corporate - Debt Finance | 2014 | $2,837.50 | 2.50 | N/A | $1,135.00 | $2,837.50 |
| Spencer A. Winters | Partner | Restructuring | 2013 | $20,430.00 | 18.00 | N/A | $1,135.00 | $20,430.00 |
| Ibe I. Alozie | Associate | Corporate - General | 2019 | $122.00 | 0.20 | N/A | $610.00 | $122.00 |
| Christopher Atmar | Associate | Corporate - M&A/Private Equity | 2018 | $6,808.00 | 9.20 | N/A | $740.00 | $6,808.00 |
| Rachael Marie Bazinski | Associate | Restructuring | 2017 | $19,010.50 | 19.70 | N/A | $965.00 | $19,010.50 |
| Laura Bielinski | Associate | Corporate - Debt Finance | 2016 | $5,500.50 | 5.70 | N/A | $965.00 | $5,500.50 |
| Tess Elizabeth Dennis | Associate | Corporate - General | 2019 | $1,037.00 | 1.70 | N/A | $610.00 | $1,037.00 |
| Jaimie Fedell | Associate | Restructuring | 2014 | $18,526.50 | 17.90 | N/A | $1,035.00 | $18,526.50 |
| Alex Hevia | Associate | Restructuring | 2017 | $10,286.00 | 13.90 | N/A | $740.00 | $10,286.00 |
| Fred Anthony Hilow | Associate | Litigation - General | 2016 | $17,952.50 | 21.50 | N/A | $835.00 | $17,952.50 |
| Conor P. McNamara | Associate | Restructuring | 2018 | $8,954.00 | 12.10 | N/A | $740.00 | $8,954.00 |
| Zach Savrick | Associate | Corporate - M&A/Private Equity | 2017 | $5,693.50 | 5.90 | N/A | $965.00 | $5,693.50 |
| Ashley L. Surinak | Associate | Restructuring | 2019 | $4,575.00 | 7.50 | N/A | $610.00 | $4,575.00 |

| Joe Tobias | Associate | Taxation | 2015 | $1,657.50 | 1.50 | N/A | $1,105.00 | $1,657.50 |
| Michelle Helene West | Associate | Corporate - General | 2019 | $122.00 | 0.20 | N/A | $610.00 | $122.00 |
| Chambliss Williams | Associate | Restructuring | 2019 | $3,538.00 | 5.80 | N/A | $610.00 | $3,538.00 |

| Paraprofessional Name | Position | Department | Date of Admission | Fees Billed In this Application | Hours Billed In this Application | Number of Rate Increases | Hourly Rate Billed In this Application | Fees Billed In this Application |
|---|---|---|---|---|---|---|---|---|
| Anthony Abate | Paralegal | Restructuring | N/A | $3,298.00 | 9.70 | N/A | $340.00 | $3,298.00 |
| Hannah Kupsky | Paralegal | Restructuring | N/A | $170.00 | 0.50 | N/A | $340.00 | $170.00 |

**Exhibit G**

**Summary of Actual and Necessary Expenses for the Fee Period**

| Expense | Vendor (if any) | Unit Cost (if applicable) | Amount |
|---|---|---|---|
| Standard Copies or Prints | | | $20.16 |
| Binding | | | $1.40 |
| Tabs/Indexes/Dividers | | | $8.32 |
| Color Copies or Prints | | | $1,992.10 |
| 4" Binders | | | $26.00 |
| **Total** | | | **$2,047.98** |

## Exhibit H

### Summary of Fees and Expenses by Matter for the Fee Period

| Matter Number | Project Category Description | Hours | | Total Compensation | | Expenses | Total Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed | | |
| 2 | Chapter 11 Filing | 105 – 121 | 51.40 | $94,500 - $110,000 | $42,680.00 | - | $42,680.00 |
| 3 | Case Administration | 80 – 92 | 52.30 | $67,500 – $80,000 | $47,509.00 | - | $47,509.00 |
| 4 | Disclosure Statement, Plan, and Confirmation | 230 – 265 | 65.80 | $225,000 – $260,000 | $64,769.50 | - | $64,769.50 |
| 5 | Hearings | 55 – 63 | 2.80 | $63,000 – $70,000 | $3,528.00 | - | $3,528.00 |
| 7 | Expenses | - | - | - | - | $2,047.98 | $2,047.98 |
| **Totals** | | **470 – 541** | **172.30** | **$450,000 – $520,000** | **$158,486.50** | **$2,047.98** | **$160,534.48** |

