## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § § | Case No. 20-31885 (DRJ) |
| Reorganized Debtors. | § § § § § | (Jointly Administered)<br><br>Objection Deadline: May 12, 2020<br>@ 4:00 P.M. (C.T.) |

**COVER SHEETS TO FIRST AND FINAL FEE APPLICATION OF EVERCORE GROUP L.L.C., PROPOSED INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE REORGANIZED DEBTORS FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR THE PERIOD FROM MARCH 23, 2020 THROUGH AND INCLUDING MARCH 24, 2020**

| **Name of Applicant:** | **Evercore Group L.L.C.** | |
|---|---|---|
| Applicant's professional role in case | Investment Banker and Financial Advisor to the Debtors and Debtors in Possession | |
| Effective date of order approving professional's retention | The Reorganized Debtors have requested that the Bankruptcy Court approve Evercore's retention *nunc pro tunc* to the Petition Date | |
| | **Beginning of Period** | **End of Period** |
| Time period covered by this application | 3/23/2020 | 3/24/2020 |
| Time covered by any prior applications | N/A | N/A |

---

[1]   The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners 1-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

| Name of Applicant: | Evercore Group L.L.C. |
|---|---|
| Total fees applied for in this application and in all prior applications (including any retainer amounts to be applied) | $2,251,150[2] |
| Total fees applied for in this application (including any retainer amounts to be applied) | $2,251,150[2] |
| Total professional fees requested in this application | $2,251,150[2] |
| Total actual professional hours covered by this application | 47.0 |
| Average hourly rate for professionals: | N/A |
| Reimbursable expenses sought in this application: | $6,261[2] |
| Total to be paid to priority unsecured creditors under the Plan | $0[3] |
| Percentage dividend to priority unsecured creditors under the Plan | 100% |
| Total to be paid to general unsecured creditors under the Plan | $6,755,596[4] |
| Percentage dividend to general unsecured creditors under the Plan | 100% |
| Date of Confirmation Hearing: | March 24, 2020 |
| Indicate whether plan has been confirmed: | Yes [Docket No. 76] |

---

[2]   Evercore will apply $14,545.68, the remaining balance of the $15,000 prepetition expense reserve previously paid to Evercore by the Debtors, towards reimbursement of these fees and expenses.

[3]   Each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Claim. *See* Plan, Article III.B.

[4]   Each Holder of an Allowed General Unsecured Claim shall receive either: (i) Reinstatement of such Claim pursuant to section 1124 of the Bankruptcy Code; or (ii) Cash in an amount equal to such Claim. *See* Plan, Article III.B.

## Professionals

Evercore professionals rendering services during the Fee Period were:

**By Professional**

| Professional | Position | Hours |
|---|---|---|
| Jeremy Matican | Managing Director | 12.5 |
| Curtis Flood | Managing Director | 13.0 |
| Evan Levine | Vice President | 6.5 |
| Zichong Peng | Analyst | 5.0 |
| Nathaniel Kostiw-Gill | Analyst | 10.0 |
| **Total** | | **47.0** |

## Hours by Matter

Hours expended by these professionals by matter during the Fee Period were:

**By Code**

| Matter | Hours |
|---|---|
| 1. General Case Administration | 12.5 |
| 2. Due Diligence | - |
| 3. Business Plan & Strategy | - |
| 4. Financing, Capital Structure Review & Analysis | - |
| 5. Plan of Reorganization | - |
| 6. Board Communication | 7.0 |
| 7. Creditor / Vendor Communication | - |
| 8. Expert Testimony | 22.0 |
| 9. Travel | 0.5 |
| 10. Evercore Retention | 5.0 |
| **Total** | **47.0** |

## Expense Summary

Summary of expenses by category:

| Expense Category | Amount |
|---|---|
| Legal Fees | $6,261 |
| **Total Expenses** | **$6,261** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[3] | § | Case No. 20-31885 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

**FIRST AND FINAL FEE APPLICATION OF EVERCORE GROUP L.L.C., PROPOSED**
**INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE REORGANIZED**
**DEBTORS FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE**
**EXPENSE CLAIM FOR COMPENSATION FOR THE PERIOD FROM**
**MARCH 23, 2020 THROUGH AND INCLUDING MARCH 24, 2020**

Evercore Group L.L.C. ("Evercore"), proposed investment banker and financial advisor

to the above-captioned reorganized debtors, hereby submits its first and final fee application

(the "Application") for the allowance and payment of an administrative expense claim for

compensation for professional services provided to those certain debtors that filed for chapter 11

on March 23, 2020 (collectively, the "Debtors") in the amount of $2,257,411 during the period

from March 23, 2020 through March 24, 2020 (the "Fee Period").  In support of the Application,

Evercore respectfully states as follows:

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of Texas has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding

---

[3]     The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

within the meaning of 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The bases and standards governing the relief requested herein are sections 327(a), 328(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), the *General Order in the Matter of Procedures for Complex Chapter 11 Cases* (the "Complex Case Procedures") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "UST Guidelines" and, collectively with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures, the "Guidelines").

## Background

3.       On March 23, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with a prepackaged Plan of Reorganization.  In connection therewith, on the Petition Date, the Debtors filed their *Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented, the "Plan") and a related disclosure statement (the "Disclosure Statement") [Docket Nos. 11, 12].

4.       At a hearing on March 24, 2020, the Bankruptcy Court approved the Disclosure Statement, confirmed the Plan, and entered its *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 76].

5.       On April 1, 2020, the Reorganized Debtors filed the proposed *Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker to the Debtors and Debtors in Possession* (the "Proposed Retention Order," a copy of which is attached hereto as **Exhibit A**).

6.       On March 30, 2020, the Effective Date of the Plan occurred and the Reorganized Debtors filed their *Notice of (I) Entry of Order Approving the Disclosure Statement for, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan and (II) Occurrence of Effective Date* [Docket No. 116].

