## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SHERIDAN HOLDING COMPANY I, LLC, *et al.*,[1] | § | Case No. 20-31884 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

## CLASS REPRESENTATIVES' AND SETTLEMENT CLASS COUNSEL'S MOTION FOR APPROVAL OF: (I) ADMINISTRATION EXPENSES; (II) CLASS COUNSEL FEES AND EXPENSES; AND (III) CLASS REPRESENTATIVES FEE

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE AND SERVE YOUR WRITTEN OBJECTION TO THIS MOTION BY MAY 29, 2020 IN ACCORDANCE WITH THE PRELIMINARY APPROVAL ORDER [ECF 123]. YOUR OBJECTION MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY OBJECTION, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION, YOU MUST ATTEND THE SETTLEMENT FAIRNESS HEARING TO PRESENT YOUR OBJECTION. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE SETTLEMENT FAIRNESS HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sheridan Holding Company I, LLC (7648); Sheridan Investment Partners I, LLC (8607); Sheridan Production Partners I, LLC (8094); Sheridan Production Partners I-A, L.P. (8100); Sheridan Production Partners I-B, L.P. (8104); Sheridan Production Partners I-M, L.P. (8106); and SPP I-B GP, LLC (8092). The location of the Reorganized Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056. "Debtors" refers to these same entities before the Effective Date of the *Amended Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF 11] (the "Plan").

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iv

Introduction ......................................................................................................................1

Relief Requested ...............................................................................................................2

Summary of the Argument.................................................................................................4

Jurisdiction and Venue.......................................................................................................8

Factual and Procedural Background ..................................................................................8

Argument ...........................................................................................................................13

      A.     Under the Settlement Agreement, Tenth Circuit Federal Common
           Law Controls the Right to and Reasonableness of the Requests
           For Class Counsel Fees and Expenses ..................................................................13

      B.     The Fee Request is Reasonable Under Federal Common Law...........................15

          1. Attorney's Fees are Calculated as a Percentage of the Fund
            Under Tenth Circuit Law ...............................................................................16

          2. The Fee Request is Reasonable under the Johnson Factors............................18

            1. Time and Labor........................................................................................20

            2. Novelty and Difficulty .............................................................................21

            3. Skill Required ...........................................................................................21

            4. Preclusion of Other Cases ........................................................................22

            5. Customary Fee ..........................................................................................22

            6. Fixed Hourly or Contingent Fee ..............................................................23

            7. Time Limitations.......................................................................................24

            8. Amount in Controversy and Result Obtained...........................................24

            9. Experience, Reputation, and Ability of Counsel ......................................24

10. Undesirability ........................................................................................24

11. Nature and Length of Professional Relationship with Client ...................25

12. Awards in Similar Cases .........................................................................26

13. Additional Factor—Continuing Work .......................................................26

C.    The Requests for Reimbursement of Expenses Are Reasonable Under
      Federal Common Law .....................................................................................27

1. Reimbursement of Litigation Expenses ..........................................................28

2. Reimbursement of Settlement Administration Expenses ...............................28

3. Proposed Protocol for Reimbursement of Additional Expenses......................29

D.    The Class Representative Fee is Reasonable Under Federal Common Law .........32

Conclusion    .....................................................................................................................34

CERTIFICATE OF SERVICE .........................................................................................36

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................................33

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..............................................................................................................19

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ..................................................................................16, 18, 19

*Cecil v. BP Am. Prod. Co.*,
    No. 16-CV-410-KEW, 2018 WL 8367957 (E.D. Okla. Nov. 19, 2018) ........................ *passim*

*Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) .............................................................................................14

*Chieftain Royalty Co. v. Laredo Petro., Inc.*,
    No. CIV-12-1319, 2015 WL 2254606 (W.D. Okla. May 13, 2015) ...........................16, 23, 32

*Chieftain Royalty Co. v. XTO Energy Inc.*,
    No. 11-cv-29-KEW, 2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ....................................14

*Chieftain v. Marathon Oil Co.*,
    No. CIV-17-334-SPS, 2019 WL 7758915 (E.D. Okla. Mar. 8, 2019) ...................................16

*CompSource Oklahoma v. BNY Mellon, N.A.*,
    No. CIV 08-469-KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ....................15, 16, 23

*In re Endeavour Highrise, L.P.*,
    432 B.R. 583 (Bankr., S.D. Tex. 2010) ................................................................................14

*Fankhouser v. XTO Energy, Inc.*,
    No. CIV-07-798- L, 2012 WL 4867715 (W.D. Okla. Oct. 12, 2012) ....................................33

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ........................................................................................16, 18

*In re Guevara*,
    409 B.R. 442 (Bankr., S.D. Tex., Houston Div. 2009)..........................................................14

*In re High–Tech Emp. Antitrust Litig.*,
    No. 11–CV–2509–LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)................................29

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...................................................................... *passim*

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................33

*In re New Power Co.*,
    313 B.R. 496 (Bankr. N.D. Ga. 2004) ................................................................14

*Northumberland County Ret. Sys. v. GMX Res. Inc.*,
    No. CIV-11-520, 2014 WL 12014020 (W.D. Okla. July 31, 2014) .......................16

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................32

*Schell v. Oxy USA, Inc.*,
    814 F.3d 1107 (10th Cir. 2016) ........................................................................23

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) ...............................................................................14, 16

*UFCW Local 880-Retail Food v. Newmont Mining Corp.*,
    352 Fed. Appx. 232 (10th Cir. 2009) .................................................................32

*Uselton v. Commercial Lovelace Motor Freight*,
    9 F.3d 849 (10th Cir. 1993) .............................................................................16

*Vaszlavik v. Storage Tech. Corp.*,
    No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) ...............................28

**State Cases**

*Continental Resources, Inc. v. Conoco, Inc.*,
    No. CJ-95-739 (Okla. Dis. Ct., Garfield Cnty.) (2005) .........................................33

*El Paso Natural Gas Co. v. Amoco Prod. Co.*,
    No. Civ. A. No. 12083, 1994 WL 728816 (Del.Ch. Dec.16, 1994) .......................15

*Fitzgerald Farms, LLC v. Chesapeake Operating, LLC*,
    No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct., Beaver County, July 2,
    2015) ...............................................................................................22, 25, 33

*Leritz v. Farmers Ins. Co.*,
    2016 OK 79, 385 P.3d 991.............................................................................14

*Robertson v. Sanguine, Ltd.*,
    No. CJ-02-150 (Okla. Dist. Ct., Caddo Cnty.) (2003) .........................................33

*Velma-Alma Indep. Sch. Dist. No. 15, v. Texaco, Inc.*
   No. CJ-2002-304 (Okla. Dist. Ct., Stephens Cnty.) (2005) .......................................................33

**Federal Statutes**

11 U.S.C. §§ 101–1532 ...............................................................................................................12

11 U.S.C. §330(a)(3) .....................................................................................................................6

28 U.S.C. § 157(b)(2) ....................................................................................................................8

28 U.S.C. § 1332(d)(2) ..............................................................................................................9, 13

28 U.S.C. § 1334 ............................................................................................................................8

28 U.S.C. §§ 1408 and 1409 ..........................................................................................................8

28 U.S.C. § 1711(a)-(b) ............................................................................................................1, 13

**Rules**

Bankruptcy Rule 7023 ..................................................................................................................14

Civil Rule 23(h) .........................................................................................................................6, 8

Civil Rule 52(a) .............................................................................................................................6

Fed. R. Civ. P. 23 .................................................................................................................5, 8, 14

Fed. R. Civ. P. 23(h) ......................................................................................................................6

FED. R. CIV. P. 23(h) ....................................................................................................................19

FED. R. CIV. P. 23(h) ....................................................................................................................28

Fed. R. Civ. P. 52(a) ......................................................................................................................6

Fed. R. Civ. P. 54(d)(2) .................................................................................................................6

Federal Rule of Evidence 807 ......................................................................................................17

Federal Rules of  Bankruptcy Procedure Rule 7008 ......................................................................8

Federal Rules of Bankruptcy Procedure Rule 7023 ......................................................................5

Federal Rules of Bankruptcy Procedure Rule 7023 ......................................................................8

Local Rule 2016-1 ..........................................................................................................................6

**Constitutional Provisions**

United States Constitution Article III ............................................................................................8

**Other Authorities**

Newberg On Class Actions § 17:12 (5th Ed.).........................................................................33

## **Introduction**

On March 31, 2020, this Court entered the *Preliminary Approval Order (I) Directing the Application of Bankruptcy Rule 7023, (II) Preliminarily Approving the Class Settlement, (III) Appointing the Settlement Administrator; (IV) Approving Form and Manner of Notice to Class Members, (V) Certifying a Class, Designating Class Representatives, and Appointing Class Counsel for Settlement Purposes Only, (VI) Scheduling a Settlement Fairness Hearing to Consider Final Approval of the Settlement, and (VII) Granting Related Relief* (the "Preliminary Approval Order") [ECF 123], granting preliminary approval to a class action settlement as part of this Bankruptcy Proceeding.[2] Notice of Settlement has been provided to the members of the Settlement Class, and objections to or opt-outs from the Settlement are due by May 29, 2020.[3]

The Preliminary Approval Order directs Class Representatives and Settlement Class Counsel to "file a motion for approval and payment of Class Counsel fees and expenses, the Class Representatives' contribution fee, and the administration expenses of settlement to be paid from the Settlement Proceeds ("Fees and Expenses Motion")" at least fourteen days before the May 29th Objection Deadline.[4] This Motion for Administration Expenses, Class Counsel Fees and Expenses,

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Settlement Agreement dated as of March 20, 2020 (the "Settlement Agreement"), which is attached as Exhibit 1 to the Preliminary Approval Order [ECF 123].