**Exhibit I**

**Detailed Description of Services Provided**

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

April 21, 2020

Sheridan Holding Company I, LLC
1360 Post Oak Blvd.
Suite 2500
Houston, TX 77056

Attn: Cheryl S. Phillips

**Invoice Number: 1050025997**
**Client Matter:** 48518-2

---

**In the Matter of Chapter 11 Filing**

For legal services rendered through March 24, 2020
(see attached Description of Legal Services for detail)                $ 42,680.00

Total legal services rendered                                          $ 42,680.00

| Legal Services for the Period Ending March 24, 2020 | Invoice Number: | 1050025997 |
| Sheridan Holding Company I, LLC | Matter Number: | 48518-2 |
| Chapter 11 Filing | | |

## Summary of Hours Billed

| Name | Hours | Rate | Amount |
|------|------:|-----:|-------:|
| Anthony Abate | 9.00 | 340.00 | 3,060.00 |
| Rachael Marie Bazinski | 10.40 | 965.00 | 10,036.00 |
| Jaimie Fedell | 10.90 | 1,035.00 | 11,281.50 |
| Alex Hevia | 3.00 | 740.00 | 2,220.00 |
| Conor P. McNamara | 9.30 | 740.00 | 6,882.00 |
| Ashley L. Surinak | 1.50 | 610.00 | 915.00 |
| Spencer A. Winters | 7.30 | 1,135.00 | 8,285.50 |
| **TOTALS** | **51.40** | | **$ 42,680.00** |

Legal Services for the Period Ending March 24, 2020       Invoice Number:      1050025997
Sheridan Holding Company I, LLC                Matter Number:        48518-2
Chapter 11 Filing

### Description of Legal Services

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/23/20 | Anthony Abate | 9.00 | Review and revise first day pleadings and voluntary petitions (2.1); assist with preparation and filing of case documents (2.2); compile documents for filing (1.6); prepare materials for first day hearing (3.1). |
| 03/23/20 | Rachael Marie Bazinski | 10.40 | Correspond with working group re same and first day pleadings (1.0); review, revise pleadings and affidavits and prepare same for filing (2.6); review, revise orders (1.0); prepare for and participate in telephone conference with U.S. Trustee re first day pleadings (.5); correspond with K&E team re electronic filing declarations (.2); review, revise same (.3); review, revise budget and staffing memorandum (.2); correspond with K&E team and Company re same (.2); review, revise K&E retention application (.6); correspond with K&E team re same (.3); correspond with working group re settlement (.3); review, comment on declaration re same (.2); review, revise witness and exhibit list (.5); review, revise settlement pleadings and prepare same for filing (2.5). |
| 03/23/20 | Jaimie Fedell | 10.90 | Review, revise chapter 11 pleadings in preparation for filing (3.4); conferences with K&E, JW teams re same (1.5); revise petitions (.5); conferences with PC, K&E team re noticing affidavits (1.0); correspond with K&E team re conflicts clearance (.3); attend to chapter 11 filing issues (1.7); correspond and conference with K&E, Company, JW teams re hearing logistics (1.5); review, revise first day presentation (1.0). |
| 03/23/20 | Alex Hevia | 3.00 | Review and revise voluntary petitions (.8); conference and correspond with K&E team and J. Fedell re first day pleadings (.8); review and revise first day presentation (1.4). |

Legal Services for the Period Ending March 24, 2020     Invoice Number:     1050025997
Sheridan Holding Company I, LLC                         Matter Number:        48518-2
Chapter 11 Filing

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/23/20 | Conor P. McNamara | 9.30 | Review, revise first day pleadings re filing (2.5); review, revise cash collateral motion (1.5); review, revise scheduling motion (1.1); review, revise agenda (.4); review, revise plan supplement (1.4); correspond with J. Fedell, R. Bazinski re same (.3); telephone conferences with J. Fedell, R. Bazinski re voting declaration (.2); telephone conferences with Prime Clerk re same and noticing (.4); assist with filing re same (.2); review, revise talking points (1.3). |
| 03/23/20 | Ashley L. Surinak | 1.50 | Review and revise first day pleadings. |
| 03/23/20 | Spencer A. Winters | 7.30 | Prepare for and attend investment committee and special committee call re chapter 11 filing (.5); review and revise first day and confirmation papers (1.8); prepare for combined confirmation and first day hearing (2.3); correspond and conferences with multiple parties re same (2.7). |