<u>**Compliance with the Guidelines**</u>

7.       The Application was prepared in accordance with the applicable provisions of the Guidelines.  Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto:

A.       **Exhibit A** contains Evercore's Proposed Retention Order;

B.       **Exhibit B** contains time records for the Fee Period detailing the name of each professional for whose work compensation is sought and the aggregate time expended by each professional;

C.       **Exhibit C** contains the Certification of Jeremy Matican regarding Evercore's compliance with the Complex Case Procedures;

D.       **Exhibit D** contains a summary and detailed description of Evercore's fees and reimbursable expenses, including legal fees, for the Fee Period; and

E.       **Exhibit E** contains a proposed order.

8.     To the extent that this Application is not in compliance with the Guidelines, Evercore respectfully submits that such noncompliance is immaterial and requests a waiver of the applicable requirements.

9.     No understanding exists between Evercore and any other person for the sharing of compensation sought by Evercore, other than as permitted by Section 504 of the Bankruptcy Code.

## Summary of Professional Services

10.     To provide a meaningful summary of services rendered on behalf of the Debtors and their estates, Evercore has established, in accordance with the Guidelines and its internal time keeping procedures, the following matter numbers in connection with these chapter 11 cases:

| Matter Number | Description |
|---|---|
| 1 | General Case Administration |
| 2 | Due Diligence |
| 3 | Business Plan and Strategy |
| 4 | Financing, Capital Structure Review and Analysis |
| 5 | Plan of Reorganization |
| 6 | Board Communication |
| 7 | Creditor / Vendor Communication |
| 8 | Expert Testimony |
| 9 | Travel |
| 10 | Evercore Retention |

11.     The following is a summary, by matter, of the most significant professional services rendered by Evercore. The detailed descriptions below and the time records attached as **Exhibit B** demonstrate that Evercore was heavily involved in performing services for the Debtors on a daily basis to meet the Reorganized Debtors' needs in these chapter 11 cases. These hours however, only include time spent by Evercore professionals working on these chapter 11

cases on a postpetition basis and do not include the significant work done prepetition by Evercore since September 2018 to prepare the Reorganized Debtors for a chapter 11 filing, including negotiating, structuring and implementing a prepackaged Plan of Reorganization.

12.     The subsequent prepetition and postpetition work and negotiations with the various parties involved in this chapter 11 case contributed to the Plan ultimately being confirmed by the Court.

**I.      General Case Administration (Matter #1)**

Total time postpetition: 12.5 hours

13.     This category includes time spent by Evercore professionals on telephone calls and in meetings with the Debtors, the Debtors' attorneys and other professionals and parties-in-interest regarding the status of the case.  This category also includes the preparation and review of court documents filed by the Debtors and other parties-in-interest except as such relate to the Retention Application.

**II.     Due Diligence (Matter #2)**

14.     This category includes time spent by Evercore on becoming more familiar with the business of the Debtors through management meetings, document review, site visits and analysis. In addition, this category includes time spent by Evercore in developing a comprehensive understanding of the industry in which the Debtors compete. This category also includes time spent with various outsider constituents, including, but not limited to, creditor committees, current or potential lenders and investors, providing due diligence information and assisting such constituents in becoming more familiar with the Debtors' business.

### III.    Business Plan and Strategy (Matter #3)

15.    This category includes time spent by Evercore: (a) conducting financial analysis on the Debtors' business plan, including reviewing and analyzing key operational and financial assumptions in the business plan, (b) assisting in the development of alternative business cases for the Debtors, (c) assisting the Debtors' development of a course of action through the bankruptcy process, (d) analyzing the valuation and debt capacity of the business as well as analyzing creditor recoveries in various scenarios, and (e) reviewing other relevant financial analyses.

### IV.    Financing, Capital Structure Review and Analysis (Matter #4)

16.    This category includes time spent by Evercore professionals performing and reviewing analyses with respect to creditor recoveries, liquidity and collateral, among other things, as well as reviewing and negotiating terms of the Debtors' exit credit agreement. Evercore coordinated with the Debtors' management team to create and maintain extensive financial models for the analyses mentioned above. These models were used to analyze impacts of liquidity, leverage, interest coverage and other financial metrics to determine appropriate covenants.

### V.    Plan of Reorganization (Matter #5)

17.    This category includes time spent by Evercore professionals preparing, reviewing and negotiating documents related to the restructuring transaction, such as drafts of the Plan of Reorganization, Disclosure Statement and Restructuring Support Agreement. In addition, this category includes time spent in discussions with the various transaction parties necessary to consummate such transactions.  As a part of those discussions, Evercore also spent time

analyzing and summarizing comparable situations to inform discussions with potential transaction counterparties.

### VI.      Board Communication (Matter #6)

Total time postpetition: 7.0 hours

18.      This category includes time spent by Evercore professionals preparing presentation materials for the Debtors' board meetings, attending board meetings in person and participating in board meetings via teleconference. Evercore participated in frequent conference calls and meetings with the board to discuss strategic and other issues relating to the chapter 11 process. Postpetition, Evercore participated in board meetings and responded to board member information requests relating to the bankruptcy.

### VII.     Creditor / Vendor Communication (Matter #7)

19.      This category includes time spent by Evercore professionals negotiating and discussing numerous issues with vendors, lenders and their respective legal and financial advisors.  This category also includes time spent drafting and developing presentations to the lenders and vendors and responding to creditor and vendor due diligence requests.

### VIII.    Expert Testimony (Matter #8)

Total time post-petition: 22.0 hours

20.      This category includes time spent by Evercore professionals preparing for expert witness testimony and litigation support.