[3]   Facts pertaining to the Plan of Notice are set forth in the *Declaration of Jennifer M. Keough,* Chief Executive Officer of JND Legal Administration, LLC (the "Keough Declaration" or "Keough Decl."), filed contemporaneously on the date hereof as **Exhibit 1** and incorporated by reference herein. Paragraphs 14 and 17 of the Preliminary Approval Order [ECF 123] set May 29, 2020 as the Objection Deadline and Opt-Out Deadline. Additionally, Defendant SPC and Debtors provided notice to the attorney generals of the States pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711. [ECF 181].

[4]   ECF 123, Preliminary Approval Order at ¶ 16.

and Class Representatives Fee is the Fees and Expenses Motion described in the Preliminary Approval Order (this "Motion").

### Relief Requested

By this Motion, Class Representatives, Tony R. Whisenant, Kyle Allan Taylor, Stanley Ray Born and Ronda Jean Born (collectively, the "Class Representatives"), on behalf of themselves and the Settlement Class, and Settlement Class Counsel respectfully ask the Court to, after the Settlement Fairness Hearing on July 13, 2020, approve the following awards from the $5,094,000.00 in Settlement Proceeds, all as described in the court-approved Notice of Settlement:[5]

    (1)    $94,000.00 as payment of the Administration Expenses due to JND Legal Administration, the court-appointed Settlement Administrator for its services and expenses in administering this settlement;[6]

    (2)    Forty percent of the remaining Settlement Proceeds (after reducing the Settlement Proceeds by $94,000.00 for the Administration Expenses due to JND Legal

---

[5]    See Section IV, Notice of Settlement attached as Exhibit A to the Keough Declaration, which says:

Settlement Class Counsel has requested that the Court (i) award Settlement Class Counsel an attorney's fee in an amount to be determined by the Court but not to exceed forty percent (40%) of the Settlement Proceeds as is customary in Oklahoma royalty underpayment class actions; (ii) award the Class Representatives a fee in an amount to be determined by the Court but not to exceed two percent (2%) of the Settlement Proceeds; (iii) reimburse Class Counsel from the Settlement Proceeds for all litigation expenses paid by Settlement Class Counsel, including expert and consulting fees and other litigation expenses in amounts to be determined by the Court; and (iv) authorize payment of Administration Expenses. If the Court approves this request, such amounts will be deducted from the Settlement Proceeds before the Net Settlement Amount is calculated and Distribution Checks are mailed to the Settlement Class Members.

[6]    ECF 123, Preliminary Approval Order at ¶ 3; Keough Decl. at ¶ 16.

Administration and after adjustment for Monies Payable to Opt-Outs) ($2,000,000.00 or less depending on the Opt-Outs) as Class Counsel Fees;[7]

      (3)    $117,532.82 as reimbursement of Class Counsel's reasonable and necessary litigation expenses in the Class Lawsuit, Born Action, and the Bankruptcy Proceeding;[8]

      (4)    $50,000.00 as a reserve for estimated future Administration Expenses and Additional Expenses as actually incurred through distribution and reconciliation of the Taylor Settlement Account and as approved for payment by the Court pursuant to the proposed protocol set forth in Section C.3, *infra*; and

      (5)    Two percent of the remaining Settlement Proceeds, after adjustment for Monies Payable to Opt-Outs ($100,000 or less depending on the Opt-Outs) as the Class Representatives Fee to be divided in thirds with one-third to Mr. Taylor, one-third to Mr. Whisenant, and one-third to the spouses Mr. and Mrs. Born for contributing their time and efforts to prosecuting the Class Lawsuit and/or Born Action and obtaining a common fund recovery for the Settlement Class.

---

[7]    Monies Payable to Opt-Outs is the gross allocation to members of the Settlement Class who elect to opt-out of the Settlement. The Settlement Agreement provides for the return of the Monies Payable to Opt-Outs to the Reorganized Debtors. ECF 123, Preliminary Approval Order, Ex. 1, Settlement Agreement at ¶ 1.14. The parties will not know the amount of the Monies Payable to Opt-Outs until after the Opt-Out deadline of May 29, 2020. *See* note 3, *supra*.

[8]    The expenses incurred by Settlement Class Counsel (aka "Class Counsel") are set forth in the respective declaration of a partner in that law firm: *Declaration of Rex A. Sharp in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives Fee,* Managing Partner of Sharp Law, LLP (the "Sharp Decl."), attached hereto as **Exhibit 2**; *Declaration of Allan DeVore in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives Fee,* Managing Member of the DeVore Law Firm, PLC. (the "DeVore Decl."), attached hereto as **Exhibit 3**; and *Declaration of Charles Rubio,* Partner at Diamond McCarthy, LLP (the "Rubio Decl."), attached as **Exhibit 4**, all of which are contemporaneously filed and incorporated by reference herein. As mentioned in the Sharp Declaration, Sharp Law pays the Grant Law Firm on an hourly basis for his limited services as local counsel. Accordingly, Sharp Law seeks recovery of the payments to the Grant Law Firm as an expense, not part of Class Counsel Fees.

Assuming the above awards total 44% of the Settlement Proceeds, 56% of the Settlement Proceeds would be available for distribution to the Settlement Class as set forth in the court-approved Plan of Allocation and Distribution after the Judgment becomes Final and Non-Appealable.[9]

## Summary of the Argument

The Class Representatives filed the Class Lawsuit[10] and the Born Action[11] against the Debtors and Sheridan Production Company, LLC ("SPC"), asserting claims for breach of lease and breach of fiduciary duty based on the deduction of midstream costs from royalty owed on gas produced from wells located in the state of Oklahoma. The Settlement Agreement contemplates a settlement of the Class Lawsuit and the Born Action and includes mutual releases and settlement proceeds of $5,094,000 for the benefit of the Settlement Class. This Motion respectfully requests the Court award Administration Expenses, Class Counsel Fees and Expenses, and Class

---

[9]   ECF 123, Preliminary Approval Order at ¶ 2; *Declaration of Daniel T. Reineke, in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives Fee* (the "Reineke Declaration" or "Reineke Decl.") filed contemporaneously on the date hereof as **Exhibit 5** and incorporated by reference herein. Mr. Reineke is a registered petroleum engineer with more than 44 years of oil and natural gas industry experience who has been accepted as a testifying expert on oil and gas issues in more than 30 state and federal cases. He calculated class-wide damages on behalf of the Class Lawsuit, which included the wells at issue in the Class Lawsuit and Born Action, and prepared the preliminary allocation to show the amounts that would be distributed to each Class Member based on certain assumptions as stated in his declaration if the Judgment becomes Final and Non-Appealable. That preliminary allocation, along with this Motion, will be posted to the settlement website so Class Members may review the preliminary amount allocated to them by their owner number. The preliminary allocation will be revised after the Settlement Fairness Hearing to reflect the Monies Payable to Opt-Outs and the actual awards made pursuant to the Fees and Expenses Order (as defined at note 18, *infra*)..

[10]   The Class Lawsuit refers to the consolidated action styled *Taylor, et al. v. Sheridan Production Company, LLC,* No. CIV-18-029-JWD, in the United States District Court for the Western District of Oklahoma. *Whisenant, et al. v. Sheridan Production Company, LLC,* No. CIV-18-029-JWD, in the United States District Court for the Western District of Oklahoma, was consolidated with *Taylor* being designated the lead case.

[11]   The Born Action refers to the action styled *Born, et al. v. Sheridan Production Company, LLC,* No. CJ-2012-47, in the District Court of Caddo County, Oklahoma.

Representatives Fee from the Settlement Proceeds in accordance with federal law and decades of royalty owner class action litigation in Oklahoma.[12]

Were it not for Debtors' decision to seek bankruptcy protection from this Court, the Class Lawsuit and the Born Action would be proceeding in the federal and state courts in Oklahoma. For this reason, the Parties provided in the Settlement Agreement that federal law, including "Tenth Circuit federal law regarding federal equitable common fund class actions," would govern the analysis of the right to and reasonableness of attorneys' fees and expenses and the case contribution award (aka "Class Representatives Fee"). Paragraph 2.8 of the Settlement Agreement provides in pertinent part:

> **Governing Law.** To promote certainty, predictability, the full enforceability of this Agreement as written, and nationwide application, the Parties agree that this Agreement shall be governed solely by any federal law as to due process, class certification, judgment, collateral estoppel, res judicata, release, settlement approval, allocation, case contribution award, the right to and reasonableness of attorneys' fees and expenses, and all other matters for which there is federal procedural or common law, including **Tenth Circuit federal law regarding federal equitable common fund class actions**. For any such matters where there is no federal common law, Oklahoma state law will govern.