**Total**                          **51.40**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

April 21, 2020

Sheridan Holding Company I, LLC
1360 Post Oak Blvd.
Suite 2500
Houston, TX 77056

Attn: Cheryl S. Phillips

**Invoice Number: 1050025998**
**Client Matter:** 48518-3

---

**In the Matter of Case Administration**

For legal services rendered through March 24, 2020
(see attached Description of Legal Services for detail)                   $ 47,509.00

Total legal services rendered                                            $ 47,509.00

Beijing   Boston   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   Palo Alto   Paris   San Francisco   Shanghai   Washington, D.C.

| Legal Services for the Period Ending March 24, 2020 | Invoice Number: | 1050025998 |
| Sheridan Holding Company I, LLC | Matter Number: | 48518-3 |
| Case Administration | | |

### Summary of Hours Billed

| Name | Hours | Rate | Amount |
|------|------:|-----:|-------:|
| Anthony Abate | 0.70 | 340.00 | 238.00 |
| Rachael Marie Bazinski | 6.40 | 965.00 | 6,176.00 |
| Jaimie Fedell | 5.70 | 1,035.00 | 5,899.50 |
| Stephen C. Hackney, P.C. | 5.80 | 1,525.00 | 8,845.00 |
| Alex Hevia | 10.90 | 740.00 | 8,066.00 |
| Hannah Kupsky | 0.50 | 340.00 | 170.00 |
| Conor P. McNamara | 2.80 | 740.00 | 2,072.00 |
| Steven N. Serajeddini, P.C. | 1.00 | 1,345.00 | 1,345.00 |
| Ashley L. Surinak | 6.00 | 610.00 | 3,660.00 |
| Michelle Helene West | 0.20 | 610.00 | 122.00 |
| Chambliss Williams | 5.80 | 610.00 | 3,538.00 |
| Spencer A. Winters | 6.50 | 1,135.00 | 7,377.50 |
| **TOTALS** | **52.30** | | **$ 47,509.00** |

| Legal Services for the Period Ending March 24, 2020 | Invoice Number: | 1050025998 |
| Sheridan Holding Company I, LLC | Matter Number: | 48518-3 |
| Case Administration | | |

### Description of Legal Services

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/23/20 | Alex Hevia | 7.20 | Review and analyze first day hearing and confirmation transcripts re talking points (3.7); compile issues list of same (1.8); correspond and conference with A. Surinak, C. Williams, and C. McNamara re same (.6); correspond with R. Bazinski re K&E retention application (.4); correspond with C. Williams and A. Surinak re hearing talking points (.7). |
| 03/23/20 | Hannah Kupsky | 0.50 | Prepare pro hac motions. |
| 03/23/20 | Steven N. Serajeddini, P.C. | 0.70 | Telephone conferences with K&E team re restructuring issues. |
| 03/23/20 | Ashley L. Surinak | 2.70 | Draft and revise talking points for cash collateral motion (.5); review transcripts re first day hearing (.5); draft summary re same (.5); review, revise talking points (1.2). |
| 03/23/20 | Michelle Helene West | 0.20 | Prepare for and attend telephone conference with working group re status. |
| 03/23/20 | Chambliss Williams | 5.50 | Draft and revise talking points for first day hearing (4.0); review transcripts re same (1.5). |
| 03/24/20 | Anthony Abate | 0.70 | Review, compile filed pleadings (.2); prepare materials for first day hearing (.5). |
| 03/24/20 | Rachael Marie Bazinski | 6.40 | Review, analyze data and correspondence re equity registration forms (.5); telephone conferences and correspond with working group and Prime Clerk re same (1.3); review, revise notice of settlement hearing (.3); correspond with DPW/V&E re cash collateral order (.2); coordinate filing of same and correspond with Jackson Walker re same (.7); correspond with K&E team re confirmation evidence and settlement pleadings (.5); telephone conference with K&E team re settlement (.5); review and analyze pleadings re same (.5); draft and revise talking points re same (.7); review, revise hearing presentation (.2); telephone conferences and correspond with working group re same and hearing (.7); review, comment on CAFA notice (.3). |

Legal Services for the Period Ending March 24, 2020
Sheridan Holding Company I, LLC
Case Administration