### IX.      Travel (Matter #9)

Total time post-petition: 0.5 hours

21.      This category includes time spent by Evercore professionals traveling to and from the Debtors' offices or other destinations on the Debtors' behalf.

10

X.     **Evercore Retention (Matter #10)**

Total time post-petition: 5.0 hours

22.     This category includes time spent by Evercore professionals preparing and reviewing the Retention Application and this Application.

23.     Evercore submits that the foregoing professional services and advice it rendered to the Debtors in connection with the chapter 11 cases prior to and during the Fee Period were reasonable, necessary and beneficial to the Debtors, their creditors and their estates.  All services for which compensation is requested by Evercore were performed for, at the request of or on behalf of the Debtors or their counsel.  These services were performed at a high level and were often subject to significant time constraints.   These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases.

24.     Typical of investment bankers of its kind, Evercore is not compensated by the hour, but through a structure of fixed fees and related compensation, as set forth in the Proposed Retention Order.   Accordingly, certain information appropriate to consideration of the fee requests of hourly-rate compensated professionals, such as blended rates or maturation, does not exist for Evercore.

**Evercore's Requested Compensation Should be Allowed**

25.     Section 330 of the Bankruptcy Code provides that, subject to section 328 of the Bankruptcy Code, a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered...and reimbursement for actual, necessary expenses."

26.     The Proposed Retention Order would approve Evercore's compensation pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Proposed Retention Order.

Accordingly, compensation is sought subject to the standard of review set forth in section 328 of the Bankruptcy Code, and not the standard of review set forth in section 330 of the Bankruptcy Code, but subject to the terms of the Proposed Retention Order.

27.    The services summarized by this Application and rendered by Evercore to the Debtors prior to and during the Fee Period were substantial, highly professional and instrumental to the Debtors in pursuing their restructuring efforts and maximizing value of the Debtors' estates.  Evercore respectfully submits that the compensation requested by this Application is reasonable in light of the nature and value of such services.

## Reservation of Rights and Notice

28.    Although every effort has been made to include all fees incurred in the Fee Period, some fees might not be included in this Application due to delays caused by accounting and processing during the Fee Period.  Evercore reserves the right to make further application to the Court for allowance of such fees not included herein.

29.    No trustee or examiner has been appointed in these chapter 11 cases.  Notice of this Application will be provided to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent and the collateral agent under the Debtors' revolving credit facilities and senior secured term loan facilities and counsel thereto; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## **No Prior Request**

30.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, Evercore respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit E** (a) awarding Evercore final compensation for professional services provided during the Fee Period in the amount of $2,257,411.00; (b) authorizing and directing the Debtors to remit payment to Evercore, to the extent not already paid, for such fees; and (c) granting such other relief as is appropriate under the circumstances.

Dated: April 21, 2020

/s/ *Jeremy Matican*
Jeremy Matican
Managing Director
**Evercore Group L.L.C.**
55 East 52nd Street
35th Floor
New York, NY 10055

*Proposed Investment Banker and Financial Advisor to the Debtors*

## Exhibit A

**Proposed Retention Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § Case No. 20-31884 (DRJ) |
| | § |
| Reorganized Debtors. | § (Jointly Administered) |
| | § |
| | § **Re: Docket No. 127** |

## ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF
## EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND
## FINANCIAL ADVISOR TO THE DEBTORS AND THE REORGANIZED DEBTORS

Upon the application (the "Application")[2] of the above-captioned reorganized debtors (collectively, the "Reorganized Debtors," and before the Effective Date (as defined in the Application), the "Debtors") for entry of an order (this "Order") (i) authorizing the employment and retention of Evercore as investment banker to the Debtors and the Reorganized Debtors in accordance with the terms and conditions set forth in the Engagement Letter, attached hereto **Exhibit 1**, (ii) approving the terms of Evercore's employment and retention, including the Fee and Expense Structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Letter, (iii) approving the modification of compliance with requirements regarding time entry detail, and (iv) granting such other and further relief as is just and proper, all as more fully set forth in the Application; and upon consideration of the Matican Declaration; and this Court having jurisdiction over this matter pursuant to

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Reorganized Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the terms and conditions of Evercore's employment, including but not limited to the Fee and Expense Structure set forth in the Engagement Letter and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and this Court having found that Evercore is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and this Court having found that the relief requested in the Application is necessary and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Debtors and the Reorganized Debtors are authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1 to employ and retain Evercore as their investment banker in accordance with the terms and conditions set forth in the Engagement Letter as of the Petition

Date, and to pay fees and reimburse expenses to Evercore on the terms and at the times specified in the Engagement Letter, as modified by this Order.

2.     The provisions set forth in the Engagement Letter are approved in all respects except as limited or modified herein.

3.     All of Evercore's compensation as set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and Evercore shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures (except as otherwise set forth herein), this Order and any other applicable orders of this Court.

4.     None of the fees payable to Evercore shall constitute a "bonus" or fee enhancement under applicable law.

5.     Notwithstanding any provision to the contrary in this Order, the Application, or the Engagement Letter, the U.S. Trustee retains all rights to object to the reasonableness of Evercore's request(s) for monthly, interim, and final applications for compensation (including without limitation the Monthly Fee and the Debt Restructuring Fee,) and reimbursement of expenses based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6.     Evercore shall include in its fee applications, among other things, time records setting forth narrative summaries of services rendered in half-hour increments and identifying each professional rendering services, the categories and descriptions of services rendered by each professional, the amount of time spent on each date by each such individual in rendering

services, and the total amount of compensation requested by Evercore on behalf of the Debtors, but Evercore shall be excused from keeping time in tenth-hour increments.