ECF 123, Ex. 1, Settlement Agreement at ¶ 2.8 (emphasis added).

In the Preliminary Approval Order, the Court directed the application of rule 7023 of the Federal Rules of Bankruptcy Procedure and, by incorporation, rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules") in granting preliminary approval to the Settlement.[13] The same rules

---

[12]  The decades long history of royalty owner class action settlements and related exhibits which support this Motion are set forth in the *Joint Declaration of Settlement Class Counsel in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives Fee* (the "Class Counsel Decl."), filed contemporaneously on the date hereof as **Exhibit 6** and incorporated by reference herein.

[13]  ECF 123, Preliminary Approval Order at 1-2.

apply to the Court's analysis of granting final approval to the Settlement and to granting the relief requested in this Motion.[14]

Civil Rule 23(h) authorizes the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement" provided: (1) the motion comports with Civil Rule 54(d)(2), is filed at the time the court sets, and notice of the motion is served on all parties and directed to the class members in a reasonable manner; (2) a class member, or a party from whom payment is sought, may object to the motion; (3) the court finds facts and states its legal conclusions under Civil Rule 52(a) after the Settlement Fairness Hearing.[15] Procedurally, this Motion complies with these requirements.[16] The Motion is made at the time set in the Preliminary Approval Order. It has been served on all parties through the electronic case filing system. It has been or will be posted on the website established for the Settlement so the class members have notice of the Motion and the opportunity to object to it.[17] And the proposed order attached hereto sets forth factual findings and legal conclusions to satisfy Civil Rule 52(a) for the Court's consideration once the Motion is ripe.[18]

---

[14]   After the Objection and Opt-Out Deadline and before the Settlement Fairness Hearing on July 13, 2020, Class Representatives will file their motion for final approval of the Settlement under Civil Rule 23(e). The fairness, reasonableness and adequacy of the Settlement will be addressed in that motion. Both this Motion and the motion for final approval are to be heard at the Settlement Fairness Hearing.

[15]   Civil Rule 23(h)(4) also permits the court to refer issues related to the amount of the award to a special master or a magistrate judge under Civil Rule 54(d)(2)(D). At this juncture, however, incurring the additional expense of a special master is wasteful as no objection to the Motion has been made.

[16]   Because this Motion is filed under Civil Rule 23(h), not 11 U.S.C. §330(a)(3) of the Bankruptcy Code, and does not relate to professional fees for services to the Debtors' estate, Local Rule 2016-1 and this Court's Procedures and Practice Tips related to Fee Applications seem not to apply.

[17]   ECF 123, Preliminary Approval Order at ¶ 16 ("The Settlement Administrator shall post the Fees and Expenses Motion on the website established for the administration of the Settlement Agreement promptly following the filing of the Fees and Expenses Motion.")

[18]   *Order Approving (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives Fee* (the "Fees and Expenses Order"), attached hereto as **Exhibit 10,** which will be ripe for consideration at the Settlement Fairness Hearing on July 13, 2020. *See note 14, supra.*

Substantively, the request for payment of Administration Expenses aligns with the estimate the Settlement Administrator provided for its services in administering the Settlement.[19] The request for Class Counsel's Fees aligns with the percentage of the fund method under Tenth Circuit federal law, under the *Johnson* factors used in both the Tenth and Fifth Circuits to evaluate the reasonableness of the fee request, and under the standards for such fee awards in prior class action settlements concerning royalties on gas produced from Oklahoma wells.[20] The requests for reasonable and necessary litigation expenses are based on the actual amounts incurred by Class Counsel in prosecuting the Class Lawsuit and Born Action through the filing of this Motion.[21] The requested reserve is based on the expenses incurred or reasonably expected to be incurred as Administration Expenses by experts or others in carrying out the terms of the Settlement Agreement and Additional Expenses incurred by Class Counsel through administering the Settlement through distribution and reconciliation in 2021.[22] And, the request for Class Representatives Fee comports with the standards for such fee awards in prior royalty owner class action settlements.[23]

---

[19]   Keough Decl. at ¶ 16.

[20]   Class Counsel Decl. at ¶¶ 7 - 44; Sharp Decl. at ¶ 16 (attesting to over 860 hours in the Class Lawsuit and in negotiating and implementing the Settlement of the Class Lawsuit and the Born Action); DeVore Decl. at ¶ 13 (attesting to 634.9 hours invested in the Born Action and in negotiating and implementing the Settlement of the Class Lawsuit and the Born Action).

[21]   Class Counsel Decl. at ¶¶ 45 – 51; Sharp Decl. at ¶ 28; DeVore Decl. at ¶¶ 20 (attesting to the actual expenses incurred as reasonable and necessary to the litigation).

[22]   Class Counsel Decl. at ¶¶ 48 - 50; Sharp Decl. at ¶¶ 30-32; DeVore Decl. at ¶¶ 25 (attesting to the estimated future expenses to be incurred and their reasonableness and necessity to the implementation of the Settlement); Keough Decl. at ¶ 15 (implementation of Settlement will extend into January 2021).

[23]   Class Counsel Decl. at ¶ 52.

For the reasons set forth in this Motion, and the supporting declarations and exhibits, Class Representatives and Settlement Class Counsel respectfully request that the Court find the requested awards are fair and reasonable and approve them.

## Jurisdiction and Venue

The United States Bankruptcy Court of the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Class Representatives and Settlement Class Counsel confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of an order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are Bankruptcy Rule 7023 and, by incorporation, Civil Rule 23, particularly Civil Rule 23(h).

## Factual and Procedural Background

On May 1, 2012, two individual plaintiffs, Stanley Ray Born and Ronda Jean Born who are husband and wife, filed a lawsuit alleging that SPC took undisclosed improper deductions from royalty and, in so doing, breached its express and implied duties under the oil and gas leases and its fiduciary or quasi-fiduciary duty under Oklahoma law (the "Born Action").

The DeVore Law Firm accepted the representation of the plaintiffs in the Born Action under a contingent fee agreement that provided for an attorneys' fee of forty percent (40%) of the

gross recovery plus reimbursement of actual litigation expenses reasonable and necessary to the prosecution of the Born Action.[24]

On December 6, 2014, Tony R. Whisenant ("Whisenant") filed a putative class action lawsuit against SPC in the District Court of Beaver County, Oklahoma, on behalf of royalty owners in wells in Beaver County, Oklahoma. *See Whisenant v. Sheridan Production Company, LLC,* No. CJ-2014-19 (the "Whisenant Action"). Sharp Law, LLP represents Whisenant and the putative class in the Whisenant Action. Whisenant asserted claims for breach of lease and breach of fiduciary duty based on SPC's alleged deduction of costs incurred after the gathering line inlet from royalty. Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), SPC removed the Whisenant Action to the federal court, where it was assigned Case No. CIV-15-81-SLP, and the Grant Law Firm, P.L.L.C. joined in representing Whisenant as local counsel. After unsuccessful efforts seeking remand of the case to state court, including a petition for writ of certiorari to the United States Supreme Court, Whisenant filed an amended complaint with SPC's consent that would have expanded both the geographic and temporal scope of the class claims asserted in the Whisenant Action. The district court ordered the amended complaint "stricken" because it was untimely filed.

Rex A. Sharp, P.A., a predecessor to Sharp Law, LLP, accepted the representation of Whisenant under a contingent fee agreement that provided for an attorneys' fee of forty percent

---

[24]   The DeVore Law Firm's litigation efforts in prosecuting the Born Action are detailed in the Devore Declaration and in the *Joint Declaration of Ronda Jean Born and Stanley Ray Born in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives' Fee* (the "Born Decl."), filed contemporaneously with this Motion as **Exhibit 7** and incorporated by reference herein. DeVore Decl. at ¶ 12; Born Decl. at ¶ 8.

(40%) of the gross recovery plus reimbursement of actual litigation expenses reasonable and necessary to the prosecution of the Whisenant Action.[25]

On January 10, 2018, Kyle Allan Taylor ("Taylor") filed a putative class action in the United States District Court for the Western District of Oklahoma, on behalf of all royalty owners in the State of Oklahoma whose wells are or were operated (or marketed and directly paid to royalty owners) by SPC, asserting claims under Oklahoma law for breach of lease and breach of fiduciary duty based on the deduction from royalty of costs incurred after the gathering line inlet. *See Taylor v. Sheridan Production Company, LLC,* No. CIV-18-29-JWD (the "Taylor Action").

Rex A. Sharp, P.A., a predecessor to Sharp Law, LLP, accepted the representation of Taylor under a contingent fee agreement that provided for an attorneys' fee of forty percent (40%) of the gross recovery plus reimbursement of actual litigation expenses reasonable and necessary to the prosecution of the Taylor Action.[26] The Grant Law Firm was associated as local counsel in the Taylor Action.[27]

Given the common questions of law and fact involved with the Whisenant Action and the Taylor Action, and because the claims in the larger statewide Taylor Action subsumed the narrower claims in the Whisenant Action, the parties agreed to consolidation of the cases (the

---

[25]   The facts under which Sharp accepted representation of Whisenant and the firm's litigation efforts in prosecuting the Whisenant Action are detailed in the Sharp Declaration and in the *Declaration of Tony R. Whisenant in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives' Fee* (the "Whisenant Decl."), filed contemporaneously with this Motion as **Exhibit 8** and incorporated by reference herein. Sharp Decl. at ¶¶ 6-17; Whisenant Decl. at ¶¶ 5-10.