Invoice Number:    1050025998
Matter Number:    48518-3

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/24/20 | Jaimie Fedell | 5.70 | Prepare for first day and confirmation hearing (2.9); draft talking points (1.5); coordinate logistics of telephone hearing (.8); conferences with K&E team re settlement motion (.5). |
| 03/24/20 | Stephen C. Hackney, P.C. | 5.80 | Prepare for first day and confirmation hearing. |
| 03/24/20 | Alex Hevia | 3.70 | Review and revise Evercore retention application (1.1); correspond with J. Fedell re same (.3); draft and revise talking points (1.2); correspond with C. McNamara re same (.3); correspond with A. Surinak re Katten and K&E retention applications (.3); review and analyze same (.5). |
| 03/24/20 | Conor P. McNamara | 2.80 | Review, revise talking points (1.8); correspond with J. Fedell, R. Bazinski re same (.5); review, revise Katten retention application (.5). |
| 03/24/20 | Steven N. Serajeddini, P.C. | 0.30 | Prepare for first day and confirmation hearing. |
| 03/24/20 | Ashley L. Surinak | 3.30 | Review and revise Katten retention application (1.3); telephone conference with A. Hevia re same (.3); revise K&E retention application (1.7). |
| 03/24/20 | Chambliss Williams | 0.30 | Review, revise draft notes re hearing. |
| 03/24/20 | Spencer A. Winters | 6.50 | Review and revise hearing talking points (2.3); prepare for hearing (2.5); correspond and conferences with multiple parties re same (1.7). |
| **Total** | | **52.30** | |

4

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

April 21, 2020

Sheridan Holding Company I, LLC
1360 Post Oak Blvd.
Suite 2500
Houston, TX 77056

Attn: Cheryl S. Phillips

**Invoice Number: 1050025999**
**Client Matter:** 48518-4

---

**In the Matter of Disclosure Statement, Plan, Confirmation**

For legal services rendered through March 24, 2020
(see attached Description of Legal Services for detail)                    $ 64,769.50

Total legal services rendered                                             $ 64,769.50

Legal Services for the Period Ending March 24, 2020      Invoice Number:      1050025999
Sheridan Holding Company I, LLC      Matter Number:      48518-4
Disclosure Statement, Plan, Confirmation

### Summary of Hours Billed

| Name | Hours | Rate | Amount |
|------|------:|-----:|-------:|
| Ibe I. Alozie | 0.20 | 610.00 | 122.00 |
| Christopher Atmar | 9.20 | 740.00 | 6,808.00 |
| Rachael Marie Bazinski | 2.90 | 965.00 | 2,798.50 |
| Laura Bielinski | 5.70 | 965.00 | 5,500.50 |
| Tess Elizabeth Dennis | 1.70 | 610.00 | 1,037.00 |
| Jaimie Fedell | 0.60 | 1,035.00 | 621.00 |
| Stephen C. Hackney, P.C. | 8.50 | 1,525.00 | 12,962.50 |
| Fred Anthony Hilow | 21.50 | 835.00 | 17,952.50 |
| Cyril V. Jones | 1.20 | 1,195.00 | 1,434.00 |
| Arthur L. Lotz | 2.50 | 1,135.00 | 2,837.50 |
| Zach Savrick | 5.90 | 965.00 | 5,693.50 |
| Joe Tobias | 1.50 | 1,105.00 | 1,657.50 |
| David Wheat, P.C. | 0.90 | 1,525.00 | 1,372.50 |
| Spencer A. Winters | 3.50 | 1,135.00 | 3,972.50 |
| **TOTALS** | **65.80** | | **$ 64,769.50** |

Legal Services for the Period Ending March 24, 2020  Invoice Number: 1050025999
Sheridan Holding Company I, LLC  Matter Number: 48518-4
Disclosure Statement, Plan, Confirmation