7.      Evercore shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of this Court; *provided*, *however*, that the fee applications filed by Evercore shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

8.      The Debtors and the Reorganized Debtors, as applicable, shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Letter and will indemnify and hold harmless Evercore and the other Indemnified Persons, pursuant to the Engagement Letter, subject to the following modifications during the pendency of these chapter 11 cases:

a.      Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, Evercore for any claims arising from, related to, or in connection with the services to be provided by Evercore as specified in the Application, but not for any claim arising from, related to, or in connection with Evercore's post-petition performance of any other services other than those in connection with the engagement, unless such post-petition services and indemnification therefor are approved by this Court; and

b.      The Debtors shall have no obligation to indemnify Evercore for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Evercore's bad faith, gross negligence, willful misconduct, breach of fiduciary duty (if any) or self-dealing or (ii) settled prior to a judicial determination as to Evercore's bad faith, gross negligence, willful misconduct, breach of fiduciary duty (if any) or self-dealing but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for

4

which Evercore is not entitled to receive indemnity under the terms of the Application; and

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Evercore believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Evercore must file an application in this Court, and the Debtors may not pay any such amounts to Evercore before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Evercore for indemnification, and not as a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to Evercore.

9.    Notwithstanding anything to the contrary in the Application, Engagement Letter, or Matican Declaration, to the extent the Reorganized Debtors wish to expand the scope of Evercore's services beyond those services set forth in the Application, Engagement Letter, or Matican Declaration, the Reorganized Debtors shall be required to seek further approval from this Court.

10.    Notwithstanding anything to the contrary in the Application, Engagement Letter, or Matican Declaration, Evercore shall (i) to the extent that Evercore uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, pass-through the cost of such Contractors to the Debtors at the same rate that Evercore pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Evercore, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

11.    In the event that, during the pendency of these cases, Evercore seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records

5

from such attorneys, appropriately redacted to preserve applicable privileges, shall be included in Evercore's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; *provided*, *however*, that Evercore shall not seek reimbursement from the Debtors' estates for any attorney's fees incurred in defending against any objections to any of Evercore's fee applications filed in these bankruptcy cases.

12.     Evercore's Monthly Fee shall be prorated for any month in which Evercore is not employed for each day of the month.

13.     Evercore shall use its best efforts, and will coordinate with the Reorganized Debtors and its other retained professionals, not to duplicate any of the services provided to the Reorganized Debtors by any of its other retained professionals.

14.     The Reorganized Debtors and Evercore are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

15.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

16.     The relief granted herein, including, without limitation, approval pursuant to section 328(a) of the Bankruptcy Code of the Fee and Expense Structure and the Indemnification Obligations, shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

17.     To the extent that this Order is inconsistent with the Application, the Engagement Letter, or the Matican Declaration, the terms of this Order shall govern.

18.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Bankruptcy Local Rules are satisfied by such notice.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2020
Houston, Texas                                      _____
                                                    DAVID R. JONES
                                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to Order</u>**

**Engagement Letter**

October 16, 2018

Sheridan Investment Partners I, LLC
Sheridan Production Partners I-A, L.P.
Sheridan Production Partners I-M, L.P.
Attention: Shannon E. Young III, Vice President and Chief Financial Officer
9 Greenway Plaza, Suite 1300
Houston, Texas 77046

Gentlemen:

This engagement letter (this "Agreement") is to formalize the arrangement between Evercore Group L.L.C. ("Evercore") and each of Sheridan Investment Partners I, LLC, Sheridan Production Partners I-A, L.P., and Sheridan Production Partners I-M, L.P. (collectively, the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein. This letter shall be effective as of September 1, 2018 (the "Effective Date").

**Assignment Scope:**

The Company hereby retains Evercore as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with a Debt Restructuring transaction (defined below) on the terms and conditions set forth herein.

As used in this Agreement, the term "Debt Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a Debt Restructuring pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a Debt Restructuring of the Company (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")), including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification, including extension of maturity, or other amendment to the terms of, or material reduction in outstanding principal amount of, the Company's outstanding indebtedness (other than affiliate indebtedness), including pursuant to a repurchase, tender or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations, including such a Debt Restructuring that is financed in whole or in part with (i) any recall of prior Fund I limited partner distributions or private issuance, sale, or placement of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company and/or Sheridan Production Partners I-B, L.P. I (collectively, "Fund I") with one or more lenders and/or investors or security holders, including, but not limited to, existing partners, creditors, and/or other stakeholders of Fund I, or (ii) any sale of Fund I assets. For the avoidance of doubt, (i) an amendment which is limited to the modification of financial covenants or other temporary matters that does not provide for permanent debt reduction or maturity extension shall not be considered, in and of itself, a Debt Restructuring and

1

Sheridan
October 16, 2018
Page 2

(ii) any repayment of debt that is not accompanied by a maturity extension shall not be considered, in and of itself, a Debt Restructuring.

**Description of Services**:

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent it deems such services necessary, appropriate and feasible:

   a. Reviewing and analyzing Fund I's business, fund structure, operations, capital structure, and financial projections;

   b. Evaluating transaction alternatives and the financial implications on Fund I's capital structure and financial condition;

   c. Advising and assisting the Company in a Debt Restructuring transaction, if it determines to undertake such a transaction; which would include:

      i. Assisting the Company in structuring a Debt Restructuring, including developing a restructuring plan or plan of reorganization, whether out-of-court or pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

      ii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

      iii. Advising the Company in its negotiations regarding the economic terms of a Debt Restructuring and/or negotiating directly with Fund I's stakeholders on its behalf regarding such a Debt Restructuring;

      iv. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

      v. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

This engagement is limited to Fund I and does not include any transactions with regard to the capital structures of other funds associated with Sheridan Production Partners Manager, LLC (i.e., Fund II and Fund III).  Should any such other funds choose to engage Evercore with respect to any transactions regarding such other funds, such engagement will be the subject of a separate written agreement.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue

Sheridan
October 16, 2018
Page 3

any business strategy or to effect or not to effect any Debt Restructuring and/or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice.  The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2.  As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

    a.  A monthly fee of $150,000 (a "Monthly Fee"), of which two Monthly Fees equal to $300,000 shall be payable on execution of this Agreement, and one Monthly Fee shall be payable on the first day of each month commencing November 1, 2018 until the earlier of the consummation of the Debt Restructuring transaction or the termination of Evercore's engagement. 100% of the first five payments of Monthly Fee (up to a maximum amount of $750,000), to the extent actually earned and paid, shall be credited (without duplication) against any Debt Restructuring Fee payable; provided, that, in the event of a Chapter 11 filing, any such credit of fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Debt Restructuring Fee are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is consistent with the terms of this Agreement or otherwise reasonably acceptable to Evercore.

    b.  A fee (a "Debt Restructuring Fee"), payable upon the consummation of any Debt Restructuring transaction, equal to a fixed percentage of the Company's indebtedness at the time of this Agreement (which indebtedness shall be deemed to be $622,000,000 for the purposes of calculating the Debt Restructuring Fee), as set forth below:

        i.  For a Debt Restructuring transaction which is completed simultaneously with, or around the same time as, a sale of all or substantially all of Fund I's SCOOP assets (a "SCOOP Sale"), the percentage shall be equal to 0.402%.

        ii.  For a Debt Restructuring transaction which is completed after a SCOOP Sale, and for which there is no written consensual agreement among creditors on the Debt Restructuring at or around the time the SCOOP Sale is consummated, the percentage shall be equal to 0.724%.

3

Sheridan
October 16, 2018
Page 4

> iii.   For a Debt Restructuring transaction which is completed without a SCOOP Sale having been completed before, or around the same time as, such Debt Restructuring, the percentage shall be equal to 0.965%.

c.  In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company shall reimburse to Evercore monthly, and upon consummation of the Debt Restructuring or termination of this Agreement, (a) all reasonable documented out-of-pocket fees and expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures), including expenses of counsel, if any; provided that Evercore shall obtain advance approval for any such amounts reasonably expected to exceed $50,000; provided, further, that this sentence shall in no way affect or limit the obligations of the Company as set forth on Schedule I attached hereto.

d.  If the Company requests, and Evercore provides, services (including, but not limited to, a financing or sale of Fund I assets) to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

e.  On or before the 20th day of each month during the term hereof, Evercore shall submit to the Company an invoice itemizing amounts to be paid by the Company on the 1st day of the following month, including the Monthly Fee, reimbursable expenses and any other amounts due and payable by Company pursuant to the terms of this Agreement.

f.  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

In addition, the Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(b) and/or 2(d) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

If a Debt Restructuring and/or Bank Amendment is to be completed through a pre-packaged Plan or similar pre-arranged Plan (i) 50% of the fees pursuant to subparagraph 2(b) and 2(c) shall be earned and shall be payable upon the execution of definitive agreements or delivery of binding consents with respect to such Plan and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of such Plan; provided, further, that in the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan, and such Plan is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Evercore.

Sheridan
October 16, 2018
Page 5

**<u>Retention in Bankruptcy Code Proceedings:</u>**

3.  In the event of the commencement of Chapter 11 proceedings, the Company agrees
    that it will use best efforts to obtain prompt authorization from the Bankruptcy Court
    to retain Evercore on the terms and conditions set forth in this Agreement under the
    provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in
    Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or
    any other standard of review. Subject to being so retained, Evercore agrees that
    during the pendency of any such proceedings, it shall continue to perform its
    obligations under this Agreement and that it shall file interim and final applications
    for allowance of the fees and expenses payable to it under the terms of this
    Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the
    local rules and orders of the Bankruptcy Court. The Company shall supply Evercore
    with a draft of the application and proposed retention order authorizing Evercore's
    retention sufficiently in advance of the filing of such application and proposed order
    to enable Evercore and its counsel to review and comment thereon. Evercore shall be
    under no obligation to provide any services under this agreement in the event that the
    Company becomes a debtor under the Bankruptcy Code unless Evercore's retention
    under the terms of this Agreement is approved under Section 328(a) by final order of
    the Bankruptcy Court, not subject to appeal, which order is reasonably acceptable to
    Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the
    Company acknowledges that it believes that Evercore's general restructuring
    experience and expertise, its knowledge of the capital markets and its merger and
    acquisition capabilities will inure to the benefit of the Company in pursuing any Debt
    Restructuring, that the value to the Company of Evercore's services hereunder derives
    in substantial part from that expertise and experience and that, accordingly, the
    structure and amount of the contingent fees are reasonable under the standard set
    forth in Section 328(a), regardless of the number of hours to be expended by
    Evercore's professionals in the performance of the services to be provided hereunder.
    No fee payable to any other person, by the Company or any other party, shall reduce
    or otherwise affect any fee payable hereunder to Evercore.

**<u>Other:</u>**

4.  Evercore's engagement hereunder is premised on the assumption that the Company
    will make available to Evercore all information and data in Fund I's possession that
    Evercore reasonably deems appropriate in connection with its activities on the
    Company's behalf and will not omit or withhold any material information.  The
    Company represents and warrants to Evercore that, to the Company's knowledge, any
    information heretofore or hereafter furnished to Evercore is and will be true and
    correct in all material respects.  The Company recognizes and consents to the fact that
    (a) Evercore will use and rely on the accuracy and completeness of public reports and
    other information provided by others, including information provided by the
    Company, other parties and their respective officers, employees, auditors, attorneys or
    other agents in performing the services contemplated by this Agreement, and (b)

Sheridan
October 16, 2018
Page 6

Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

5.  Evercore's engagement hereunder (i) shall automatically terminate upon the closing of a Debt Restructuring, or (ii) may be earlier terminated by the Company or Evercore at any time upon written notice. Any termination shall be without liability or continuing obligation to the Company or Evercore, except that following such termination, Evercore shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination and to reimbursement of expenses incurred prior to such termination. In the case of a termination by the Company for any reason other than Cause (as defined below) or a termination by Evercore for Cause, Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Debt Restructuring announced or occurring during the period from the date hereof until 9 months following such termination. For purposes hereof, "Cause" shall mean a party's conduct that is determined to be gross negligence, willful misconduct, bad faith or material breach of this Agreement after notice and a reasonable opportunity to cure.