[26]   The facts under which Sharp accepted representation of Taylor, and the putative class, and the firm's litigation efforts in prosecuting the Taylor Action on behalf of Taylor and the putative class are detailed in the Sharp Declaration and in the *Declaration of Kyle Allan Taylor in Support of Class Representatives' and Settlement Class Counsel's Motion for Approval of: (I) Administration Expenses; (II) Class Counsel Fees and Expenses; and (III) Class Representatives' Fee* (the "Taylor Decl."), filed contemporaneously with this Motion as **Exhibit 9** and incorporated by reference herein. Sharp Decl. at ¶6-17; Taylor Decl. at ¶ 4-11.

[27]   Sharp Decl. at ¶ 1; Taylor Decl. at ¶ 12.

"Class Lawsuit"), with the Taylor Action being designated the lead case and with Sharp Law, LLP and Grant Law Firm as counsel.

Following depositions conducted in the Class Lawsuit, on December 6, 2019, Taylor filed an amended complaint in the Taylor Action, naming Debtors Sheridan Production Partners I-M, L.P. and Sheridan Production Partners I-A, L.P. as defendants, as the beneficial owners of the leases, and Debtor Sheridan Holding Company I, LLC, as a defendant, as the holder of legal title to the leases (the "Amended Taylor Complaint").

As Debtors negotiated its Chapter 11 plan (the "Plan") with their creditors, they also were negotiating possible settlement of the Class Lawsuit and the Born Action with Sharp and DeVore. Knowing further prosecution and defense of the Class Lawsuit and Born Action would be protracted and expensive and, taking into account the uncertainty and risks inherent in any such litigation, especially in light of the Debtors' bankruptcy petition, and having determined that it is desirable to compromise and settle all claims in the Class Lawsuit and Born Action and to proceed to seek approval, implementation of and administration of this Settlement in the Bankruptcy Court, Sharp and DeVore arranged the retention of experienced bankruptcy counsel to represent the Settlement Class. Charles Rubio of Diamond McCarthy LLP was retained for that representation.

For several months thereafter, Sharp, DeVore, and Rubio negotiated the terms of the Settlement Agreement, seeking a fair, adequate, and reasonable settlement for the Settlement Class.

Once agreement on the material terms of the Settlement Agreement was reached, Settlement Class Counsel presented the Settlement Agreement to the Borns, Whisenant, and Taylor, as the purported Class Representatives of the Settlement Class, and discussed the

ramifications of accepting or rejecting the Settlement Agreement.[28] Ultimately, the Class Representatives chose to resolve the differences with Debtors and SPC, and, believing the Settlement Agreement to be in the best interests of the Settlement Class, elected to settle those differences under the terms of the Settlement Agreement rather than litigate their respective positions to conclusion.

On March 23, 2020, Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court" or the "Court"), commencing the above-referenced proceeding styled *In re Sheridan Holding Company I, LLC, et al.*, Case No. 20-31884-DRJ (the "Bankruptcy Proceeding").

On March 24, 2020, the Court confirmed the Plan.[29] The Debtors projected $6,755,596 as the amount of unsecured claims under the Plan and included a litigation reserve of $6,000,000, which amount includes the payment of $5,094,000 to the Settlement Class, subject to reduction for Monies Payable to Opt-Outs, Class Counsel Fees and Expenses, and Administration Expenses, all as set forth in the Settlement Agreement.[30]

More recently, Settlement Class Counsel has expended hundreds of hours preparing to implement the Settlement—reviewing the royalty data for entities excluded under the definition of the Settlement Class before the Settlement Administrator mailed the Notice of Settlement, working

---

[28]   Each Class Representative reviewed and signed the Settlement Agreement. *See* Taylor Decl. at ¶ 11; Whisenant Decl. at ¶ 9; Born Decl. at ¶ 10.

[29]   *Order Approving the Debtors' Disclosure Statement for, and Confirming the Debtors' Joint Prepackaged Chapter 11 Plan* [ECF 76].

[30]   *Disclosure Statement Relating To The Joint Prepackaged Plan of Reorganization of Sheridan Holding Company I, LLC and Its Debtor Affiliates Pursuant To Chapter 11 of The Bankruptcy Code* [ECF 12], Article II.C and Exhibit B.

with experts to process the volumetric and revenue data provided by Debtors for use in the Plan of Allocation and Distribution, and seeking Rule 2004 Examinations of a dozen successor third-party operators for use in the Plan of Allocation and Distribution.[31] These efforts will continue over the course of the next year until a final reconciliation is made to the Court sometime in 2021.

## Argument

Each of the requests are warranted considering the work done and result achieved on behalf of the Settlement Class. The requests are also in line with similar requests recently granted under federal law, especially in the Tenth Circuit where the Class Lawsuit was pending.

**A.     Under the Settlement Agreement, Tenth Circuit Federal Common Law Controls the Right to and Reasonableness of the Requests for Class Counsel Fees and Expenses.**

As the Settlement Class is comprised of royalty owners who were entitled to receive royalty payments attributable to production from Oklahoma wells, the Parties contractually agreed that Tenth Circuit federal common law governs the Settlement Agreement, including the right to and reasonableness of Class Fees and Expenses. Specifically, the Settlement Agreement provides "this Agreement shall be governed by… Tenth Circuit federal law regarding federal equitable common fund class actions." ECF 123, Preliminary Approval Order, Ex. 1, Settlement Agreement at ¶ 2.8 (quoted in full, *supra*, at pp. 9-10 herein). This contractual language makes clear the applicable body of law as to class certification, notice, and overall evaluation of the reasonableness of the Class Fees and Expenses, including the Class Representatives Fee.

The unambiguous language aligns with the principles of the Class Action Fairness Act ("CAFA"), the passage of which was intended to provide certainty, uniformity, and confidence in the application of the class device to cases involving interstate commerce. *See, e.g.*, 28 U.S.C.

---

[31]   Sharp Decl. at ¶ 15.

§1711(a)-(b). Bankruptcy Rule 7023 and, by incorporation, Civil Rule 23 govern the certification of the action as a class action and the approval of Class Fees and Expenses. The Parties' contractual choice of law and the well-developed and consistent body of federal common law that applies to common fund class action settlements, where no fee shifting occurs, should be given effect as written. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 (1939) (recognizing allowance of litigation expenses and attorney fees in representative actions to be within the "historic equity jurisdiction of the federal courts"); *Cecil v. BP Am. Prod. Co.,* No. 16-CV-410-KEW, 2018 WL 8367957, **2-3, ¶¶ 12-13 (E.D. Okla. Nov. 19, 2018); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-29-KEW, 2018 WL 2296588, at *2, ¶ 6(d)-(e) (E.D. Okla. Mar. 27, 2018); *see also Leritz v. Farmers Ins. Co.*, 2016 OK 79, ¶1, 385 P.3d 991, 992 ("Generally, '[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . ..'").[32]

Bankruptcy courts routinely honor parties' contractual choice-of-law provisions and Texas law offers no exception to this rule. *See In re Guevara,* 409 B.R. 442, 446 (Bankr., S.D. Tex., Houston Div. 2009) ("Texas observes the 'party autonomy' rule, which is shorthand for the policy that courts generally respect contractual choice of law provisions"). *See also*, *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 637-37 (Bankr., S.D. Tex. 2010) ("Where the parties to a contract have not designated a forum to govern their agreement, Section 188 of the Restatement (Second) of Conflicts of Law controls choice of law analysis…"). The choice of law bargained for by the parties will govern both the substantive issues as well as the reasonable award of attorney's fees. *See In re New Power Co.*, 313 B.R. 496, 515 (Bankr. N.D. Ga. 2004) ("The Debtors and APX

---

[32]   *Cf. Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2017), which is inapplicable because the Parties here, unlike the parties in *EnerVest*, contractually agreed to a choice of law provision, selecting Tenth Circuit federal common law to control the right to and reasonableness of the attorneys' fee award. *See also,* Class Counsel Decl., Ex. H, Declaration of Steven S. Gensler (*Cecil v. BP,* 16-CV-00410-KEW (E.D. Okla.) ("Gensler Decl.") at ¶41, n.5.

bargained for and agreed that California law would govern the interpretation of the [contract], and this Court respects that choice of law provision. For the same reasons that the Court would respect the parties' choice of law when interpreting the contract, the Court will apply the same law to resolve the issue of whether APX has a statutory claim to attorneys' fees.").[33]

Here, the underlying Class Lawsuit and the individual Born Action relate exclusively to Oklahoma wells, and all three cases were pending in federal and state courts in Oklahoma. Thus, Oklahoma has a materially greater interest in the determination of all issues arising under the Settlement Agreement, including the determination of reasonableness and necessity of Class Fees and Expenses, the bulk of which were incurred litigating in Oklahoma. Oklahoma lies within the Tenth Circuit. Accordingly, Tenth Circuit federal common law applies here.