### Description of Legal Services

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/23/20 | Ibe I. Alozie | 0.20 | Telephone conference with working group re Sheridan I closing status. |
| 03/23/20 | Christopher Atmar | 4.70 | Review and revise closing documents (4.0); prepare for and participate in telephone conference re closing checklist (.7). |
| 03/23/20 | Rachael Marie Bazinski | 2.90 | Review, revise confirmation brief and order (1.9); prepare same for filing (.5); review, analyze precedent re same (.5). |
| 03/23/20 | Laura Bielinski | 4.00 | Prepare for and attend closing checklist call (.5); review revised credit agreement exhibits, schedules, opinion and perfection certificate (3.1); conference and correspond re same (.4). |
| 03/23/20 | Tess Elizabeth Dennis | 1.50 | Review and organize exhibits, schedules and perfection certificate (.8); research and analyze organizational documents for provisions allowing incurring debt (.7). |
| 03/23/20 | Stephen C. Hackney, P.C. | 8.50 | Draft and revise directs and proffers (3.5); review, analyze pleadings re same (2.5); attend witness conferences with L. Stewart and C. Flood re hearing (2.5). |
| 03/23/20 | Fred Anthony Hilow | 12.50 | Draft, review, revise proffers for each of first day declarants (4.2); correspond with K&E, Prime Clerk re same (1.3); prepare for and attend telephone conference with C. Flood re hearing preparation (.6); prepare for and attend telephone conference with C. Johnson re hearing preparation (1.5); draft direct examination outline re first day and confirmation hearing (3.2); prepare argument for hearing re same (1.7). |
| 03/23/20 | Cyril V. Jones | 0.20 | Prepare for and attend checklist call and follow up discussions with K&E team re same. |
| 03/23/20 | Arthur L. Lotz | 1.50 | Review and revise exit facility agreement and collateral documents (.4); review and revise legal opinion and mortgages (.5); review and reply to correspondence re same (.2); telephone conferences with lenders' counsel re same (.2); telephone conferences with working group (.2). |

Legal Services for the Period Ending March 24, 2020     Invoice Number:     1050025999
Sheridan Holding Company I, LLC     Matter Number:     48518-4
Disclosure Statement, Plan, Confirmation

| Date | Name | Hours | Description |
|---|---|---|---|
| 03/23/20 | Zach Savrick | 3.20 | Review and revise step plan docs (.5); prepare closing documentation (.8); review escrow agreement (.3); correspond with K&E team re warrant agreement and revise same (.5); attend closing checklist call (.6); correspond with DPW, Sheridan and K&E teams re same (.5). |
| 03/23/20 | Joe Tobias | 0.50 | Review restructuring steps documents. |
| 03/23/20 | David Wheat, P.C. | 0.20 | Review and comment on revised transaction docs from DPW. |
| 03/23/20 | Spencer A. Winters | 3.50 | Draft talking points re confirmation hearing (2.5); prepare for and attend witness preparation telephone conferences (1.0). |
| 03/24/20 | Christopher Atmar | 4.50 | Review and revise closing documents (3.6); prepare signature pages (.9). |
| 03/24/20 | Laura Bielinski | 1.70 | Attend to pre-closing debt matters (1.0); correspond re Kirkland opinion, mortgage releases (.7). |
| 03/24/20 | Tess Elizabeth Dennis | 0.20 | Review and revise Texas mortgage opinion (.1); correspond with team (.1). |
| 03/24/20 | Jaimie Fedell | 0.60 | Conferences with K&E, DPW teams re closing issues. |
| 03/24/20 | Fred Anthony Hilow | 9.00 | Draft, review, revise proffers for each of first day declarants (1.3); correspond with K&E team, Prime Clerk re same (1.1); prepare for and attend telephone conference with C. Johnson re hearing preparation (1.7); draft direct examination outline re first day and confirmation hearing (2.4); prepare argument for hearing re same (2.5). |
| 03/24/20 | Cyril V. Jones | 1.00 | Review and revise closing agreements. |
| 03/24/20 | Arthur L. Lotz | 1.00 | Review and revise exit facility agreement and collateral documents (.3); review and revise legal opinion and mortgages (.2); review and reply to correspondence re same (.2); telephone conferences with lenders' counsel re same (.1); telephone conferences with working group re same (.2). |
| 03/24/20 | Zach Savrick | 2.70 | Prepare for closing and related communications. |
| 03/24/20 | Joe Tobias | 1.00 | Review, analyze steps documents (.6); review emergence slides (.4). |

Legal Services for the Period Ending March 24, 2020      Invoice Number:     1050025999
Sheridan Holding Company I, LLC      Matter Number:     48518-4
Disclosure Statement, Plan, Confirmation

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/24/20 | David Wheat, P.C. | 0.70 | Review and reply to correspondence from DPW re steps docs (.3); review and reply to comments from J. Tobias re DPW steps slides (.4). |
| **Total** | | **65.80** | |

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

April 21, 2020

Sheridan Holding Company I, LLC
1360 Post Oak Blvd.
Suite 2500
Houston, TX 77056

Attn: Cheryl S. Phillips

**Invoice Number: 1050026000**
**Client Matter:** 48518-5

---

**In the Matter of Hearings**

For legal services rendered through March 24, 2020
(see attached Description of Legal Services for detail)                         $ 3,528.00