6.  Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the indemnification agreement ("Indemnification Agreement") attached to this Agreement as Schedule I, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder.  The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement.  Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership.  Evercore shall at all times be and be deemed to be an independent contractor.  Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

7.  As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement.  The provisions of the Indemnification Agreement are an integral part of this Agreement, and the terms thereof are incorporated by reference herein.   The provisions of the Indemnification Agreement shall survive any termination or completion of Evercore's engagement hereunder.

8.  The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a

Sheridan
October 16, 2018
Page 7

transaction. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

9.  The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives.   Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the entities included within the definition of the Company or Fund I on page 1 or Sheridan Production Partners Manager, LLC ("Manager") (in its capacity as the manager of (a) each member of Fund I and the Company and (b) the general partners of each member of Fund I), is authorized to rely upon this engagement of Evercore or any statements, advice, opinions or conduct by Evercore.  Without limiting the foregoing, any advice, written or oral, rendered to any Board of Directors or senior management of the Company or Manager (in its capacity as the manager of (a) each member of Fund I and the Company and (b) the general partners of each member of Fund I) in the course of this engagement of Evercore are solely for the purpose of assisting such senior management or such Board of Directors, as the case may be, in evaluating the Debt Restructuring or other transaction and does not constitute a recommendation to any stakeholder of any entity that such stakeholder might or should take in connection with a transaction.  The Company and Manager agree that any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore.

10.  In order to coordinate Evercore's efforts on behalf of the Company during the period of Evercore's engagement hereunder, the Company will promptly inform Evercore of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.

11.  This Agreement (including the Indemnification Agreement) and that certain Confidentiality Agreement dated May 19, 2016 between Evercore and the Sheridan Production Company, LLC (as extended by that certain Letter Agreement dated April 19, 2018), embody the entire agreement and understanding between the parties hereto and supersede all prior agreements and understandings relating to the subject matter hereof.   If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect.  This Agreement may not be amended or modified except in writing signed by each of the parties.

Sheridan
October 16, 2018
Page 8

12. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate Indemnification Agreement attached hereto.

13. The Company acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual, equitable or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to the Company.  In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its affiliates, potential parties to a transaction and their affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a transaction or their affiliates, and from which conflicting interests or duties may arise.  Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future.  The Company also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In the ordinary course of such businesses, Evercore and its affiliates may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of the Company.

14. The Company agrees to provide and procure all corporate, financial, identification and other information regarding the Company and control persons and/or beneficial owners, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act and Financial Crimes Enforcement Network regulations.

Sheridan
October 16, 2018
Page 9

15. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission or email shall constitute valid sufficient delivery thereof.

16. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court.  The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

Evercore Group L.L.C.

By:

David Ying
Senior Managing Director

Sheridan
October 16, 2018
Page 10

Agreed to and Accepted as of the Date
September 1, 2018:

Sheridan Investment Partners I, LLC

By: _____
    Shannon E. Young III
    Vice President and Chief Financial Officer


Sheridan Production Partners I-A, L.P.
By:    Sheridan Production Partners I, LLC,
       Its general partner

By: _____
    Shannon E. Young III
    Vice President and Chief Financial Officer

Sheridan Production Partners I-M, L.P.
By:    Sheridan Production Partners I, LLC,
       Its general partner

By: _____
    Shannon E. Young III
    Vice President and Chief Financial Officer


Sheridan Production Partners Manager, LLC

By: _____
    Shannon E. Young III
    Vice President and Chief Financial Officer

Schedule I

Indemnification Agreement

October 16, 2018

Sheridan Investment Partners I, LLC
Sheridan Production Partners I-A, L.P.
Sheridan Production Partners I-M, L.P.
Attention: Shannon E. Young III, Vice President and Chief Financial Officer
9 Greenway Plaza, Suite 1300
Houston, Texas 77046

Gentlemen:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to each of Sheridan Investment Partners I, LLC, Sheridan Production Partners I-A, L.P., Sheridan Production Partners I-M, L.P. (collectively, the "Company") pursuant to the engagement letter, dated October 16, 2018, the Company and Evercore are entering into this Indemnification Agreement (this "Agreement"). It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought by or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable cost of any investigation and preparation) as and when they are incurred in connection therewith. For the avoidance of doubt this Indemnification Agreement shall be effective as of the Effective Date, as defined in the Engagement Letter.

The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct. The Company and Sheridan

1

Sheridan
October 16, 2018
Page 2

Production Partners Manager, LLC ("Manager") also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, Manager or their respective security holders or creditors related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct. Each Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expense that resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct. If multiple claims are brought against Evercore in an arbitration related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, with respect to at least one of which such claims indemnification is permitted under applicable law, the Company agrees that any arbitration award shall be conclusively deemed to be based on the claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. The Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Company or its security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid or payable to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services. The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein. The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any

Sheridan
October 16, 2018
Page 3

successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore.  Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel in a timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the reasonable belief of such Indemnified Person, a conflict of interest or a conflict on any material issue between the Company's position and the position of the Indemnified Person.  It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Persons (unless in the reasonable belief of such Indemnified Persons, there is a conflict of interest or a conflict on any material issue between the positions of such Indemnified Persons), which firm shall be designated in writing by Evercore.  The Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

Sheridan
October 16, 2018
Page 4

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles).  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.  Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its stockholders and creditors) waive all right to trial by jury in any claim, action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with this Agreement.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Very truly yours,

Evercore Group L.L.C.