### B.     The Fee Request is Reasonable Under Federal Common Law.

The 40% fee request for Settlement Class Counsel is customary and reasonable, as reflected in myriad federal and state court royalty underpayment class actions concerning gas produced from wells in Oklahoma[34] and as reflected in the contingent fee agreement in this case, executed before plaintiffs and counsel knew how the litigation would progress and whether any recovery would be obtained.[35] The request reflects the risk Settlement Class Counsel undertook to prosecute the Class

---

[33]   This conclusion is consistent with that adopted by other courts. *See, e.g., El Paso Natural Gas Co. v. Amoco Prod. Co.,* No. Civ. A. No. 12083, 1994 WL 728816, at *5 (Del.Ch. Dec.16, 1994) (holding that Texas law applied to the issue of whether the prevailing party in a contract dispute was entitled to attorneys' fees because the contract at issue provided for Texas law to apply).

[34]   *See* Class Counsel Decl. at ¶¶ 7 - 45; *id.*, Ex. D, Declaration of Stephen S. Gensler, *Reirdon v. XTO Energy, Inc.,* No. 6:16-cv-0087-KEW (E.D. Okla. Dec. 27, 2017) at ¶45; *id.*, Ex. L, Table of Oklahoma cases awarding 40% contingency fees; *Cecil v. BP Am. Prod. Co,* No. 16-CV-410-KEW 2018 WL 8367957, at ** 7-8, ¶¶ 25-26 (E.D. Okla. Nov. 19, 2018)

[35]   *See* Taylor Decl. at ¶ 10-11; Whisenant Decl. at ¶¶ 8-9; Born Decl. at ¶ 8; Sharp Decl. at ¶ 23; *see also CompSource Oklahoma v. BNY Mellon, N.A.,* No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("Class Representative negotiated at arm's-length and agreed to a forty percent (40%) contingency fee at the outset of this litigation, reflecting the value Class Representative placed on the future success of [the] [a]ction.").

Lawsuit and the Born Action with no guarantee of any recovery, which explains the preference for the percentage of the fund method in evaluating the reasonableness of a request for attorneys' fees under Tenth Circuit federal common law.

>   **1.      Attorneys' Fees are Calculated as a Percentage of the Fund under Tenth Circuit Law.**

"The court's authority for ... attorney fees stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Wright & Miller § 1803; *Sprague*, 307 U.S. at 165. Under federal equitable law, the Tenth Circuit expressly prefers the percentage of the fund method in determining the award of attorneys' fees in common-fund cases. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853-54 (10th Cir. 1993). This method calculates the fee as a reasonable percentage of the value obtained for the benefit of the class. *See Brown*, 838 F.2d at 454; *Cecil*, 2018 WL 8367957, at * 3, ¶15; *CompSource Oklahoma*, 2012 WL 6864701, at *8 ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citing *Union Asset Mgmt. Holding A. G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)). Other Oklahoma federal district courts agree. *See, e.g.*, *See Chieftain v. Marathon Oil Co.*, No. CIV-17-334-SPS, 2019 WL 7758915, at * 9 (E.D. Okla. Mar. 8, 2019) ("The Tenth Circuit has repeatedly held that a lodestar cross check is not required."); *Northumberland County Ret. Sys. v. GMX Res. Inc.*, No. CIV-11-520, 2014 WL 12014020, at *3, n.1 (W.D. Okla. July 31, 2014) ("The Court is not required to conduct a lodestar assessment of the hours versus a reasonable hourly rate."); *see also Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("In the Tenth Circuit, the

preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method.").

Professors Gensler and Fitzpatrick also agree that the percentage of the fund approach is the correct approach in these types of cases.[36] Professor Gensler teaches Civil Procedure and related classes at the University of Oklahoma College of Law and is the author of a leading treatise on federal procedure, FEDERAL RULES OF CIVIL PROCEDURE RULES AND COMMENTARY (Thomson Reuters), and a wide range of articles on federal practice and procedure.[37] He also serves as the Consultant to the U.S. Judicial Conference Committee on Federal-State Jurisdiction and served as a member of the Advisory Committee on Civil Rules from 2005 to 2011. *Id.*

Professor Fitzpatrick is also well-qualified on federal practice and procedure, especially when it comes to class actions. Among his many accomplishments are graduating from Harvard Law School, serving as a law clerk to The Honorable Antonin Scalia on the Supreme Court of the United States and to The Honorable Diarmuid O'Scannlain on the United Court of Appeals for the Ninth Circuit, and teaching at Vanderbilt University and Harvard Law School.[38] His academic focus is on class action litigation and he has authored several articles which have been cited by numerous courts.[39] He has also published an empirical study on class action settlements and fee

---

[36]   To save expenses to the Settlement Class in this case and because Federal Rule of Evidence 807 supports their admissibility, Class Representatives rely upon the declarations of these renowned experts in *Cecil v. BP America Production Co.,* No. 16-CV-410-KEW and other royalty underpayment class action settlements. These declarations are attached as exhibits to the Class Counsel Decl. and authenticated at ¶ 24. Class Counsel Decl., Ex. H, Gensler Decl. at ¶42; Class Counsel Decl., Ex. J, Declaration of Brian T. Fitzpatrick (*Cecil v. BP America Prod. Co.,* No. 15-CV-410-KEW (the "Fitzpatrick Decl.") at ¶¶11–12. The legal principles guiding the Court's analysis in awarding attorneys' fees here and in these other cases are the same.

[37]   Class Counsel Decl., Ex. H, Gensler Decl. at ¶ 1.

[38]   Fitzpatrick Decl. at ¶ 1

[39]   *Id.* at ¶¶ 2–3.

17

awards, published in 2019, entitled THE CONSERVATIVE CASE FOR CLASS ACTIONS.[40] Both Professors Gensler and Fitzpatrick analyze fee requests under the governing *Johnson* factors.[41] Former Chief Justice of the Supreme Court of Oklahoma Steven W. Taylor concurs with their opinions.[42]

### 2. *The Fee Request Is Reasonable under the <u>Johnson</u> Factors*.

When determining attorneys' fees under the preferred percentage-of-the-fund method, the Tenth Circuit evaluates the reasonableness of the requested fee by analyzing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Brown*, 838 F.2d at 454-55; *Cecil*, 2018 WL 8367957, at * 4, ¶16. Not all factors apply in every case, and some deserve more weight than others depending on the facts at issue. *Id.*

The twelve *Johnson* factors are: (l) the time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 482 n.4.

---

[40]   *Id.* at ¶¶ 4-6; Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS, The University of Chicago Press (2019).

[41]   Ex. H, Gensler Decl. at ¶¶ 4, 43–63; Fitzpatrick Decl. at ¶¶ 13, 15–24.

[42]   Ex. J, Declaration of Steven W. Taylor (the "<u>Justice Taylor Decl.</u>"), *Cecil v. BP America Prod. Co.,* No. 16-CV-410-KEW, at ¶¶ 10-13.

The *Johnson* factor entitled to the most weight in this common fund case is the eighth factor—the amount involved in the case and the results obtained. *See Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."); FED. R. CIV. P. 23(h) adv. comm. note (explaining for a "percentage" or contingency-based approach to class action fee awards, "results achieved is the basic starting point").[43]

Here, the all cash benefit represents 54% of the class-wide damages.[44] The cash provides concrete, immediate, monetary benefits to the Settlement Class Members. And, as Professor Gensler aptly concluded in *Cecil*, settlements with self-executing benefit distribution provisions like the settlement in *Cecil* and in this case, as opposed to claims-made settlements in which the recovery to absent class members depends on their submission of information or completion of a claims process, have real value to the absent class members:

> Importantly, this is a cash recovery that will be distributed to Class Members automatically. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records. Indeed, Class Members do not have to take any action whatsoever to receive their benefits. The only thing Class Members need to do is not opt out and wait for their checks to be distributed after the Court grants final approval of the Settlement.

*Cecil,* 2018 WL 8367957, at **5-6, ¶21 (quoting Gensler Decl. at ¶51). In this case, the benefits are ***guaranteed*** and automatically bestowed upon the Settlement Class. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records. Indeed,

---

[43]   It is well-established that the fee award should be based on the total economic benefit bestowed on the class. *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 479 (1980) (explaining that, in common fund cases, the fee to be awarded should be based on "the full value of the benefit to each absentee member" obtained through the "entire judgment fund"). Here, the benefit is all cash. And, although the Settlement Proceeds includes $94,000.00 to pay the Administration Expenses of the Settlement, Settlement Class Counsel seeks no fees on this portion of the Settlement Proceeds.

[44]   Reineke Decl. at pp. 3-5.

Class Members do not have to take any action whatsoever to receive their benefits. The only thing Class Members must do is remain in the Class, *i.e.*, not opt out, and wait for distribution of their checks after the Court grants final approval of the Settlement and the Settlement becomes Final and Non-Appealable. Accordingly, the "results obtained" factor strongly supports a fee award of 40% of the Settlement Proceeds, minus the portion to be paid as Administration Expenses ($94,000.00) due to JND Legal Administration.