Total legal services rendered                                                  $ 3,528.00

Legal Services for the Period Ending March 24, 2020          Invoice Number:          1050026000
Sheridan Holding Company I, LLC                              Matter Number:              48518-5
Hearings

### Summary of Hours Billed

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Jaimie Fedell | 0.70 | 1,035.00 | 724.50 |
| Stephen C. Hackney, P.C. | 0.70 | 1,525.00 | 1,067.50 |
| Steven N. Serajeddini, P.C. | 0.70 | 1,345.00 | 941.50 |
| Spencer A. Winters | 0.70 | 1,135.00 | 794.50 |
| **TOTALS** | **2.80** | | **$ 3,528.00** |

Legal Services for the Period Ending March 24, 2020      Invoice Number:      1050026000
Sheridan Holding Company I, LLC      Matter Number:      48518-5
Hearings

### Description of Legal Services

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 03/24/20 | Jaimie Fedell | 0.70 | Attend first day and confirmation hearing. |
| 03/24/20 | Stephen C. Hackney, P.C. | 0.70 | Attend first day and confirmation hearing. |
| 03/24/20 | Steven N. Serajeddini, P.C. | 0.70 | Attend first day and confirmation hearing. |
| 03/24/20 | Spencer A. Winters | 0.70 | Attend combined confirmation and first day hearing. |

**Total**      **2.80**

**Exhibit J**

**Detailed Description of Expenses and Disbursements**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

FEIN 36-1326630

April 21, 2020

Sheridan Holding Company I, LLC
1360 Post Oak Blvd.
Suite 2500
Houston, TX 77056

Attn: Cheryl S. Phillips

**Invoice Number: 1050026001**
**Client Matter:** 48518-7

---

**In the Matter of Expenses**

For expenses incurred through March 24, 2020
(see attached Description of Expenses for detail)                      $ 2,047.98

Total expenses incurred                                                  $ 2,047.98

Legal Services for the Period Ending March 24, 2020     Invoice Number:     1050026001
Sheridan Holding Company I, LLC     Matter Number:     48518-7
Expenses

### Description of Expenses

| Description | Amount |
|---|---|
| Standard Copies or Prints | 20.16 |
| Binding | 1.40 |
| Tabs/Indexes/Dividers | 8.32 |
| Color Copies or Prints | 1,992.10 |
| 4" Binders | 26.00 |
| **Total** | **$ 2,047.98** |

Legal Services for the Period Ending March 24, 2020        Invoice Number:     1050026001
Sheridan Holding Company I, LLC                Matter Number:        48518-7
Expenses

## Description of Expenses

### Standard Copies or Prints

| Date | Description | Amount |
|------|-------------|--------|
| 03/24/20 | Standard Copies or Prints | 16.16 |
| 03/24/20 | Standard Copies or Prints | 4.00 |
| | **Total** | **20.16** |

Legal Services for the Period Ending March 24, 2020     Invoice Number:     1050026001
Sheridan Holding Company I, LLC     Matter Number:     48518-7
Expenses

**Binding**

| Date | Description | Amount |
|------|-------------|--------|
| 03/24/20 | Binding | 1.40 |
| | **Total** | **1.40** |

Legal Services for the Period Ending March 24, 2020     Invoice Number:     1050026001
Sheridan Holding Company I, LLC     Matter Number:     48518-7
Expenses

**Tabs/Indexes/Dividers**

| Date | Description | Amount |
| --- | --- | --- |
| 03/24/20 | Tabs/Indexes/Dividers | 8.32 |
| | **Total** | **8.32** |

Legal Services for the Period Ending March 24, 2020      Invoice Number:      1050026001
Sheridan Holding Company I, LLC                          Matter Number:          48518-7
Expenses

**Color Copies or Prints**

| Date | Description | Amount |
| --- | --- | --- |
| 03/24/20 | Color Copies or Prints | 1,956.90 |
| 03/24/20 | Color Copies or Prints | 35.20 |
| | **Total** | **1,992.10** |

Legal Services for the Period Ending March 24, 2020      Invoice Number:      1050026001
Sheridan Holding Company I, LLC                           Matter Number:          48518-7
Expenses

**4" Binders**

| Date | Description | Amount |
|------|-------------|--------|
| 03/24/20 | 4" Binders | 26.00 |
| | **Total** | **26.00** |

**TOTAL EXPENSES**                                                **$ 2,047.98**