By: _____

David Ying
Senior Managing Director

4

Sheridan
October 16, 2018
Page 5

Agreed to and Accepted as of the Date
September 1, 2018:

Sheridan Investment Partners I, LLC

By: _____

Shannon E. Young III
Vice President and Chief Financial Officer

Sheridan Production Partners I-A, L.P.
By:    Sheridan Production Partners I, LLC,
       Its general partner

By: _____

Shannon E. Young III
Vice President and Chief Financial Officer

Sheridan Production Partners I-M, L.P.
By:    Sheridan Production Partners I, LLC,
       Its general partner

By: _____

Shannon E. Young III
Vice President and Chief Financial Officer

Sheridan Production Partners Manager, LLC

By: _____

Shannon E. Young III
Vice President and Chief Financial Officer

**<u>Exhibit B</u>**

**Evercore Time Records by Professional**

**SHERIDAN HOLDING COMPANY I, LLC**

Time Detail

Evercore Inc.

*Jeremy Matican, Managing Director*

**March Hours**

| Date | Work Done | Hours | Code |
|------|-----------|-------|------|
| 3/23/2020 | Prepare for telephonic Board Meeting | 1.0 | 6. Board Communication |
| 3/23/2020 | Telephonic Board Meeting regarding restructuring | 0.5 | 6. Board Communication |
| 3/23/2020 | Review Plan of Reorganization with Debtor | 2.0 | 8. Expert Testimony |
| 3/23/2020 | Review Disclosure Statement with Debtor | 2.0 | 8. Expert Testimony |
| 3/23/2020 | Prepare for First Day / Confirmation Hearing | 5.0 | 1. General Case Administration |
| 3/23/2020 | Review Retention Application | 1.0 | 10. Evercore Retention |
| 3/24/2020 | First Day / Confirmation Hearing | 1.0 | 1. General Case Administration |
| | **Total** | **12.5** | |

2

**SHERIDAN HOLDING COMPANY I, LLC**

Time Detail

Evercore Inc.

*Curtis Flood, Managing Director*

**March Hours**

| Date | Work Done | Hours | Code |
|------|-----------|-------|------|
| 3/23/2020 | Prepare for telephonic Board Meeting | 1.0 | 6. Board Communication |
| 3/23/2020 | Telephonic Board Meeting regarding restructuring | 0.5 | 6. Board Communication |
| 3/23/2020 | Confirmation Hearing Testimony Preparation | 8.0 | 8. Expert Testimony |
| 3/24/2020 | Travel to Debtor offices for First Day / Confirmation Hearing | 0.5 | 9. Travel |
| 3/24/2020 | Confirmation Hearing Testimony Preparation | 2.0 | 8. Expert Testimony |
| 3/24/2020 | First Day / Confirmation Hearing | 1.0 | 1. General Case Administration |
| | **Total** | **13.0** | |

3

**SHERIDAN HOLDING COMPANY I, LLC**

Time Detail

Evercore Inc.

*Evan Levine, Vice President*

**March Hours**

| Date | Work Done | Hours | Code |
|------|-----------|-------|------|
| 3/23/2020 | Prepare for telephonic Board Meeting | 1.0 | 6. Board Communication |
| 3/23/2020 | Telephonic Board Meeting regarding restructuring | 0.5 | 6. Board Communication |
| 3/23/2020 | Review First Day Hearing presentation | 0.5 | 1. General Case Administration |
| 3/23/2020 | Review Retention Application | 1.5 | 10. Evercore Retention |
| 3/24/2020 | Review documents and prepare for Confirmation Hearing | 2.0 | 1. General Case Administration |
| 3/24/2020 | First Day / Confirmation Hearing | 1.0 | 1. General Case Administration |
| | **Total** | **6.5** | |

**SHERIDAN HOLDING COMPANY I, LLC**

Time Detail

Evercore Inc.

*Zichong Peng, Analyst*

**March Hours**

| Date | Work Done | Hours | Code |
|------|-----------|-------|------|
| 3/23/2020 | Prepare for telephonic Board Meeting | 0.5 | 6. Board Communication |
| 3/23/2020 | Telephonic Board Meeting for Restructuring | 0.5 | 6. Board Communication |
| 3/23/2020 | Follow-up requests from Board Meeting | 0.5 | 6. Board Communication |
| 3/23/2020 | Prepare Evercore Retention Application | 2.5 | 10. Evercore Retention |
| 3/24/2020 | First Day / Confirmation Hearing | 1.0 | 1. General Case Administration |
| | **Total** | **5.0** | |

5

**SHERIDAN HOLDING COMPANY I, LLC**

Time Detail

Evercore Inc.

*Nathaniel Kostiw-Gill*

**March Hours**

| Date | Work Done | Hours | Code |
|---|---|---|---|
| 3/23/2020 | Prepare for telephonic Board Meeting | 0.5 | 6. Board Communication |
| 3/23/2020 | Telephonic Board Meeting for Restructuring | 0.5 | 6. Board Communication |
| 3/23/2020 | Testimony prep for C. Flood | 8.0 | 8. Expert Testimony |
| 3/24/2020 | First Day / Confirmation Hearing | 1.0 | 1. General Case Administration |
| | **Total** | **10.0** | |

**<u>Exhibit C</u>**

**Certification of Jeremy Matican**

<u>IN THE UNITED STATES BANKRUPTCY COURT</u>
<u>FOR THE SOUTHERN DISTRICT OF TEXAS</u>
<u>HOUSTON DIVISION</u>

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31885 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

**DECLARATION OF JEREMY MATICAN**
**REGARDING COMPLIANCE WITH COMPLEX CASE PROCEDURES**

I, Jeremy Matican, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.     I am a Managing Director of the investment banking firm Evercore Group L.L.C. ("<u>Evercore</u>")

2.     This certification is made in connection with Evercore's application for final compensation and reimbursement of expenses for the period commencing March 23, 2020 through and including March 24, 2020, to which it is attached (the "<u>Application</u>")[2]

3.     I am the professional at Evercore designated with the responsibility in these chapter 11 cases for compliance with the Complex Case Procedures.  In connection therewith, I hereby certify that:

---

[1]     The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092).  The location of the Reorganized Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]     Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Application.