The other *Johnson* factors also support approval of the Settlement Class Counsel's request for attorneys' fees ("Fee Request"). Although these factors do not merit as much weight as the results-obtained factor, the Class Counsel Declaration, addresses each of them.[45] To summarize:

**1. Time and Labor**.

This factor is important in statutory fee shifting lodestar cases. Its only importance in this common fund recovery case is to show the case was not a lay down winner. The Class Counsel Declaration and the Sharp and DeVore Declarations show they invested substantial time in researching, investigating, prosecuting, and resolving this case.[46]

In total, the various attorneys in this case invested almost 1500 hours on a contingent fee basis, which, if paid hourly at the same average hourly rate of $950 that Debtors' counsel Kirkland & Ellis has applied for,, and without contingent fee risk, would have been valued at over $1,400,000. And, Settlement Class Counsel anticipates investing many additional hours to finish

---

[45] Class Counsel Decl. at ¶¶ 7 - 44. *See also id.,* Ex. H, Gensler Decl. at ¶¶ 39-47, 50-51, 57-63, which places the *Johnson* factors in perspective.

[46] Class Counsel Decl. at ¶¶ 7 - 15 & 29; Sharp Decl. at ¶¶ 6-17; DeVore Decl. at ¶ 7-18.

the job and complete the Settlement through final reconciliation and distribution of the Final Undistributed Fund in 2021.[47]

### 2. Novelty and Difficulty.

Class actions are known to be complex and vigorously contested. The claims involve difficult and highly contested issues of Oklahoma oil and gas law and class certification law that are currently being litigated in multiple forums. Class Counsel litigated such difficult issues against the vigorous opposition of highly skilled defense counsel. Moreover, Debtors asserted numerous defenses to the Settlement Class' claims that would have to be overcome if the Class Lawsuit continued to trial. Finally, the challenge presented by Debtors' bankruptcy added more complexity to this case. Despite these hurdles, Class Counsel obtained a significant recovery for the Settlement Class.[48] Thus, the immediacy and certainty of this recovery, when considered against the very real risks of continuing to a difficult trial and possible appeal, support the Fee Request.[49]

### 3. Skill Required.

Only a few firms handle royalty class litigation because of the nuanced intersection of class action and oil and gas law and the expense of funding such a large and potentially long-lasting endeavor.[50] Debtors are represented by skilled class action defense attorneys who can expend significant effort and expense in the defense of their client with little risk of non-payment. This Class Lawsuit has been pending for more than six years and the individual Born Action for over

---

[47]   Sharp Decl. at ¶¶ 30-33; DeVore Decl. at ¶¶ 17, 22 to 24; *See* Keough Decl. at ¶ 15 (implementation of Settlement will extend into January 2021).

[48]   Reineke Decl. at p. 5.

[49]   Class Counsel Decl. at ¶ 30.

[50]   Class Counsel Decl. at ¶ 31.

eight years. Without the experience, skill, and determination displayed by *all* counsel involved, the Settlement would not have been reached. These factors strongly support the Fee Request.

### 4. **Preclusion of Other Cases**.

This is not a significant factor in contingent class action litigation. Settlement Class Counsel has only a finite number of hours to invest in class action cases. In the aggregate, other class cases were declined because Class Counsel committed time and expense to other class cases, such as this one, where they have already accepted representation.[51] However, this one case, by itself, would not have cause declination of other cases, nor did it create any representational conflicts that prevented Class Counsel from taking cases that were offered to Class Counsel.

### 5. **Customary Fee.**

Class Representatives and Settlement Class Counsel negotiated and agreed to prosecute this case based on a 40% contingent fee.[52] This fee represents the market rate and is in the range of the "customary fee" in oil and gas class actions in Tenth Circuit federal courts—specifically the U.S. District Courts of Oklahoma—over the past 15 years as well as the Oklahoma state courts.[53] *Cecil*, 2018 WL 8367957, at * 7, ¶25; *see also, e.g., Fitzgerald Farms, LLC v. Chesapeake Operating, LLC,* No. CJ-2010-38, 2015 WL 5794008, at *3 (Okla. Dist. Ct., Beaver County, July 2, 2015) (collecting Oklahoma cases to find in "the royalty underpayment class action context, the

---

[51]   Class Counsel Decl. at ¶ 32.

[52]   Sharp Decl. at ¶ 18; DeVore Decl. at ¶¶ 12-14; Taylor Decl. at ¶ 11; Whisenant Decl. at ¶ 9; Born Decl. at ¶ 8.

[53]   Class Counsel Decl. at ¶ 33; Class Counsel Decl., Ex. H, Gensler Decl. at ¶¶ 58–61; *id.,* Ex. I, Justice Taylor Decl. at ¶ 12 ("40% contingency fee in these type cases is very routine"); Ex. L, Table of Oklahoma Cases.

customary fee is a 40% contingency fee" and awarding 40% fee of $119 million common fund). This factor supports the Fee Request.

### 6. **Fixed Hourly or Contingent Fee**.

As set forth above, Settlement Class Counsel undertook this Class Lawsuit on a purely contingent fee basis and assumed a substantial risk that the Class Lawsuit would yield no recovery, leaving them uncompensated and without the ability to recover expenses.[54] Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, Cecil,* 2018 WL 8367957, at * 8, ¶ 26. Indeed, Sharp Law, LLP has expended thousands of hours litigating royalty underpayment class actions where the courts denied class certification and, thus, plaintiff's counsel received no remuneration or reimbursement of expenses whatsoever despite their diligence and expertise.[55] Simply put, it would not have been economically prudent or feasible if Settlement Class Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates.[56] *See Cecil,* 2018 WL 8367957, at * 8, ¶ 26. The agreed-upon contingent fee reflects the value of this Class Lawsuit as measured when the risks and uncertainties of litigation still lay ahead. *See id.*; *CompSource*, 2012 WL 6864701, at *8; *Chieftain v. Laredo*, 2015 WL 2254606, at *2. If Settlement Class Counsel had not been successful, they would have received zero compensation (not to mention no

---

[54]   Class Counsel Decl. at ¶ 34; Sharp Decl. at ¶¶ 18-26.

[55]   *See, e.g., Schell v. Oxy USA, Inc.,* 814 F.3d 1107, 1112 & 1125-26 (10th Cir. 2016) (despite winning summary judgment in favor of plaintiff class after seven years of litigation, no attorney's fee was awarded). *See also,* Gensler Decl. at ¶ 6 (listing the three prior putative class actions in which BP defeated certification); Fitzpatrick Decl. at ¶ 6 (same).

[56]   Class Counsel Decl. at ¶ 15.

reimbursement for expenses). *See also Cecil,* 2018 WL 8367957, at * 8, ¶ 26. Accordingly, this factor strongly supports the Fee Request.

### 7. Time Limitations.

This was not a factor in this case and should not influence the Court one way or the other.[57]

### 8. Amount in Controversy and Result Obtained.

Amount in controversy was approximately $9.2 million in principal.[58] The $5 million recovery is about 54% of the total.[59] In light of this Settlement being negotiated in preparation for the Bankruptcy Proceeding, and the risk of a bankruptcy filing by SPC itself, the result obtained is exemplary. As detailed above, this is the most significant factor in awarding attorneys' fees in the class action context and strongly supports the Fee Request here.

### 9. Experience, Reputation, and Ability of Counsel.

Class Counsel have extensive experience, stellar reputations, and demonstrated ability.[60]

### 10. Undesirability.

Defendant SPC and Debtors are worthy adversaries that demonstrated a willingness to engage fully in adversarial litigation. Settlement Class Counsel anticipated the Class Lawsuit would be a lengthy, expensive, time-consuming, and arduous undertaking. Very few attorneys desire to take on the risk involved in class actions, much less a class action against a respected oil

---

[57]   Class Counsel Decl. at ¶ 35.

[58]   Reineke Decl. at p. 5.

[59]   Class Counsel Decl. at ¶ 37.

[60]   Class Counsel Decl. at ¶¶ 38 - 39.

and gas company such as SPC and Debtors.[61] Indeed, in another complex royalty class action that

Rex Sharp settled, the Oklahoma state court explained:

> Few law firms are willing to litigate cases requiring review of tens of
> thousands of pages of detailed contracts and accounting records, advance
> payment of hundreds of thousands of dollars in consultants and expert
> witness fees, and investment of substantial time, effort, and other expenses
> throughout an unknown number of years to prosecute a case with high risk,
> both at the trial and appellate levels.

*Fitzgerald Farms*, 2015 WL 5794008, at *8. Even firms that are willing to accept the risk of royalty

underpayment class actions usually will not invest the time and expenses necessary to prosecute

smaller cases like this Class Lawsuit where fuel use and percentage of proceeds deductions

comprised the most significant portion of the damages.[62] Nevertheless, Settlement Class Counsel

achieved a significant recovery for the Settlement Class where there was a real risk of no recovery.

This factor supports the Fee Request.