(a)   I have read the Application;

(b)   to the best of my knowledge, information, and belief, formed after

reasonable inquiry, the compensation and expense reimbursement

sought in the Application is in conformity with the Complex Case

Procedures, except as specifically noted therein; and

(c)   the compensation requested is billed at rates, in accordance with

practices, no less favorable than those customarily employed by

Evercore and generally accepted by Evercore's clients.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

By:  /s/ *Jeremy Matican*
Name:  Jeremy Matican
Title:   Managing Director

9

**<u>Exhibit D</u>**

**Fee and Expense Summary**

**Fee and Expense Detail**

**Debt Restructuring Fee**

| | |
|---|---|
| Total Debt per Engagement Letter | $622,000,000.00 |
| (x) Debt Restructuring Fee (%) | 0.965% |
| **Total Debt Restructuring Fee** | **$6,002,300.00** |
| (-) Amount Paid Pre-Petition (50%) | (3,001,150.00) |
| (-) Crediting of 5 Monthly Fees | (750,000.00) |
| **Debt Restructuring Fee Due [A]** | **$2,251,150.00** |

**Expenses**

| | |
|---|---|
| Total Expenses | $6,261.00 |
| **Total Expenses Owed [B]** | **$6,261.00** |

**Total Fees and Expenses**

| | |
|---|---|
| Total Fees and Expenses [A] + [B] | $2,257,411.00 |
| (-) Unused Retainer | (14,545.68) |
| **Total Fees and Expenses Requested** | **$2,242,865.32** |

## **Reimbursable Expense Detail**

| Date | Professional | Expense Description | Amount |
|------|--------------|---------------------|--------|
| **Legal Fees** | | | |
| 4/6/2020 | Debevoise & Plimpton | Sheridan Legal Fees | $6,261.00 |
| **Legal Fees Total** | | | **$6,261.00** |
| | | | |
| **Total Expenses** | | | **$6,261.00** |



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Invoice Number: 1427958

April 6, 2020

EVERCORE GROUP LLC
Evercore Partners
P.O. Box 5319
New York, NY  10150
Attn: Ken Masotti

For Professional Fees and Services in connection with **SHERIDAN I**

Matter Number:  23172.1072

| Date | Timekeeper | Hours | Narrative |
|---|---|---|---|
| 02/27/20 | Kaluk, Nick S. | 0.20 | Email with Z. Peng re Sheridan I retention app. |
| 03/16/20 | Pyon, Daniel | 0.40 | Review and coordinate with team on draft retention materials, disclosure. |
| 03/17/20 | Pyon, Daniel | 0.40 | Call with S. Mahfooz on review of retention materials. |
| 03/17/20 | McDermott, Anna | 2.00 | Prepare schedules for retention application; email with D. Pyon re same. |
| 03/17/20 | Mahfooz, Sidra | 0.40 | Attend call with D. Pyon. Attention to retention order. |
| 03/18/20 | Pyon, Daniel | 1.40 | Review and revise draft schedule of disclosures (0.9); review and comment on draft retention application (0.5). |
| 03/18/20 | Mahfooz, Sidra | 2.30 | Attention to retention application. |
| 03/19/20 | Kaluk, Nick S. | 1.00 | Review and revise draft retention papers for Sheridan I. |
| | Total Hours: | 8.10 | |

**Total Fees : $6,261.00**

| | |
|---|---|
| **Total Fees** | **$6,261.00** |
| **Document Preparation, Communication, Other Charges and Disbursements** | **0.00** |
| **Total Amount Due** | **$6,261.00** |

## *Timekeeper Summary*

| Timekeeper | Hours | Billed Per Hour | Billed Amount |
|---|---|---|---|
| ASSOCIATE | | | |
| Nick S. Kaluk | 1.20 | 1,115.00 | 1,338.00 |
| Sidra Mahfooz | 2.70 | 760.00 | 2,052.00 |
| Daniel Pyon | 2.20 | 955.00 | 2,101.00 |
| **TOTAL FOR ASSOCIATE** | **6.10** | **$900.16** | **$5,491.00** |

| Timekeeper | Hours | Billed Per Hour | Billed Amount |
|---|---|---|---|
| LEGAL ASSISTANT | | | |
| Anna McDermott | 2.00 | 385.00 | 770.00 |
| **TOTAL FOR LEGAL ASSISTANT** | **2.00** | **$385.00** | **$770.00** |



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Invoice Number: 1427958

April 6, 2020

EVERCORE GROUP LLC
Evercore Partners
P.O. Box 5319
New York, NY  10150
Attn: Ken Masotti

**Remittance Summary**
(Payment Due Upon Receipt)

| | |
|---|---|
| **Total Fees** | **$6,261.00** |
| **Document Preparation, Communication, Other Charges and Disbursements** | **0.00** |
| **Total Amount Due** | **$6,261.00** |

**_Remit Payment By:_**

*Check*

Debevoise & Plimpton LLP
Accounting Department, 28th Floor
919 Third Avenue
New York, NY 10022

Wire Transfer

Citibank, N.A., New York, NY
ABA # 021000089
Account #
Invoice No.: 1427958

1005999513v1