### 11. Nature and Length of Professional Relationship with Client.

Although of little relevance in a case where the client does not engage regularly in litigation

to warrant a discounted hourly rate, this factor supports the Fee Request. Settlement Class Counsel

met and worked with Class Representatives many times throughout the Class Lawsuit, including

before the various actions were filed.[63] Class Representatives zealously represented the Class,

---

[61]   Class Counsel Decl. at ¶ 40; *see also,* Class Counsel Decl., Ex. L, Declaration of Kimberly Hamilton, *Freebird, Inc. v. Merit Energy, Inc.,* No. 10-1154-KHV-JPO (D. Kan. Jan. 15, 2013) (Dkt. No. 199-3), at 2 (describing a royalty owner's challenge to find an attorney to prosecute royalty underpayment lawsuits).

[62]   Reineke Decl. at p. 3 (Discovery showed Debtors did not charge royalty owners for monetary deductions shown on plant statements, consequently the damages were for in-kind deductions); *see also* Class Counsel Decl. at ¶ 35.

[63]   Class Counsel Decl. at ¶ 41.

making themselves available to address the litigation whenever needed.[64] And, Class Representatives support the Fee Request.[65]

### 12. Awards in Similar Cases.

As previously stated, forty percent is a customary fee award in royalty underpayment class action litigation and supports the Fee Request in this case.[66]

The analysis of the *Johnson* factors under federal common law strongly demonstrates approval of the Fee Request is warranted.

### 13. **Additional Factor—Continuing Work**

Importantly, the percentage of the fund method for evaluating a fee request recognizes that Settlement Class Counsel's obligations to the Settlement Class and Court continue beyond the Settlement Fairness Hearing, through the final reconciliation for the distribution of the Settlement Proceeds. Settlement Class Counsel recognize this continuing obligation in setting the percentage agreed to in the contingent fee agreement with the client. While defense counsel can consider the matter concluded when its client is dismissed without prejudice, Settlement Class Counsel continues to invest time and incur expenses to ensure implementation of the Settlement, investigate and resolve any inquiries, and document full compliance with the Court's orders. Although this factor does not appear among the *Johnson* factors, it is a factor that distinguishes class actions from other types of litigation.

---

[64]   Taylor Decl. at ¶ 23; Whisenant Decl. at ¶ 23; Born Decl. at ¶¶ 10-13.

[65]   Taylor Decl. at ¶ 25; Whisenant Decl. at ¶ 23; Born Decl. at ¶¶ 18-19.

[66]   *See* fn. 5, *supra*; Class Counsel Decl. at ¶¶ 16 - 25; *see also,* Ex. L, Table of Oklahoma Cases awarding 40% contingency fees.

**C.      The Requests for Reimbursement of Expenses Are Reasonable Under Federal Common Law.**

In connection with approval of the Settlement of the Class Lawsuit and Born Action, and in accord with the Notice to the Class,[67] Class Representatives respectfully move the Court for reimbursement of expenses incurred in successfully prosecuting and resolving the Class Lawsuit and the Born Action, and for administering the Settlement (the "Expenses Request"). As described above, Settlement Class Counsel has obtained a significant recovery for the benefit of the Settlement Class Members, which necessitated incurring expenses that Class Counsel paid or will be obligated to pay. To date, Settlement Class Counsel have advanced more than $107,000.00 in prosecuting and resolving this case.[68] All the expenses incurred have been reasonable and necessary to the prosecution of the Class Lawsuit.[69] Class Counsel will incur an estimated $50,000 in additional expenses, primarily related to the allocation of settlement benefits to the Settlement Class Members, to preparing for the final approval hearing, and to distribution activities after the Judgment, if entered, becomes Final and Non-Appealable.[70] As such, at the Settlement Fairness Hearing, Class Counsel will seek reimbursement for expenses actually incurred after the date of this filing and anticipated in implementing the settlement to its conclusion. Class Counsel will seek the Court's approval on all expenses before their payment from the Settlement Proceeds pursuant

---

[67]    Keough Decl. at ¶ 4, Ex. A at Sec. IV.

[68]    Sharp Decl. at ¶ 28 (advancing $79,154.16); DeVore Decl. at ¶ 20 (advancing $29,790.90).

[69]    *Id.*

[70]    Sharp Decl. at ¶ 32; DeVore Decl. at ¶ 24.

to the procedures in Section 3, below. Because Settlement Class Counsel's Expenses Request is fair and reasonable, and for the reasons set forth below, the Expenses Request should be granted.

### 1. Reimbursement of Litigation Expenses.

"As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred…in addition to the attorney fee percentage." *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (citing *Blum*, 465 U.S. at 573); Fed. R. Civ. P. 23(h) (authorizing the Court to reimburse counsel for "non-taxable costs that are authorized by law."); *Cecil*, 2018 WL 8367957, at * 9, ¶ 30. As set forth above and as set forth in the Notice to the Class (ECF No. 22-1 at 5), Class Representatives and Settlement Class Counsel respectfully request reimbursement of litigation expenses that have been and may be advanced or incurred by Class Counsel in prosecuting and resolving this Class Lawsuit and the Born Action and in implementing the Settlement. All these expenses were reasonably and necessarily incurred and are directly related to the prosecution and resolution of this Class Lawsuit. The costs include routine expenses related to copying, printing, court fees, local counsel payments, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts, document production and review, and settlement administration, which are typical of large, complex class actions such as this.[71] As such, this request is fair and reasonable and should be approved.

### 2. Reimbursement of Settlement Administration Expenses.

The Settlement Agreement provides for the payment of Administration Expenses from the Settlement Proceeds.[72] Administration Expenses relate to provision of Notice of Settlement by

---

[71]   Sharp Decl. at ¶ 28; DeVore Decl. at ¶¶ 20.

[72]   ECF 123, Preliminary Approval Order, Ex. 1, Settlement Agreement at ¶ 1.1

direct mail and publication to the members of the Settlement Class, maintenance of the Settlement website and call-center, implementation of the Plan of Allocation and Distribution, establishment and maintenance of the Settlement Account, distribution of the Net Settlement Amount, tax-reporting, and payment of the Settlement Administrator for its services.[73] For these services, the Settlement Administrator agreed to limit the Administration Expenses due to it to $94,000.00, or approximately $5.26 per class member.[74]

Where a settlement agreement calls for the costs of administration to be borne by the settlement fund, the court should approve the same. *See, e.g., In re High–Tech Emp. Antitrust Litig.*, No. 11–CV–2509–LHK, 2013 WL 6328811, at *5 (N.D. Cal. Oct. 30, 2013) (permitting all costs incurred in disseminating notice and administering the settlement to be paid from the settlement fund, pursuant to the terms of a settlement agreement). These Administration Expenses, incurred and anticipated, are reasonable given the approximately 17,800 Class Members involved and the amount of money to be distributed. The request for payment of $94,000 in Administration Expenses is reasonable and should be approved.

### 3. Proposed Protocol for Reimbursement of Additional Expenses.

To avoid burdening the Court with administrative motions, Class Counsel asks the Court to approve the following protocol for seeking approval additional Administration Expenses and out-of-pocket expenses of Class Counsel incurs before the Settlement is fully administered (the "Additional Expenses"). The proposed protocol follows:

    a. Class Counsel may file on the docket in this case a statement of Administration Expenses and Class Counsel out-of-pocket expenses incurred (each, an "Expense Statement") not more than once every month.

---

[73]   *Id.*

[74]   Keough Decl. at ¶¶ 4 & 16 ($94,000.00/17,834 Class Members = $5.26 per Class Member).

b.  Each Statement shall itemize the Additional Expenses. If the Additional Expenses include Administration Expenses for bankruptcy counsel to represent the Settlement Class, the Expense Statement shall include a summary statement of bankruptcy counsel setting forth the hourly fees and expenses for its reasonable services rendered to, and reasonable and documented expenses incurred on behalf of, the Settlement Class. Such summary statements will set forth the number of hours and the applicable rates for the bankruptcy counsel professionals and paraprofessionals during the relevant period and will provide generalized summaries containing a reasonable amount of detail describing the work performed by bankruptcy counsel in representing the Settlement Class during the period covered by the statement.

c.  The Settlement Administrator shall post each Expense Statement on the website established for the administration of the Settlement Agreement promptly following the filing of the Expense Statement.

d.  Any objections to any Expense Statement are to be filed with the Court and served upon the parties listed below (the "Notice Parties"), so that they are received by all parties no later than fourteen (14) days from the date the Expense Statement is filed with the Bankruptcy Court (the "Objection Period"):

   i.  Kirkland & Ellis LLP, Attn:  Spencer Winters and Jaimie Fedell, 300 North LaSalle, Chicago, IL 60654, jaimie.fedell@kirkland.com and spencer.winters@kirkland.com;

   ii.  Kirkland & Ellis LLP, Attn: Rachael Bazinski, 601 Lexington Avenue, New York, NY 10022, rachael.bazinski@kirkland.com;

   iii.  Crowe & Dunlevy, Attn:  John J. Griffin, Jr., 324 North Robinson Avenue, Suite 100, Oklahoma City, OK 73102, john.griffin@crowedunlevy.com;

   iv.  Sharp Law, LLP, Attn: Rex Sharp and Barbara Frankland, 5301 W. 75th Street, Prairie Village, KS 66208, rsharp@midwest-law.com  and bfrankland@midwest-law.com;

   v.  Diamond McCarthy, LLP Attn: Charles Rubio, 295 Madison Avenue, 27th Floor, New York, NY 10017, CRubio@diamondmccarthy.com;

   vi.  Grant Law Firm, P.L.L.C., Attn:  Michael E. Grant, 512 N.S. 12th Street, Oklahoma City, OK 73103, de1471@cosinet.net;

   vii.  DeVore Law Firm, PLC., Attn:  Allan DeVore and Jandra Cox, 5709 NW 132nd St., Oklahoma City, OK 73142, dlf@DeVoreLawOK.com;

   viii.  Vinson & Elkins LLP, Attn:  William Wallander and Erec R. Winandy; 2001 Ross Avenue, Suite 3900, Houston, TX 75201, bwallander@velaw.com and ewinandy@velaw.com;

ix.   Davis Polk & Wardwell LLP, Attn: Stephen Piraino and Nathaniel Sokol, 450 Lexington Avenue, New York, NY 10017, stephen.piraino@davispolk.com and nathaniel.sokol@davispolk.com; and

x.   The Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002.

e.   At the expiration of the Objection Period, the Settlement Administrator shall promptly pay from the Settlement Proceeds one hundred percent (100%) of the expenses requested in the Expense Statement, except for any expenses that are subject to an objection pursuant to subparagraph (f) below.

f.   In the event any Class Member has an objection to an Expense Statement, such objecting party shall, within the Objection Period, serve upon Notice Parties a written notice of objection (the "Objection Notice"), setting forth (i) the owner number(s) and well name(s) as they appear on the check stubs of the putative member of the Settlement Class who is objecting and (ii) the precise nature of the objection and the amount at issue. Thereafter, the objecting party and Class Counsel shall attempt to resolve the objection consensually. If the parties are unable to reach an agreement on the objection within ten (10) days after service of the Objection Notice, Class Counsel shall file a request for payment of the Expense Statement together with the Objection Notice, with the Court, at which time the Court will consider and dispose of the Objection Notice, if requested. However, the Settlement Administrator shall be authorized to pay any portion of the Additional Expenses from the Settlement Proceeds that are not the subject of an Objection Notice.

This procedure provides disclosure of the Additional Expenses sought, a process for making objections to the Expense Statement, and a process for resolving those objections, with presentation to the Court only if necessary. The procedure is fair for all interested parties. Class Representatives and Class Counsel ask the Court to approve this procedure and have incorporated it into the proposed Fees and Expenses Order.

**D.      The Class Representative Fee is Reasonable Under Federal Common Law.**

The requested Class Representative Fee of two percent is reasonable. This Fee was disclosed in the Notice provided to the Settlement Class members[75] and is reasonable under the applicable case law.

Federal courts routinely compensate named plaintiffs via incentive awards. *See Cecil*, 2018 WL 8367957, at * 10, ¶ 34 (incentive awards are meant to compensate class representatives for "the work they performed – their time and effort invested in the case and the risks they take."); *see also, e.g., UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232 (10th Cir. 2009) ("Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...Moreover, a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class."); *Chieftain Royalty Co. v. Laredo Petroleum, Inc.,* No. 12-cv-1319-D, 2015 WL 2254606, at *4-5 (W.D. Okla. May 13, 2015) ("Case contribution awards are meant to 'compensate class representatives for their work on behalf of the class, which has benefited from their representation.'") (*citing In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards . . . are intended to compensate class representatives for work done on behalf of the class . . . ."). The services for which incentive awards are given typically include "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Cecil*, 2018 WL 8367957, at * 11, ¶ 35 (quoting NEWBERG ON CLASS ACTIONS §17:3 (5th Ed.)). Evidence supporting an award request may be provided through "affidavits submitted by class counsel

---

[75]      Keough Decl., Ex. A, Notice of Settlement at Sec. IV.

and/or the class representatives, through which these persons testify to the particular services performed, the risks encountered, and any other facts pertinent to the award." NEWBERG, §17:12.

Class Representatives seek awards based on their demonstrated risk and burden as well as compensation for time and effort, as more fully set forth in their respective declarations and the respective declarations of their counsel.[76] Their request for an award of two percent is consistent with awards entered by Oklahoma state and federal courts, as well as federal courts across the country.[77] *See, e.g., Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008, at *9 (Okla. Dist. Ct. Beaver Cty. July 2, 2015) ("The incentive award sought is consistent with such awards in other cases. Oklahoma courts have typically awarded class representatives in royalty owner class actions approximately 1-2% of the settlement…"); *Velma-Alma Indep. Sch. Dist. No. 15, v. Texaco, Inc*. No. CJ-2002-304 (Okla. Dist. Ct., Stephens Cnty.) (2005) (awarding 1-2% of total settlement amounts); *Robertson v. Sanguine, Ltd.*, No. CJ-02-150 (Okla. Dist. Ct., Caddo Cnty.) (2003) (awarding 1% class representative fee); *Continental Resources, Inc. v. Conoco, Inc.*, No. CJ-95-739 (Okla. Dis. Ct., Garfield Cnty.) (2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund.").[78] Having worked with Class Representatives in the investigation, filing, prosecution, and settlement of this Class Lawsuit, Class

---

[76]   Taylor Decl. at ¶ 26; Whisenant Decl. at ¶ 24; Born Decl. at ¶20-22. *See generally,* Sharp Decl. and DeVore Decl.

[77]   Class Counsel Decl. at ¶ 52.

[78]   *See also*, *Fankhouser v. XTO Energy, Inc.*, No. CIV-07-798- L, 2012 WL 4867715, at *3 (W.D. Okla. Oct. 12, 2012) (incentive awards totaling $100,000); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (1.5% of $1.06 billion fund, equaling $15,900,000 to be split among nine class representatives and stating "[t]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action"); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004) (finding "ample authority in this district and in other circuits" for total incentive awards of $125,000).

Counsel fully supports the request.[79] As such, Class Representatives' request for an incentive award of two percent of the Settlement Proceeds is fair and reasonable and supported by the same evidence of reasonableness.

## Conclusion

For the reasons set forth in this Motion, the Settlement Class, through its Class Representatives and Settlement Class Counsel, respectfully moves the Court to grant the Motion for Approval of Class Counsel Fees and Expenses and Administration Expenses and to enter the proposed Order Granting Class Counsel Fees and Expenses and Administration Expenses in accord with the Settlement Agreement and Section IV of the Notice of Settlement, to be deducted from the Settlement Proceeds before Distribution Checks are mailed to the class from the remaining Net Settlement Amount:

(1)     $94,000.00 as payment of the Administration Expenses due to JND Legal Administration, the court-appointed Settlement Administrator, for its services and expenses in administering this settlement;

(2)     Forty percent of the remaining Settlement Proceeds (after adjustment for Monies Payable to Opt-Outs) ($2,000,000.00 or less depending on the Opt-Outs) as Class Counsel Fees;

(3)     $117,532.82 as reimbursement of Class Counsel's reasonable and necessary litigation expenses in the Class Lawsuit, Born Action, and the Bankruptcy Proceeding;

(4)     $50,000.00 as a reserve for estimated future litigation expenses and Administration Expenses as actually incurred through distribution and reconciliation of the

---

[79]   Class Counsel Decl. at ¶ 52.

Taylor Settlement Account and as approved for payment by the Court pursuant to the procedures incorporated into the Fees and Expenses Order;

(5)      Two percent of the remaining Settlement Proceeds, after adjustment for Monies Payable to Opt-Outs ($100,000 or less depending on the Opt-Outs) as the Class Representatives Fee to be divided in thirds with one-third to Mr. Taylor, one-third to Mr. Whisenant, and one-third to the spouses Mr. and Mrs. Born, for contributing their time and efforts to prosecuting the Class Lawsuit and/or Born Action and obtaining a common fund recovery for the Settlement Class; and

(6)      Such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/ Charles Rubio*
Charles Rubio (TX Bar No. 24083768)
Diamond McCarthy, LLP
909 Fannin Street, 37th Floor
Houston, Texas 77010
(212) 430-5438
CRubio@diamondmccarthy.com

and

Rex A. Sharp, OBA#011990
(admitted *pro hac vice*)
Barbara C. Frankland, OBA #33102
(admitted *pro hac vice*)
Sharp Law, LLP
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com

and

Michael E. Grant, OBA No. 11848
(admitted *pro hac vice*)
Grant Law Firm, PLLC
512 NE 12th St.
Oklahoma City, OK 73103
(405) 232-6357
(405) 232-6358 fax
De1471@coxinet.net

and

Allan DeVore, OBA No. 2328
(admitted *pro hac vice*)
Jandra Cox, OBA No. 16610
(admitted *pro hac vice*)
DeVore Law Firm, PLC
5709 NW 132nd St.
Oklahoma City, OK 73142
(405) 603-8585
dlf@DeVoreLawOK.com

*Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 15, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles Rubio*
Charles Rubio